UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5￼10￼cv￼25

| | |
|---|---|
| SAS INSTITUTE INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **COMPLAINT** |
| ) | |
| WORLD PROGRAMMING LIMITED ) | |
| ) | |
| Defendant. ) | |
| ) | |

## Summary of the Action

1. This is an action by SAS Institute Inc. ("SAS"), a North Carolina-based software company, against World Programming Limited ("WPL"), an English company which competes with SAS. As more fully described below, WPL has engaged in a series of unfair and deceptive acts designed to unfairly compete with SAS by appropriating to itself the long-standing efforts of SAS in creating the market for business intelligence software and convincing SAS users worldwide to license WPL's software in place of SAS. WPL has done this by, among other things, misrepresenting itself to SAS as a "financial services" company rather than a software competitor in order to obtain access to SAS proprietary information, violating a license agreement with SAS by using certain SAS software for its own impermissible commercial purposes, violating SAS's copyrights, touting the ability of WPL's knock-off software to "emulate" key features of SAS's software, and targeting SAS's customer base developed over years at great effort and expense on the part of SAS. Indeed, WPL's *only* market for its software are the existing customers of SAS which already use SAS software under licenses with SAS. SAS is seeking injunctive relief and ultimately damages (including treble and punitive damages) and other relief from WPL for (1) copyright infringement, (2) breach of a license agreement (or,

alternatively, tortious interference with contract), (4) tortious interference with prospective economic advantage and (5) unfair and deceptive trade practices/unfair competition.[1]

## The Parties

2. Plaintiff SAS is a corporation organized under the laws of the State of North Carolina with its principal place of business in Cary, North Carolina. SAS has been in business for over thirty years and during that time has become the world's largest privately-held software company. As more fully described below, SAS is considered the world leader in business intelligence software and services primarily offered through an integrated range of software products which are known as the "SAS System."

3. Defendant WPL is a private limited company incorporated under the laws of England and Wales with its registered office address listed as Worsley Lodge, Common Hill, Braishfield, Romsey SO51 0QF. WPL was incorporated in 1998 under the name Management Technologies Limited and thereafter changed its name on at least two occasions, adopting its current name in 2006.

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction of this action under 28 U.S.C. § 1338(a), as an action arising under an Act of Congress relating to copyrights, 17 U.S.C. §§ 101, *et seq.*; as an action arising under 28 U.S.C. § 1338(b), as an action arising under an Act of Congress relating to copyrights joined with a claim for unfair competition; and this Court's supplemental jurisdiction. This Court has personal jurisdiction over WPL under 17 U.S.C. §

---

[1] SAS earlier instituted an action against WPL in the courts of the United Kingdom for WPL's violations of the laws of the United Kingdom and, potentially, the laws of other European Union countries.

501, as well as the North Carolina long-arm statute, N.C.G.S. § 1-75.4, based on facts more fully described below.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) as a substantial part of the acts giving rise to the allegations of this Complaint occurred in this District and based on WPL's agreement to venue as more fully described below.

## The Business of SAS

### The SAS System

6. The SAS System enables users to perform a variety of tasks primarily relating to data access, data management, data analysis (including statistical analysis) and data presentation. It consists of a number of software components which users can install separately. The core component of the SAS System is known as "Base SAS." The other components of the SAS System require the use of Base SAS and provide a user with additional capabilities.

7. Users cause the SAS System to access data and then to manage and analyze such data and to present or provide results by issuing instructions to the SAS System. Those instructions are typically provided by a user in the form of a text file containing the required instructions and are generally referred to as "SAS Programs."

8. SAS Programs are written in a programming language developed by SAS and known as the "SAS Language." Instructions which call software routines included in the SAS System and which perform specific predetermined tasks are known as "SAS Procedures." Thus, Base SAS allows users to develop and run SAS Programs.

9. SAS also publishes for the benefit of its users a wide range of reference materials in both electronic and printed form ("SAS Manuals"). Those publications describe the features of the SAS System and provide instructions and assistance to users of the SAS System.

10. SAS Manuals also provide readers with a detailed description of aspects of SAS System including a detailed description of the instructions which form part of the SAS Language and SAS Procedures.

**Licensing of the SAS System**

11. Customers of the SAS System are required to enter into a license agreement with SAS. While the terms and conditions of SAS's license agreements have varied from time to time, such agreements are generally in the form of a Master License Agreement ("SAS MLA"), which among other things:

a. restricts the use of the licensed SAS System software to the Customer's employees and on site contractors while doing work solely for the Customer;

b. prohibits the Customer from (i) using the licensed SAS System software for the benefit of other persons in exchange for compensation (ii) using the licensed SAS System software for provision of data services, outsourcing or similar arrangements or to process data of other persons and (iii) allowing any unauthorized user to edit, modify or otherwise access the SAS System software and thereby prohibit the Customer from using the SAS System for purposes other than the business of the Customer; and

c. agrees that North Carolina law will govern.

**SAS Learning Edition Software**

12. In order to enable individuals to learn how to use the SAS System without entering into a full SAS MLA, SAS has developed certain software which is known as the SAS Learning Edition.

13. The SAS Learning Edition includes versions of Base SAS and certain other components of the SAS System including SAS/GRAPH (procedures for graphing capabilities),

SAS/STAT (procedures for providing statistical information such as analysis of variance, regression, multivariate analysis, and categorical data analysis), SAS/QC (quality improvement tools) and SAS/ETS (procedures for econometric and time series analysis). The components of the SAS System which are included in the SAS Learning Edition are restricted as to the quantity of data which can be processed.

14. The SAS Learning Edition also includes a selection of SAS Manuals in printed and electronic form.

**Licensing of SAS Learning Edition Software**

15. Before an individual is entitled to use the SAS Learning Edition software, that individual is required to accept the terms of a license agreement (the "LE License Agreement"). Clause 1.1 of the LE License Agreement provides:

> *1.1 In exchange for Customer's payment of all applicable fees and compliance with the terms of this Agreement, SAS hereby grants Customer a nonassignable, nontransferrable and nonexclusive license to use the Software on one (1) workstation at a time, for Customer's non-production purposes only. Concurrent usage or use on a network is not authorized.*

16. Clause 1.2 of the LE License Agreement provides:

> *1.2 Customer may not use the Software in any outsourcing, facilities management or service bureau arrangement or any data or information technology management operation by or for third parties.*

17. Clause 9 of the LE License Agreement provides that it is governed by and construed in accordance with the laws of the State of North Carolina.

18. Thus, the LE License Agreement permits a user to install and run the SAS Learning Edition for the sole purpose of learning how to use the SAS System.

### The Business of WPL

### The Market for SAS Software and WPL's World Programming System

19. SAS faces a number of well-known and established competitors in the market for business intelligence software which compete with SAS by offering their own independently developed competitive software. Unlike those other competitors, however, WPL has developed certain software known as the World Programming System (hereafter "WPS") which relies on targeting only current long-standing SAS customers which have SAS Programs that they use to access, manage and present data in the unique manner performed by the SAS Software. WPL seeks to convince those SAS customers to continue to use the SAS Programs they already use, but to divert their license fees paid to SAS to WPL as license fees for WPS. WPL continues to develop WPS which it has begun to market both inside and outside the United States, including, on information and belief, in the State of North Carolina.

20. The purpose of WPS is to provide current or potential users of the SAS System with software which reproduces – or "emulates" as WPL's marketing materials put it – critical aspects of the SAS System. As WPL has continued to develop WPS, the aspects of the SAS System which WPS reproduces have been extended. WPS is therefore intended as a replacement for the SAS System which is suitable for persons who use or expect to use some, but not all, of the features of the SAS System. In essence, WPL competes against SAS in the market for SAS customers by using what amounts to SAS Software licensed as its own product, WPS.

21. According to WPL's own Web site, the current version of WPS offered by WPL is its Version 2.4. The WPL Web site states that Version 2.4 provides the functions of SAS listed in certain spreadsheets (the "WPS Spreadsheets") as follows:

| Spreadsheet | List of functions of SAS contained within WPS |
|---|---|
| WPS-Core-Quick-Ref.xls | A quick reference list of all the base language elements supported in the WPS Core module. |
| WPS-Graphing-Quick-Ref.xls | A quick reference list of the graph and chart language elements supported in the WPS Graphing module. |
| WPS-Statistics-Quick-Ref.xls | A quick reference list of the statistical analysis language items supported in the WPS Statistics module. |
| WPS-Engines-Quick-Ref.xls | A quick reference list of all the library engines supported by individual add-on WPS Engine modules. |

22. WPL's reference manual entitled "WPS-Reference-for-Language-Elements.pdf" (the "WPS Manual") contains a detailed description of the syntax of all the instructions to the SAS System which, it states, will also be followed in the same way by version 2.4 of WPS. WPL also claims that WPS will allow a user to read and write data in certain file formats devised by SAS and known as SAS versions 6, 7, 8 and 9 Data Set Files and SAS Transport Files ("SAS File Formats"). Thus, a SAS Program which contains only instructions which are supported by WPS will be interpreted by WPS so as to access, manage, analyze and present data in the same way as if the SAS Program were interpreted by the SAS System software.

**WPL's Efforts to Appropriate to Itself the Market and Customers Created by SAS**

23. In 2008, WPL placed an order through a reseller of SAS seeking to license the SAS System. In that regard, an employee of WPL executed a SAS MLA and related software supplemental to that master license agreement.

24. When SAS inquired of WPL as to why it was seeking to license the software, SAS was informed that WPL wanted to license the software in order to check SAS syntax. Not satisfied with that response, SAS refused to accept WPL's order or countersign the SAS MLA executed by WPL.

25. Thereafter, on information and belief, WPL acquired a copy of the SAS Learning Edition software and agreed to the terms of the LE License Agreement with SAS.

26. Earlier, in 2006, a WPL vice president, who represented the company as being in the "Financial Services" business rather than a software company intending to compete with SAS, registered on the SAS Web site in a manner designed to permit WPL to view, download, copy and print certain information proprietary to SAS, including certain SAS Manuals. That representation was made despite the contractual requirement that information provided in the registration process be accurate and complete.

27. The terms of use accepted by WPL in connection with its registration on SAS's Web site explicitly stated that the Web site was controlled by SAS from its offices in Cary, North Carolina and that all matters "relating to [WPL's] access to, or use of, this Web site shall be governed by U.S. federal law or the laws of the State of North Carolina." Those terms of use also stated that "[a]ny legal action or proceeding relating to [WPL's] access to or use of, this Web site shall be instituted in a state or federal court in Raleigh or Wake County, North Carolina." Both parties to the terms of use (*i.e.* WPL and SAS), moreover, agreed that jurisdiction and venue in those courts was proper.

28. The terms of use further explicitly stated that materials accessed from SAS's Web site were to be used solely for non-commercial purposes and that they could not be modified so as to pass themselves off as WPL's own.

29. In order to create its WPS Software, WPL must have studied SAS Manuals (or documents copied from SAS Manuals) in order to understand, among other things:

   a. the name of each relevant SAS instruction which WPL intended to replicate in its WPS software;

   b. the syntax to be used to invoke such instruction in the SAS System;

   c. the operations which each such instruction performs; and

   d. the SAS File Formats.

30. In creating that WPS Software, moreover, WPL has used one or more copies of the SAS System (including one or more copies of the SAS Learning Edition) in order to ascertain the manner in which the SAS System functions and in order to perform benchmarking tests on the SAS System for the purposes of developing and thereafter marketing its WPS Software.

31. In addition, WPL has created its WPS Manual and certain WPS spreadsheets by copying substantial parts of the SAS Manuals.

32. In marketing WPS, WPL touts its ability "to emulate the behavior of the SAS System to a sufficient degree that the WPS implementation can replace the SAS System implementation for many applications" by "identically replicating the behavior of the SAS System" with respect to the data inputs (including SAS data source structures and the complete SAS Language) accepted by WPS and the outputs produced by WPS. WPL claims that its software emulates such SAS components as Base SAS, SAS/GRAPH, SAS/STAT and various other SAS/ACCESS products.

33. In order to provide reassurances to its target customers – namely the current customers of SAS – WPL claims in its marketing materials to have conducted benchmark testing of its "WPS emulator" against the SAS System by executing the "two systems side-by-side

across a suite of test programs" that broadly compared a breadth of system inputs and controls with outputs produced by the two systems. Such benchmarking could not have been accomplished other than by violating the prohibitions contained in its LE License Agreement with SAS or by convincing an individual or company which has entered into a SAS MLA to violate the prohibitions in that agreement.

34. WPL's marketing of WPS, in addition to touting the ability of WPS to "emulate" the SAS System, is primarily if not entirely directed at current SAS licensees, by seeking to persuade those SAS customers to license WPS instead of the SAS System. Thus, WPL seeks to arrogate to itself a market created by, as well as specific customers of, SAS obtained through the unfair acts described above.

**The Copyrighted Materials**

35. The SAS System contains a number of computer programs whose source code contains copyrightable subject matter under the laws of the United States. The SAS System also contains a structure, sequence and organization in the form of its syntax, calls, commands and procedures. SAS is the sole owner of all right, title and interest, including copyright, in both its source code and its structure, sequence and organization.

36. SAS has complied in all respects with the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*, and all other laws governing copyright, and received from the Register of Copyrights certificates of registration, dated and identified as follows:

    a. The SAS System, Release 8.2, dated October 20, 2004, Registration No. TX0006059105; and

    b. SAS Learning Edition 4.1, dated September 16, 2009, Registration No. TX0006973239.

37. The SAS Manuals also contains copyrightable subject matter under the laws of the United States of which SAS is the sole owner of all right, title and interest, including copyright.

38. With respect to those manuals, SAS has also complied in all respects with the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*, and all other laws governing copyright, and received from the Register of Copyrights certificates of registration, dated and identified as indicated on Exhibit A attached hereto.

39. The foregoing materials – both software and manuals – are referred to herein as the "SAS Copyrighted Materials."

40. WPL has been using SAS's Copyrighted Materials without license or authorization and in direct competition with SAS. At a minimum, WPL's use and reproduction of SAS Learning Edition and other SAS Programs without a license or outside the scope of a license constitutes an infringement of the SAS Copyrighted Materials.

41. By causing WPS to reproduce the operations, syntax and command structures of the SAS System, WPL has infringed the SAS Copyrighted Materials. WPL's copying of one or more of the SAS Manuals listed in Exhibit A hereto similarly constitutes infringement. WPL, moreover, has been unjustly enriched by its copying and use of the SAS Copyrighted Materials.

42. On information and belief, WPL may continue its course of conduct of wrongful use and infringement upon SAS's Copyrighted Materials. As a direct and proximate result of WPL's acts alleged above, SAS has already suffered irreparable harm and has sustained lost profits. SAS has no adequate remedy at law to redress all of its injuries WPL has caused and continues to cause by its conduct. SAS will continue to suffer irreparable harm and to sustain lost profits until WPL's actions alleged above are enjoined by this Court.

## COUNT I
### Copyright Infringement – SAS System
### 17 U.S.C. §§ 101 *et seq.*

43. The allegations contained in paragraphs 1 through 42 are realleged as if fully set forth herein.

44. WPL has infringed SAS's copyright in that portion of the Copyrighted Materials represented by the SAS System and SAS Learning Edition by reproducing, copying and using copyrighted aspects of the SAS System and SAS Learning Edition without authorization.

45. WPL has also infringed SAS's copyright in that portion of the Copyrighted Materials represented by the SAS System and SAS Learning Edition by causing WPS to reproduce the operations, syntax and command structures of the SAS System and SAS Learning Edition.

## COUNT II
### Copyright Infringement – SAS Manuals
### 17 U.S.C. §§ 101 *et seq.*

46. The allegations contained in paragraphs 1 through 45 are realleged as if fully set forth herein.

47. WPL has infringed SAS's copyright in that portion of the Copyrighted Materials represented by the SAS Manuals, by reproducing, copying and using those copyrighted manuals without authorization.

## COUNT III
### Breach of Learning Edition License Agreement

48. The allegations contained in paragraphs 1 through 47 are realleged as if fully set forth herein.

49. WPL, by entering into the LE License Agreement agreed, among other things not to use SAS's Learning Edition Software for its own commercial purposes.

50. WPL, by its actions described above, has failed to comply with the terms of the LE License Agreement.

51. As a result of the breaches of LE License Agreement, SAS has been damaged in an amount to be determined at trial but reasonably believed to be in excess of $75,000.

### COUNT IIIA (Alternative)
### Tortious Interference with Contract

52. The allegations contained in paragraphs 1 through 51 are realleged as if fully set forth herein.

53. Alternatively, or in addition to breaching the LE License Agreement as described above, WPL, in order to engage in development and benchmark testing, on information and belief, convinced an individual or company which has entered into a SAS MLA to violate the prohibitions in that agreement.

54. WPL knew or should have known about the existence of a valid license agreement or agreements between SAS and its customer(s) which would have prevented the SAS System to be used for development and benchmark testing of WPS.

55. WPL, on information and belief, has thus intentionally interfered with such license agreement or agreements and has induced and encouraged one or more SAS licensees, without justification, to breach the SAS MLA.

56. As a result of WPL's intentional interference with those contractual relations, SAS has suffered damages in an amount to be determined at trial but reasonably believed to be in excess of $75,000.

## COUNT IV
### Tortious Interference with Prospective Economic Advantage

57. The allegations contained in paragraphs 1 through 56 are realleged as if fully set forth herein.

58. As described above, SAS has long-standing customers which license its software in order to run SAS Programs. WPL, in connection with its conduct described herein, has targeted those customers which comprise its sole market for WPS.

59. WPL, in its marketing efforts for WPS, has induced SAS customers not to renew their licenses with SAS but instead to license its competing WPS product in order to continue to run SAS Programs. But for the intentional interference of WPL, those customers would renew their license agreements with SAS.

60. As described herein, WPL has undertaken these efforts without justification.

61. As a result of WPL's intentional interference with SAS's prospective economic advantage, SAS has suffered damages in an amount to be determined at trial but reasonably believed to be in excess of $75,000.

## COUNT V
### Unfair and Deceptive Trade Practices/Unfair Competition
### N.C.G.S. § 75-1.1

62. The allegations contained in paragraphs 1 through 61 are realleged as if fully set forth herein.

63. The actions of WPL as described above (separate and apart from any copyright violations) constitute unfair and deceptive practices and unfair competition affecting commerce and causing injury to the business and property of SAS in violation of N.C.G.S. § 75-1.1.

64. As a result of WPL's foregoing conduct, SAS has suffered actual damages.

### REQUEST FOR RELIEF

**WHEREFORE**, SAS Institute Inc. respectfully requests:

A. That this Court enter judgment in favor of SAS and against WPL on each of SAS's claims;

B. That this Court award SAS the damages it proves at trial, reasonably believed to be in excess of $75,000, plus interest, against WPL;

C. That this Court treble the damages of SAS pursuant to N.C.G.S. §75-16;

D. That this Court enter judgment for punitive damages against WPL in an amount to be determined at trial on SAS's claim for tortious interference with contract and tortious interference with prospective economic advantage;

E. That this Court grant SAS an equitable accounting of WPL's profits and award SAS judgment for its damages, statutory damages or WPL's profits, whichever are greater, arising or derived from WPL's unlawful actions and that the Court require WPL to disgorge all amounts earned as a result of their illegal activities;

F. That this Court restrain and enjoin, temporarily and preliminarily during the pendency of this action, and permanently thereafter, WPL and any of is officers, directors, agents, servants, employees and attorneys, and all persons in active concert or participation with any of them, who receive actual notice of the Court's order by personal service or otherwise, from committing any act that infringes SAS's rights in its copyrighted materials'

G. That SAS recover from WPL the costs and expenses incurred in this action, including attorney's fees, pursuant to N.C.G.S. § 75-16.1, or other applicable law;

H. That there be a jury trial of all issues so triable; and

I. That SAS be granted such other and further relief as may be just and proper.

This the 19th day of January, 2009.

/s/ Pressly M. Millen
Burley B. Mitchell, Jr.
State Bar No. 3040
Pressly M. Millen
State Bar No. 16178

OF COUNSEL:

Womble Carlyle Sandridge & Rice,
*a Professional Limited Liability Company*
150 Fayetteville Street
Suite 2100
Post Office Box 831
Raleigh, North Carolina 27602
(919) 755-2100
(919) 755-6067 (facsimile)

Attorneys for Plaintiff
SAS Institute Inc.