UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:10-CV-25-FL

| | | |
|---|---|---|
| SAS INSTITUTE INC., | ) | |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| v. | ) | **and** |
| | ) | **ORDER** |
| WORLD PROGRAMMING LIMITED, | ) | |
| | ) | |
| Defendant. | ) | |

This case comes before the court on the motion (D.E. 11) by defendant World Programming

Limited ("defendant") to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P.

12(b)(2), for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P.

12(b)(6), and for *forum non conveniens*. In the alternative, defendant moves for a change of venue

pursuant to 28 U.S.C. § 1404. Plaintiff SAS Institute Inc. ("plaintiff") opposes the motion on its

merits. Plaintiff has also filed a motion (D.E. 21), pursuant to Fed. R. Civ. P. 37(a), to compel

defendant to provide complete responses to certain interrogatories and requests for production

("RFP") related to the issue of personal jurisdiction. The motions have been fully briefed.[1] The

motion to dismiss was referred to the undersigned Magistrate Judge for review and recommendation

pursuant to 28 U.S.C. § 636(b)(1)(B), and the motion to compel was referred for decision pursuant

to 28 U.S.C. § 636(b)(1)(A). For the reasons set forth below, it will be recommended that

---

[1] In support of its motion to dismiss, defendant filed a memorandum (D.E. 13) and a declaration (D.E. 12) with
exhibits (D.E. 12-1 to -3). In opposition, plaintiff filed a memorandum (D.E. 23), two exhibits (D.E. 24-13, -27 (sealed)),
two declarations (D.E. 24; D.E. 24-1) with an exhibit (24-2), and several affidavits (D.E. 24-3, -7, -10) with exhibits
(D.E. 24-4 to -6; D.E. 24-8,-9,-11,-12). Defendant filed a reply memorandum (D.E. 32).
    In support of its motion to compel, plaintiff filed a memorandum (D.E. 22) and two exhibits (D.E. 21-1, -2).
In opposition, defendant filed a memorandum (D.E. 30) and a declaration (D.E. 31) with exhibits (D.E. 31-1, -2).

defendant's motion to dismiss be denied without prejudice and ordered that plaintiff's motion to compel be allowed in part and denied in part.

## BACKGROUND

I.    PLAINTIFF'S ALLEGATIONS AND CLAIMS

Plaintiff is a North Carolina corporation that produces business intelligence software and other software products, having its principal place of business in Cary, North Carolina. (Compl. (D.E. 1) ¶ 2). Defendant is incorporated under the laws of England and Wales and that also develops software. (*Id.* ¶¶ 3, 19).

Plaintiff has developed the SAS System software that enables users to access, manage, analyze, and present data, and the SAS Learning Edition software to teach individuals how to use the SAS System. (*Id.* ¶¶ 6, 12). Users of the SAS System and SAS Learning Edition are required to enter into license agreements that provide, among other things, that they are governed by North Carolina law. (*Id.* ¶¶ 11, 15, 17). Plaintiff publishes a wide range of reference materials that describe the features of the SAS System and provide instructions and assistance to its users. (*Id.* ¶ 9). The SAS System software, SAS Learning Edition software, and SAS Manuals have copyright protection. (*Id.* ¶¶ 35-38).

Defendant has developed software, named World Programming System, that is designed to reproduce central aspects of the SAS System and thereby to replace the SAS System for certain customers of plaintiff. (*Id.* ¶¶ 19, 20). To create its software, defendant used one or more copies of the SAS System, although in 2008 plaintiff had refused to give defendant a license to use it. (*Id.* ¶¶ 23, 24, 30). Defendant also acquired a copy of the SAS Learning Edition software, agreeing to the terms of the associated license. (*Id.* ¶ 25).

2

In addition, defendant studied SAS Manuals or documents from them. (*Id.* ¶ 29). In 2006, a vice president of defendant, representing himself as being in the financial services business, registered on plaintiff's website in a manner that allowed him to view, download, copy, and print proprietary information of plaintiff, including certain SAS Manuals. (*Id.* ¶ 26). The website was controlled from plaintiff's offices in North Carolina. (*Id.* ¶ 27). The terms of registration on the website included a forum selection clause providing that "'[a]ny legal action or proceeding relating to [registrant's] access to or use of, this Web site shall be instituted in a state or federal court in Raleigh or Wake County, North Carolina.'" (*Id.* (quoting the terms of use)). The terms also specified that federal or North Carolina law governed all matters relating to the registrant's access to or use of the website and that materials accessed were to be used solely for non-commercial purposes. (*Id.* ¶¶ 27, 28).

On 19 January 2010, plaintiff filed this action. Plaintiff alleges that defendant's actions infringed its copyrights in its software and manuals, and violated the terms of the license for the SAS Learning Edition. (*Id.* ¶¶ 40, 41, 48-51). Plaintiff asserts claims for copyright infringement with respect to the SAS System and SAS Manuals (Compl. ¶¶ 43-47) (counts I and II); breach of the license agreement for the SAS Learning Edition (*id.* ¶¶ 48-51) (count III); tortious interference with contract (*id.* ¶¶ 52-56) (count IIIA); tortious interference with prospective economic advantage (*id.* ¶¶ 57-61) (count IV); and unfair and deceptive trade practices and unfair competition under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § § 75-1.1, *et seq.* (*id.* ¶¶ 62-64) (count V).[2] Plaintiff seeks compensatory damages, punitive damages, statutory treble

---

[2] Defendant represented in its memorandum in support of its motion to dismiss that in October 2009 plaintiff filed substantially the same action in the United Kingdom. (Def.'s Dismissal Mot. Mem. 1). According to recent filings in this case, this action is still pending. (*See, e.g.*, Pl.'s Resp. to Order to Show Cause (D.E. 38) 1-2) (representing that

damages, injunctive relief, costs, expenses, attorney's fees, and any other just and proper relief. (*Id.*, Request for Relief 14-15).

## II.    POST-COMPLAINT PROCEEDINGS

On 17 March 2010, defendant filed its motion to dismiss based, as indicated, on lack of personal jurisdiction and other grounds. In support, it filed the declaration of Samuel Norman James Manning, "a founder, shareholder, director and the sales manager" of defendant. (Manning Dec. (D.E. 12) ¶ 1).[3] In the declaration, dated 17 March 2010, Manning points to several purported facts tending to minimize defendant's contacts with North Carolina and the United States generally, including the following: defendant has no offices or salespeople and does not advertise in the United States (*id.* ¶¶ 4, 7, 8); 51 of its 223 customers since 2004 are located in the United States (*id.* ¶ 5); about 18 percent of its revenue "this year to date" comes from customers in the United States (*id.*); and it has no customers in North Carolina and generates no revenue from North Carolina (*id.* ¶ 6).

On 8 April 2010, plaintiff filed a motion (D.E. 16), stating it was with defendant's consent, requesting that plaintiff be granted an extension of time within which to respond to the dismissal motion to enable it to conduct limited jurisdictional discovery pursuant to a proposed schedule. The proposed discovery included written discovery requests and, at plaintiff's option, a deposition of defendant pursuant to Fed. R. Civ. P. 30(b)(6). On 14 April 2010, the court allowed the motion and

---

the action in the United Kingdom "proceeded to trial on certain issues beginning on June 10, 2010 before the Chancery Division in the High Court of Justice" and "[o]n July 23, 2010, the UK Court issued its Approved Judgment in that case" but also "refer[red] a number of issues to the European Court of Justice for resolution").

[3] Although the Manning Declaration was filed in connection with defendant's motion to dismiss, plaintiff discusses it in its motion and supporting memorandum, and defendant discusses it in its memorandum as well.

4

granted plaintiff permission "to conduct limited jurisdictional discovery as agreed to by the parties." (14 Apr. 2010 Order (D.E. 17)).

On 12 April 2010, plaintiff served its written discovery requests (D.E. 21-1) on defendant. On 3 May 2010, defendant served objections and responses. The parties then apparently agreed upon a protective order, eventually adopted by the court (*see* D.E. 29). On 6 May 2010, defendant served its superseding objections and response (D.E. 21-2), which is the version of its response now before the court. Although defendant provided some information and apparently some documents in response to the requests, plaintiff found the production incomplete. On that basis, it cancelled the Rule 30(b)(6) deposition of defendant that had been scheduled. (*See* Letter from P. Millen to P. Brown dated 5 May 2010 (D.E. 31-2)). Plaintiff filed the instant motion to compel after the parties were unable to resolve their disputes over defendant's response.

## PLAINTIFF'S MOTION TO COMPEL

Because plaintiff's motion to compel seeks discovery related to the issue of personal jurisdiction, the court will address it first. If additional discovery is warranted, any decision on personal jurisdiction would necessarily have to be deferred. The issue of personal jurisdiction should, of course, be resolved before the other grounds for defendant's motion are addressed.

The court begins its analysis of plaintiff's motion with a review of relevant legal principles and then turns to an analysis of defendant's blanket objections to the disputed discovery requests and the individual discovery requests themselves.

5

# I.    APPLICABLE LEGAL PRINCIPLES

## A.    Personal Jurisdiction

### 1.    North Carolina Long-arm Jurisdiction

A federal court in North Carolina may exercise personal jurisdiction over a non-resident defendant "only in the manner provided for by North Carolina law and only to the extent personal jurisdiction is consistent with constitutional due process." *Manley v. Air Canada*, __ F. Supp. 2d __, __, No. 5:10-CV-336-FL, 2010 WL 4852365, at *2 (E.D.N.C. 29 Nov. 2010) (citing *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002)). Because North Carolina's long-arm statute is construed to extend jurisdiction to the full extent permitted by the Due Process Clause of the Fourteenth Amendment, the court need inquire only into whether the exercise of jurisdiction over a defendant comports with due process requirements. *Id.* (quoting *Christian Science Bd. of Directors v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001)).

### 2.    Due Process Requirements

To satisfy due process, a defendant outside the forum state must "have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). There are two types of extraterritorial personal jurisdiction: specific and general. *ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 711-12 (4th Cir. 2002).

Jurisdiction is specific if the defendant's contacts with the state are also the basis for the suit. *Id.* at 712. "In determining specific jurisdiction, we consider (1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the

6

plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Id.* (quoting *Christian Science Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001)); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 476-77 (1985). .

Jurisdiction is general if the defendant's contacts with the forum state are not also the basis for suit and jurisdiction arises from the defendant's general, more persistent, but unrelated contacts with the state. *Id.* "To establish general jurisdiction over the defendant, the defendant's activities in the State must have been 'continuous and systematic,' a more demanding standard than is necessary for establishing specific jurisdiction." *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.9 (1984)).

Relevant contacts with the forum state for purposes of personal jurisdiction can include dealings with a corporation having a place of business in the forum state or a corporation organized under the laws of the forum state. *See, e.g., Hardee's Food Systems, Inc. v. Rosenblatt*, 44 F. Supp. 2d 767, 769 (E.D.N.C. 1998). In addition, "the place that the plaintiff feels the alleged injury is plainly relevant to the inquiry [although] it must ultimately be accompanied by the defendant's own contacts with the state." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997) (discussing *Calder v. Jones*, 465 U.S. 783, 789 (1984)).

In *ALS Scan*, the Fourth Circuit addressed contacts with a state through the Internet. Adopting the sliding scale model set forth in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997), it recognized a range of Internet contacts, extending from passive websites to the knowing and repeated transmission of computer files over the Internet. *ALS Scan*, 293 F.3d at 713-14. Based on this model, the Fourth Circuit held that "a State may, consistent

7

with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *Id.* at 714. "The fact that a website can be accessed anywhere . . . does not by itself demonstrate that a publisher was intentionally directing its website content to a [particular State's] audience." *Ugwuonye v. Rotimi*, No. PJM 09-658, 2010 WL 3038099, at *2 (D. Md. 30 July 2010) (citing *Young*, 315 F.3d at 263).

### 3. Forum Selection and Choice of Law Provisions

An additional, important jurisdictional factor can be a forum selection clause. "A valid forum selection clause . . . may act as a waiver to objections to personal jurisdiction." *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 282 n.11 (4th Cir. 2009). Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Courts have upheld application of otherwise valid forum selections clauses contained in a website's terms of use. *See Meier v. Midwest Recreational Clearinghouse, LLC*, No. 2:10-cv-01026-MCE-GGH, 2010 WL 2738921, at *2 (E.D. Cal. 12 July 2010) (noting that forum selection clauses in a website's terms and conditions are routinely upheld); *see also CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 668-69 (D. Md. 2009) (concluding that defendants consented to personal jurisdiction by operation of a forum selection clause in the terms of use for plaintiff's website); *Burcham v. Expedia, Inc.*, No. 4:07CV1963 CDP, 2009 WL 586513, at *3 (E.D. Mo. 6 Mar. 2009) (same).

8

Choice of law provisions may, of course, also be included in contracts. While not itself potentially dispositive of personal jurisdiction as a forum selection clause is, a choice of law provision is one factor that a court may take into account in determining whether the exercise of personal jurisdiction is proper. *Consulting Engineers Corp.*, 561 F.3d at 282 (citing *Burger King*, 471 U.S. at 482).[4]

### 4. Personal Jurisdiction under Rule 4(k)(2)

Rule 4(k)(2) sets forth a long-arm statute for the United States a whole. It provides as follows:

> (2)    Federal Claim Outside State—Court Jurisdiction. For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>
> (A)    the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
>
> (B)    exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2). Thus, there are three requirements for this provision to confer personal jurisdiction over a defendant: the suit must arise under federal law; the defendant must not be subject to personal jurisdiction in any state; and the defendant must have contacts with the United States consistent with, in the present context, the Due Process Clause of the Fifth Amendment. *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 275 (4th Cir. 2005).

---

[4] For a listing of contacts relevant for specific jurisdiction, see *Consulting Engineers Corp.*, 561 F.3d at 278.

9

## B. Discovery regarding Personal Jurisdiction

Discovery under the Federal Rules of Civil Procedure is "broad in scope and freely permitted," *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402 (4th Cir. 2003), and district courts "have broad discretion in [their] resolution of discovery problems that arise in cases pending before [them]." *Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993) (quoting *In re Multi-Piece Rim Prods. Liab. Litig.*, 653 F.2d 671, 679 (D.C. Cir. 1981)) (alterations in original). Accordingly, "[w]hen plaintiff can show that discovery is necessary in order to meet defendant's challenge to personal jurisdiction, a court should ordinarily permit discovery on that issue unless plaintiff's claim appears to be clearly frivolous." *Rich v. KIS California, Inc.*, 121 F.R.D. 254, 259 (M.D.N.C. 1988); *see also McLaughlin v. McPhail*, 707 F.2d 800, 806-07 (4th Cir. 1983) (holding that limited discovery "may be warranted to explore jurisdictional facts in some cases"); *cf. Carefirst*, 334 F.3d at 402 ("When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery."). As with general discovery, in jurisdictional discovery, "[t]he appropriate procedure to follow when a party is dissatisfied with a response to discovery requests is a motion to compel discovery." *Hartz and Co., Inc. v. Prod. Control Info. (PCI) Ltd.*, 70 F.3d 112 (Table), Nos. 93-2500, 94-1164, 94-1176, 94-1177, 1995 WL 678484, at *6 (4th Cir. 15 Nov. 1995) (holding that a plaintiff had no basis to seek an order granting personal jurisdiction over defendant as a sanction for defendant's failure to comply with discovery requests related to personal jurisdiction where plaintiff never moved to compel the jurisdictional discovery responses pursuant to Rule 37).

10

## II. DISCOVERY REQUESTS SUBJECT TO MOTION

### A. Defendant's Blanket Objections to the Requests

Defendant asserts several objections to the discovery requests in dispute that it says warrant blanket denial of plaintiff's motion. One is that defendant has already produced sufficient information from which the court can determine the issue of this court's personal jurisdiction over it. If it has, then the further discovery sought by plaintiff would be moot. The court finds that defendant has not demonstrated that further discovery would be pointless.

As plaintiff argues, the Manning Declaration leaves several material matters unaddressed. These include: whether defendant registered on plaintiff's website such that it had the opportunity to view, download, copy, and print plaintiff's proprietary information, including SAS Manuals that are the subject of plaintiff's copyright infringement claim; whether defendant consented to jurisdiction in North Carolina by agreeing to the terms of use for website registration; whether defendant entered into a software licensing agreement with plaintiff that is governed by North Carolina law; whether defendant provided its software to individuals in North Carolina or other parts of the United States by means other than direct sales; whether defendant had any relationships with businesses in North Carolina, including possibly consultants; and whether any individuals in North Carolina had accessed defendant's website.

Defendant provides a list of information and documents it has purportedly produced to plaintiff. (*See* Def.'s Mem. 5). The court cannot say that the materials listed definitively resolve the matters left open by Manning's declaration. Presumably if the listed material did address these matters, the information would have been included in his or some other declaration. The court also cannot say that the listing exhausts all other information and documents that could reasonably be

11

expected to lead to the discovery of admissible evidence regarding this court's jurisdiction over defendant.

Although defendant portrays itself as responding forthrightly to plaintiff's discovery requests, its actual response shows that it provided none of the requested information in response to all but 3 of the 13 interrogatories (Int. nos. 2, 3, 12) and none of the documents requested in response to all but 3 of the 15 requests for production (RFP nos. 7, 8, 13). Where it did provide information or documents, it did so subject to objections.

In addition, the court finds meritless defendant's blanket objection that its production of information and documents to date fulfills the parties' agreement regarding the scope of jurisdictional discovery and thereby the scope of the court's 14 April 2010 order enforcing that agreement. Documents submitted by defendant itself show that while the parties did agree that plaintiff could perform some personal jurisdictional discovery, including the taking of a Rule 30(b)(6) deposition of defendant, there was not an agreement on the specific limits of that discovery. (*See, e.g.*, Email from P. Brown to P. Millen dated 13 Apr. 2010 (D.E. 31-2 at 2) ("You served discovery before we mutually agreed on the scope.")). The portion of a written stipulation (*see* D.E. 31-1 at 8-9) proposed by defendant attempting to establish specific limits on the jurisdictional discovery was expressly rejected by plaintiff (*see* Email from P. Millen to P. Brown dated 13 Apr. 2010 (D.E. 31-2 at 2)).[5] The court will therefore determine the proper scope of the jurisdictional discovery at issue based on applicable principles of law.

---

[5] Defendant claims that it "would not have consented to the motion [for extension] as drafted, since the proposed order did not include specific boundaries as to the scope of discovery, which [defendant] considered essential." (Def.'s Mem. 2). But defendant voiced no such objection to the court before it ruled on the motion and did not thereafter timely pursue the issue with the court. It is too late in the day for defendant to be raising the issue now.

12

Defendant also complains that the production of the information and documents sought would be unduly burdensome and oppressive. Except as to one request that is unduly burdensome on its face, it has made no convincing showing to that effect or even seriously attempted to do so. The information and documents to be produced would appear generally to be of the type routinely kept in the ordinary course of business. Moreover, according to defendant itself, it has already produced almost all the material sought. Further, defendant's contention that its contacts with North Carolina and the United States are minimal suggests that the volume of responsive materials is not great. In addition, the court is placing limitations on certain requests to which defendant is being ordered to respond, which should further ameliorate any burden the requests would otherwise impose.

Defendant also argues that its agreement to make a person available to be deposed on jurisdictional issues would provide plaintiff any additional information it could reasonably need. It is fundamental, though, that an effective deposition generally depends on production and review of related documents beforehand.

Defendant cites to cases in which the court, in its discretion, denied discovery on personal jurisdiction. (*See* Def.'s Mem. 6, 9). Those cases are readily distinguishable from this case. Among other reasons, defendant here agreed to discovery on personal jurisdiction and the court ordered it, although defendant disputes the scope of the discovery permitted; defendant's response to the discovery requests plaintiff served was not forthright, but rather highly selective; and the record contains evidence of material contacts by defendant with North Carolina and the United States generally (*see, e.g.*, Dec. of Pressly M. Millen (D.E. 24) & Exs.).

13

While finding that further development of the record on issues of personal jurisdiction is warranted, the court does not believe that discovery on jurisdictional issues is so intertwined with the merits that the jurisdictional issues should be resolved at trial. The court will therefore proceed to consider the individual discovery requests in dispute.

## B. Analysis of the Specific Discovery Requests

By its motion to compel, plaintiff seeks an order requiring defendant to provide complete responses to plaintiff's interrogatories nos. 3-6 and 9-12 and requests for production ("RFP") nos. 2 and 6-15. Certain requests will be addressed in groups because they present common issues.

### 1. Defendant's Customers and Leads (Int. nos. 3 to 6 and 9; RFP no. 15)

In these requests, plaintiff seeks information relating to defendant's contacts with customers and potential customers. Specifically, interrogatories nos. 3 to 6 seek the name, address, and other information regarding: all customers of defendant's resellers to whom the resellers have sold any of defendant's products (other than customers of defendant identified as such in response to interrogatory no. 1) (Int. no. 3); all persons or entities to whom defendant has provided any of its products on a trial or evaluation basis (Int. no. 4); all persons identified as leads by defendant's resellers (Int. no. 5); and all persons and entities in the United States from whom defendant has received any sales inquiry, evaluation request, or support inquiry (Int. no. 6). Interrogatory no. 9 seeks any information defendant has regarding the geographic location of Internet users who access defendant's website (Int. no 9). By RFP no 15, plaintiff seeks documents constituting or concerning communications with persons or entities in the United States identified as leads by defendant's resellers.

14

All of these requests are relevant to defendant's contacts with the United States and thereby to the question of personal jurisdiction. But only two, interrogatory no. 6 and RFP no. 15, are by their terms limited in application to the United States. The others are overbroad in the absence of this limitation, and the court will therefore impose it.

The fact that interrogatory no. 3 seeks information regarding the customers of defendant's resellers, rather than the customers of defendant itself, does not render it irrelevant. It is certainly possible for a producer of goods to direct sales to particular areas through third parties, such as resellers. Plaintiff may permissibly explore this area through discovery. One aspect of indirect sales would, of course, be the location of the customers to whom the third parties, here the resellers, are selling. Of course, plaintiff would have to show more than defendant's knowledge that the resellers were selling to customers in North Carolina or other parts of the United States. *See Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945-46 (4th Cir. 1994) (rejecting principle stated by plurality in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980) that jurisdiction may lie "over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State"). But the need to show more than simply the location of the resellers' customers does not render that information irrelevant.

Interrogatory nos. 3 and 4 seek the identification of the software products that defendant provided to persons and entities on a trial or evaluation basis. The court finds that the request for this information is within the permissible scope of jurisdictional discovery. It relates to the nature of the contacts defendant had. For instance, it would be relevant if a particular person was evaluating a single product or multiple products. Interrogatory no. 3 also requests the units

15

purchased, which the court interprets to mean the number of units purchased. For the reasons stated, this information is also properly discoverable.

The period covered by these discovery requests, and all the others at issue, is 1 January 2004 to the present. (*See* Plf.'s Disc. Req. 1). The court finds that this time period is a reasonable one because the alleged conduct that is the basis of plaintiff's claims and thereby also the basis for any specific jurisdiction over defendant could have occurred over this period. *See, e.g., Hambric Sports Management, LLC v. Team AK, Inc.*, Civil Action No. 3:09-CV-1662-L, 2010 WL 2605243, at *6 (N.D. Tex. 29 June 2010) (finding specific jurisdiction existed because defendant directed at least some of his actions toward the forum state of Texas "over the course of the time period of events giving rise to this lawsuit" and could therefore foresee resulting injury in Texas and being haled into court there); *Lane v. Lucent Technologies, Inc.*, 388 F. Supp.2d 590, 594 (M.D.N.C. 2005) (allowing motion to dismiss for lack of specific jurisdiction, in part, on grounds that defendant "lived in Florida at all relevant time periods for the actions giving rise to Plaintiff's complaint"). Although the complaint does not allege specific dates for much of the alleged conduct by defendant, the allegations it does assert indicate that the conduct could extend back to 2004, the earliest date in which copyright registrations were made for works whose copyright plaintiff alleges defendant infringed. (*See* Compl., Ex. A (D.E. 1-1)).

Although defendant now objects to the time period specified in the discovery requests, the Manning Declaration itself provides information regarding defendant's customer base since 2004 and the number of visits of its employees to the United States since 2003. (Manning Dec. ¶¶ 57). Similarly, in its memorandum, defendant states that it produced to plaintiff revenue information, worldwide and for the United States, for the years 2004 through 2010. (Def.'s Mem. 5).

16

IT IS THEREFORE ORDERED that, to the extent it has not already done so, defendant shall serve on plaintiff no later than 24 February 2011 all non-privileged[6] information and documents requested in interrogatories nos. 3 to 6 and 9, and RFP no. 15 relating to those persons and/or entities inquired about that are in the United States.

### 2. Records referenced in the Manning Declaration (RFP no. 12)

In his declaration, Manning references "records" from which he obtained information set forth in the declaration regarding defendant's customers in the United States. (*See* Manning Dec. ¶¶ 5, 6). By RFP no. 12, plaintiff seeks these "records."

The court finds that they are discoverable. Defendant put the records in issue by filing a declaration that expressly refers to them as the basis for information in the declaration. Moreover, as indicated, they relate to the customers defendant has in the United States, a topic relevant to personal jurisdiction over defendant. To the extent that the request seeks records about customers outside the United States, the records are not directly relevant to the personal jurisdiction of this court, and the court will not require defendant to produce those records.

IT IS THEREFORE ORDERED that, to the extent it has not already done so, defendant shall serve on plaintiff no later than 24 February 2011 all non-privileged documents requested in RFP no. 12 relating to persons and entities in the United States.

---

[6] Privileged information for purposes of this Order is deemed to include materials protected by the work-product doctrine. Nothing herein shall relieve defendant of any obligation to disclose the nature of any material withheld from production. *See* Fed. R. Civ. P. 26(b)(5).

### 3. Defendant's Possession and Acquisition of Plaintiff's Manuals and Software (Int. nos. 10 to 12; RFP nos. 6, 7, 9, 10)

In these requests, plaintiff seeks information and documents regarding defendant's possession of or access to plaintiff's products and the manner by which it obtained such access or possession. Specifically, interrogatory no. 10 seeks for each SAS Manual that has been in defendant's possession, custody, or control the manual's name and the manner and date of acquisition. Interrogatory no. 11 requests for each version of SAS Learning Edition to which defendant has had access, identification of the version, and the manner and first date of obtaining access. Interrogatory no. 12 seeks the same information for all other SAS software products to which defendant has had access. The requests for production seek all documents constituting, referring, or relating to any effort by defendant to acquire directly or indirectly: any SAS license (RFP no. 6); any copy of the SAS Learning Edition software (RFP no. 7); or any copy of any other SAS software product (RFP no. 10). RFP no. 9 is the same as RFP no. 7. Therefore, no separate response by defendant to RFP no. 9 will be required.

The court finds that inquiry into defendant's possession of plaintiff's products falls within the permissible scope of discovery. Such possession by defendant could signify that it had entered into license agreements with plaintiff authorizing it to possess the products. Obviously, defendant's entry into such a license would constitute a contact with the forum state relevant to personal jurisdiction. The particular terms of any such license, such as a choice of law clause, could also be relevant to jurisdiction. For these same reasons, the request inquiring directly into SAS licenses is relevant.

Alternatively, in the absence of a license, defendant's possession of the products could be in violation of plaintiff's alleged rights. If that were the case, the injury suffered would arguably be

18

felt in North Carolina, the state of incorporation and place of business of plaintiff. The place where the alleged injury is felt is relevant to jurisdiction.

The manner of acquisition of any license or product is also relevant to jurisdiction. Again, if the acquisition were in violation of plaintiff's rights, the injury would be felt in North Carolina. In addition, it would be jurisdictionally material if the sources of the products were in North Carolina or other portions of the United States. If the sources included plaintiff's website, the terms of use of the website would be implicated, which bear on matters pertinent to jurisdiction, including selection of a North Carolina forum, and North Carolina and federal law.

These requests do in some respects touch on the merits of the case. But, as just discussed, they are independently justifiable as inquiries into personal jurisdiction. In addition, the information and documents sought are relatively discrete in scope. Where specific jurisdiction is involved, some intertwining of jurisdictional and merits-based issues is to be expected because such jurisdiction is based on the conduct giving rise to the lawsuit. The court concludes that the instant discovery requests do not intertwine the merits and personal jurisdiction to a degree that renders them improper.

IT IS THEREFORE ORDERED that, to the extent it has not already done so, defendant shall serve on plaintiff no later than 24 February 2011 all the non-privileged information and documents requested in Interrogatories nos. 10 to 12 and RFP nos. 6, 7, and 10.

### 4. Other Contacts of Defendant with North Carolina and the United States (RFP nos. 2, 13, 14)

These three requests seek general information about defendant's contacts with the forum state of North Carolina and the United States as a whole. Specifically, plaintiff seeks: all documents concerning any business relationship defendant has with any business incorporated in North Carolina

19

or with a place of business in North Carolina (RFP no. 2); all of defendant's telephone records showing calls made to or from the United States (RFP no. 13); and all of defendant's records showing non-telephonic communications to or from the United States (RFP no. 14).

The court finds that the subject matter of RFP no. 2 is within the proper scope of discovery. Business relationships defendant may have with businesses incorporated under the laws of or having a presence in North Carolina relate to the extent and nature of defendant's contacts with North Carolina.

The subject matter of RFP no. 13 is also within the proper scope of discovery. Telephone calls to the forum state are relevant to personal jurisdiction, although such calls alone are certainly not sufficient to establish the necessary minimum contacts. *See Consulting Engineers Corp.*, 561 F.3d at 279 n.5.

But the court finds these requests overbroad in seeking "all" documents concerning the specified subject matter. Not all documents concerning a business relationship are necessary to determine its significance for purposes of personal jurisdiction. Similarly, if one telephone record shows a particular call, other records providing the same information would be superfluous. The court will therefore limit RFP no. 2 to documents sufficient to identify the business relationships inquired about and show their general nature. It will limit RFP no. 13 to telephone records sufficient to show the calls inquired about. A record shall be in compliance with this request if it shows the telephone number to which the call was made, the number of the telephone from which the call was made, and the date of the call.

While the non-telephonic communications inquired about in RFP no. 14 may also be relevant, the request is impermissibly vague and unduly burdensome. The communications inquired

about are identified solely as non-telephonic. There is no specification of the particular types of communications inquired about (*e.g.*, correspondence, email) or other specification identifying the particular documents being sought. Whereas the telephone records of the type sought are generally maintained and included in billings by the telephone company, non-telephonic communications can take many forms and documents relating to them could be scattered among a multiplicity of sources. Defendant shall therefore not be required to respond further to RFP no. 14.

IT IS THEREFORE ORDERED that, to the extent it has not already done so, defendant shall serve on plaintiff no later than 24 February 2011 non-privileged documents requested in RFP no. 2 sufficient to identify any business relationship it has with any business with a place of business in North Carolina and to show their general nature, and non-privileged telephone records sought in RFP no. 13 sufficient to show calls made to or from the United States. Defendant need not respond further to RFP no. 14.

### 5.  Defendant's Accessing of Plaintiff's Website (RFP nos. 8, 11)

By these requests, plaintiff seeks all documents constituting or concerning any effort by defendant, through its employees or otherwise on its behalf, to register for access to plaintiff's website (RFP no. 8) and all documents constituting or concerning any effort by defendant to access that website.[7] (RFP no. 11). These requests, as clarified below, fall within the permissible scope of jurisdictional discovery.

One reason is that, as discussed, the terms of use of the website are alleged by plaintiff to include agreement to North Carolina as the forum state for any litigation. The requests therefore

---

[7] Although this request (RFP no. 11) uses the term "any SAS website," the parties' submissions generally, including RFP no. 8, refer to plaintiff as having a single website. (*See* RFP no. 8 ("SAS's website")). For purposes of its response, defendant should deem both requests to apply to any website of plaintiff.

21

relate to the question of whether defendant consented to the jurisdiction of this court. The terms also, of course, provided for application of North Carolina law, a jurisdictionally relevant factor.

In addition, efforts by defendant to access plaintiff's website and the purpose for the access sought are relevant to the issue of the extent and nature of defendant's contacts with North Carolina and any other portion of the United States, to the extent the website is hosted in these jurisdictions. (*See id.* (alleging that plaintiff's website was "controlled by [plaintiff] from its offices in Cary, North Carolina")).

The court notes that the scope of RFP no. 11—documents constituting or concerning efforts by defendant to access plaintiff's website—appears to include the documents sought by RFP no. 8—documents constituting or concerning efforts by defendant to register for access to plaintiff's website. The greater specificity of RFP no. 8 is justifiable based on the allegation that defendant did at one point register on plaintiff's website. The broader net cast by RFP no. 11 is also appropriate to provide a more complete view of defendant's efforts to gain access. Needless to say, defendant need produce only one copy of any document responsive to both requests.

IT IS THEREFORE ORDERED that, to the extent it has not already done so, defendant shall serve on plaintiff no later than 24 February 2011 all non-privileged documents requested in RFP nos. 8 and 11.

## DEFENDANT'S MOTION TO DISMISS

The court's ruling that defendant must provide additional discovery regarding personal jurisdiction precludes resolution of the portion of defendant's dismissal motion based on that ground pending completion of the jurisdictional discovery. The additional discovery includes not only that ordered herein, but also the Rule 30(b)(6) deposition of defendant that plaintiff was provided the

22

option to take. Because the issue of jurisdiction must be resolved prior to addressing the other issues

presented by defendant's motion, action on any other ground asserted in defendant's motion should

also be deferred. Consideration has been given to the option of the court staying ruling on the

dismissal motion pending completion of the jurisdictional discovery and allowing the submission

of supplemental briefs addressing the additional discovery. The more efficient course, however,

appears to be for the court to deny the motion without prejudice so that the briefing on any renewed

motion will address comprehensively the jurisdictional discovery. It will therefore be recommended

that defendant's motion to dismiss be denied without prejudice pending completion of jurisdictional

discovery.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that plaintiff's motion to compel (D.E. 21) is

ALLOWED IN PART and DENIED IN PART on the terms set forth above and the following

additional terms:

1.     All answers to interrogatories ordered to be served herein shall be verified by

defendant and signed by its counsel in accordance with the applicable rules. If defendant takes the

position that all information sought by an interrogatory has already been provided, it shall so state

and provide the day, month, and year of such production, to the extent reasonably ascertainable, and

the method of production (*e.g.*, email from attorney X to attorney Y on or about a specified date).

2.     All documents ordered to be served pursuant to a request for production shall be

accompanied by a response, signed by counsel in accordance with the applicable rules, identifying

by Bates number the documents produced. If defendant takes the position that all documents sought

by a production request have already been provided, it shall so state and provide the day, month, and

23

year of such production, to the extent reasonably ascertainable; a general description of the documents produced; and the method of production.

3.      Plaintiff shall file a notice no later than 3 March 2011 stating whether it intends to take the Rule 30(b)(6) deposition of defendant on jurisdictional issues. If the notice states that plaintiff does intend to take the deposition, the deposition shall be held no later than 17 March 2011, and any renewed motion by defendant to dismiss shall be filed by 31 March 2011. If the notice states that plaintiff does not intend to take the deposition, no such deposition shall be held, and any renewed motion by defendant to dismiss shall be filed by 17 March 2011.

IT IS RECOMMENDED that defendant's motion to dismiss (D.E. 11) be DENIED without prejudice to defendant's refiling it following completion of the additional jurisdictional discovery.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have 14 days or such other period as the court may direct in which to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

SO ORDERED, this the 3rd day of February 2011.

James E. Gates
United States Magistrate Judge

24