# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-CV-25-FL

| | |
|---|---|
| SAS INSTITUTE INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| WORLD PROGRAMMING LIMITED | ) |
| | ) |
| Defendant. | ) |

## DECLARATION OF ZOË LOUISE BENT

ZOË LOUISE BENT declares as follows:

1. I am a member of the Law Society of England and Wales. I am also a Senior Associate of the law firm Bristows, solicitors representing the plaintiff, SAS Institute Inc., ("SAS") in the High Court proceedings in England ("the English proceedings"). I submit this Declaration in connection with the request made on behalf of SAS that Chief United States District Court Judge Flanagan reconsider the order filed on 18 March 2011 allowing World Programming Limited's ("WPL") Motion to Dismiss the above proceedings on the grounds of *Forum Non Conveniens*. In order to do so I have read the decision of Judge Flanagan.

A. English Court's Jurisdiction to hear US Copyright Infringement Claims

2. Whether an English court may entertain an action for infringement of foreign copyright was considered in *Lucasfilm & Others v Andrew Ainsworth & Others 2009 EWCA CIV 1328* ("*Lucasfilm*"). A copy of that decision is attached to this Declaration as Exhibit A.

1

The particular facts of that case[1] involved consideration of whether claims for infringement of U.S. copyright were justiciable in England. In answering the question, the Court of Appeal concluded that even where an English court has personal jurisdiction over a defendant it does not have subject-matter jurisdiction over claims to infringement of copyrights arising in any non-EU state, such as the United States. The decision, which is currently on appeal to the Supreme Court is, at the time of writing this Declaration, binding on an English court of first instance which would be compelled to reject jurisdiction over a claim to infringement of a non-EU copyright.

3. Lord Justice Jacob, in delivering the unanimous decision of the court in *Lucasfilm* said as follows

> "*183 We accordingly conclude that for sound policy reasons the supposed international jurisdiction over copyright infringement claims does **not** exist. If it is ever to be created it should be by Treaty with all the necessary rules about mutual recognition, lis pendens and so on. It is not for judges to arrogate to themselves such a jurisdiction.*" [***Emphasis added.***]

4. Had this decision been made known to Court during the course of the application, the Court would have appreciated that the English court was not a possible alternative forum where claims to infringement of SAS's non-EU, [U.S.], copyright could be heard.

---

[1] As part of devising the concept and production for the film "Star Wars" a number of designs and drawings were produced on behalf of the US-based claimant, including a design for a so-called "Stormtrooper" helmet. The defendant (who was domiciled in England) was commissioned on behalf of the claimant to make a prototype of the "Stormtrooper" helmet according to the drawings provided to him. Following the successful release of the Star Wars films, in which the "Stormtrooper" helmet featured, the defendant sold copies of the "Stormtrooper" helmet through his website, claiming that he was the maker of the original moulds used to make the helmets as seen in the films. The claimant commenced proceedings in the US District Court, Central District of California, Western Division in 2005 claiming relief against the defendant for copyright infringement regarding his sales concerning the "Stormtrooper" helmet in the US. The US court found for the claimant and ordered damages and injunctive relief for US copyright infringement. The claimant subsequently sought, amongst other things, to commence a fresh action before the English court for copyright infringement of the US copyright in England. The English court at first instance upheld Lucasfilm's enforcement of its US copyright claims in England. That finding was subsequently appealed by the defendant.

2

## B. English Court's Jurisdiction to hear Breach of License Claim under US Law

5. The trial of the English proceedings has already taken place[2] culminating in judgment being pronounced on 23 July 2010[3] (the "Judgment").

6. During trial, the English court heard witness evidence and legal submissions relating both to the allegations of copyright infringement, of English copyrights and breach of the SAS Learning Edition License.[4]

7. Aside from the issues of copyright infringement, which relate only to England, in its Judgment, the English court made various findings of fact and law relating to: (1) the construction of the SAS Learning Edition License; and (2) breach of the SAS Learning Edition License by the employees of WPL. Such findings are, subject to appeal, final. Those findings will be unaffected by the outcome of the questions which the English court has referred to the Court of Justice of the European Communities (the "ECJ").

8. In addition, although the English court has referred questions to the ECJ relating to defenses to allegations of infringement which may allow a licensee to observe study and test a computer program in certain circumstances under Article 5(3) of the Software Directive, so far as these questions are concerned, whether a licensee can avail itself of such defenses is a matter which is purely concerned with acts taking place in England. Such defenses can have no applicability to acts taking place elsewhere, particularly to acts taking place in the United States. The defenses are purely European in character, and in light

---

[2] The jurisdiction of the English court is not adversely affected by the fact that the law governing the license was stated to be that of North Carolina. The English Court is able to determine matters within its jurisdiction by reference to foreign law by virtue of The Rome II Convention (Regulation 864/2007).

[3] [2010] EWHC 1829 (Ch).

[4] During the trial the English court agreed that it was unnecessary to hear expert evidence regarding the law of contract under North Carolina on the basis the approach taken under North Carolina contract law was similar to English law. Trial Transcript Day 3, page 20 line 3 onwards.

3

of the decision in *Lucasfilm* above, the English court would be bound not to apply such defenses to claims of infringement of non-EU copyright.

9. Added to this fact, one of the findings of fact and law of the English court, which has not been the subject of a referral to the ECJ, is that WPL was found by the English judge not to be a licensee of the SAS Learning Edition (because such licenses were limited to individuals). In such circumstances, any acts by WPL which give rise to a claim of copyright infringement could not avail WPL of the benefit of the defense under Article 5(3) which is subject to the referral to the ECJ. That being so, any claims to copyright infringement by WPL in relation to acts taking place in the United States would be unaffected by the referral to the ECJ and an English court would not entertain a claim against it in England relating to any non-EU copyright.

10. In conclusion, it is therefore clear that if this matter was referred to the English court on the basis of *forum non conveniens* by a non-EU, foreign court, the English court at first instance would be bound not to hear the action on twin grounds: (1) that the breach of contract case was decided in SAS' favour and was therefore not justiciable twice by an English court; and (2) that on claims to infringement of non-EU copyright the English court would be bound by the decision in *Lucasfilm* to dismiss such an action.

11. Finally, I should mention that the Order's conclusion at page 7 and page 8 of the judgment that the *"foreign tribunal has already reached a conclusion that largely vindicates defendant"* is not either factually or legally accurate. First, as a matter of law, the English court, by its reference to the ECJ, is expressly asking for guidance on whether its view of the law is correct. As such its expressed view holds no legal authority whatsoever unless and until the ECJ agrees with its decisions. Moreover, its views of the case as expressed in its Judgment are preliminary in character, and in no sense binding on any court.

4

Secondly, it is factually wrong for Judge Flanagan to suggest that the decision vindicates WPL when in fact the vast majority of the decision which is final and binding, and which is not the subject of the reference to the ECJ, is in favour of SAS. Thus, the Judgment is final as regards the fact that WPL is not a licensee of SAS. It is also final in relation to the construction of the SAS Learning Edition and the fact that the WPL employees are in breach of contract.

12. The testimony contained in this declaration is tendered by me in conformity with Rule of Professional Conduct 3.7(a)(1) and EDNC Local Rule 7.1(h)(1), and is believed by me to relate solely to uncontested facts.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 1st day of April, 2011, at London, England.

_____
Zoë Louise Bent