# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION
### 5:10-CV-25-FL

SAS INSTITUTE INC.,                        )
                                           )
    Plaintiff,                       )
                                           )
v.                                         )    **MEMORANDUM AND**
                                           )    **RECOMMENDATION**
WORLD PROGRAMMING LIMITED,                 )
                                           )
    Defendant.                       )

This case comes before the court on the resubmitted motion (D.E. 71) by defendant World Programming Limited ("defendant") to dismiss for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). The motion was referred to the undersigned Magistrate Judge for review and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* 1st Minute Entry after D.E. 81). It has been fully briefed, [1] and the court has heard argument on it (*see* D.E. 88, 92 (hrg. transcript)). For the reasons set forth below, it will be recommended that the motion be denied.

---

[1] Defendant filed a supporting memorandum (D.E. 73; *see esp.* p. 5), plaintiff an opposing memorandum (D.E. 79; *see esp.* pp. 4-5), and defendant a reply memorandum (D.E. 80; *see esp.* pp. 3-4). Defendant also relies on the supporting memorandum (D.E. 13; *see esp.* pp. 15-25) and reply memorandum (D.E. 32; *see esp.* pp. 7-10) it filed with respect to its original dismissal motion. Plaintiff filed a memorandum (D.E. 23; *see esp.* pp. 20-27) in opposition to the original motion. The court has considered these memoranda regarding the original motion in connection with the instant, resubmitted motion.

## BACKGROUND

### I.     PLAINTIFF'S ALLEGATIONS AND CLAIMS

Plaintiff SAS Institute Inc. ("SAS" or "plaintiff") is a North Carolina corporation that produces business intelligence software and other software products, having its principal place of business in Cary, North Carolina. (Compl. (D.E. 1) ¶ 2). Defendant is incorporated under the laws of England and Wales and also develops software. (*Id.* ¶¶ 3, 19).

Plaintiff has developed SAS System software that enables users to access, manage, analyze, and present data. (*Id.* ¶ 12). The SAS System has copyright protection. (*Id.* ¶¶ 35, 36). Customers of the SAS System are required to enter into a license agreement, the SAS Master License Agreement ("SAS MLA"), which, among other things, prohibits the customer from using the SAS System for purposes other than the customer's own business. (*Id.* ¶ 11).

Plaintiff publishes a wide range of reference materials that describe the features of the SAS System and provide instructions and assistance to its users ("SAS Manuals"). (*Id.* ¶¶ 9, 10). The SAS Manuals have copyright protection. (*Id.* ¶¶ 37, 38). A list of copyright certifications for various SAS Manuals is attached to the complaint as Exhibit A (D.E. 1-2).

In addition, plaintiff has developed software, known as SAS Learning Edition software, that teaches individuals how to use the SAS System. (*Id.* ¶ 12). It includes a selection of SAS Manuals. (*Id.* ¶ 14). Before an individual is entitled to use SAS Learning Edition software, he is required to accept the terms of a license agreement that confers a nontransferable right to use it solely for the purpose of learning how to use the SAS System. (*Id.* ¶¶ 15, 16, 18). The SAS Learning Edition has copyright protection. (*Id.* ¶ 36).

Defendant has developed software, named the World Programming System ("WPS"), that is designed to reproduce central aspects of the SAS System and thereby to replace the SAS

2

System for certain customers of plaintiff. (*Id.* ¶¶ 19, 20). Defendant has also developed a manual for WPS. (*Id.* ¶ 31). Defendant's marketing of WPS is primarily, if not entirely, directed at current SAS licensees and seeks to persuade them to license WPS instead of the SAS system. (*Id.* ¶ 34).

To create WPS, defendant used one or more copies of the SAS System, although in 2008 plaintiff had refused to give defendant a license to use it. (*Id.* ¶¶ 23, 24, 30). In addition, to be able to create WPS, defendant must have studied SAS Manuals to understand various aspects of the SAS System. (*Id.* ¶ 29). Defendant also copied substantial parts of the SAS Manuals in creating the manual for WPS. (*Id.* ¶¶ 31 41).

Upon plaintiff's information and belief, defendant also acquired a copy of the SAS Learning Edition software and agreed to the terms of the associated license. (*Id.* ¶ 25). Instead of or in addition to doing so, defendant, again upon plaintiff's information and belief, convinced a party that had entered into the SAS MLA to violate prohibitions in it by allowing defendant access to the SAS System, which defendant used to develop and test WPS software. (*Id.* ¶ 53).

On 19 January 2010, plaintiff filed this action. It asserts claims for: copyright infringement with respect to the SAS System and SAS Learning Edition (*id.* ¶¶ 43-45) (count I); copyright infringement with respect to the SAS Manuals (*id.* ¶¶ 46, 47) (count II); breach of contract, namely, the license agreement between plaintiff and defendant for the SAS Learning Edition (*id.* ¶¶ 48-51) (count III); tortious interference with contract, that is, plaintiff's SAS MLA for the SAS System with another party (*id.* ¶¶ 52-56) (count IIIA); tortious interference with prospective economic advantage by inducing nonrenewal by SAS customers of their licenses with plaintiff (*id.* ¶¶ 57-61) (count IV); and unfair and deceptive trade practices and

3

unfair competition under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et seq.* ("UDTPA") (*id.* ¶¶ 62-64) (count V). Plaintiff seeks compensatory damages, punitive damages, statutory treble damages, injunctive relief, expenses, attorney's fees, and any other just and proper relief. (*Id.*, Request for Relief 14-15).

## II.    POST-COMPLAINT PROCEEDINGS

On 17 March 2010, defendant filed the original version of its dismissal motion (D.E. 11). In addition to seeking dismissal for failure to state a claim, the motion sought dismissal on the grounds of lack of personal jurisdiction and *forum non conveniens*, and, alternatively, a change of venue. The court granted the portion of the motion seeking dismissal for *forum non conveniens* on 18 March 2011 (D.E. 51), but the Fourth Circuit reversed and remanded pursuant to a decision issued on 16 February 2012 (D.E. 67).

Defendant resubmitted its motion on 23 March 2012. It sought the same relief in the original motion other than dismissal for *forum non conveniens* and also sought abstention or a stay pending completion of similar litigation brought by plaintiff in the England and Wales High Court of Justice. (*See* Compl. 2 n.1). On 6 June 2012, defendant filed a notice (D.E. 87) withdrawing all grounds for its motion except for change of venue and dismissal for failure to state a claim upon which relief can be granted. The court heard argument on the motion on 7 June 2012 (*see* D.E. 88, 92 (transcript of hearing)). Defendant withdrew its request for a change of venue at the hearing, leaving failure to state a claim under Rule 12(b)(6) as the sole ground for its motion. (Hrg. Tr. 9:20 to 10:13).

4

## DISCUSSION

In its resubmitted motion, defendant seeks dismissal of all of plaintiff's claims. Each claim is examined in turn below after a review of legal principles applicable to Rule 12(b)(6) motions and a discussion of the matters considered on the motion.

## I.     RULE 12(b)(6) STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of claims for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *U.K. Ministry of Def. v. Trimble*, 484 F.3d 700, 705 (4th Cir. 2007) (citing *Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 655 (4th Cir. 2004)). Rule 8 provides that the complaint need contain simply "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, case law requires that the factual allegations in the complaint create more than a mere possibility of misconduct. *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Likewise, a complaint is insufficient if it offers merely "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678) (quoting *Twombly*, 550 U.S. at 570). "Determining

5

whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 556 U.S. at 679.

In analyzing a Rule 12(b)(6) motion, a court must accept as true all well-pled allegations of the challenged complaint. *Nemet Chevrolet Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678); *see also E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (court must accept as true all factual allegations of the complaint). All reasonable factual inferences from the allegations must be drawn in plaintiff's favor. *Kolon Indus., Inc.*, 637 F.3d at 440 (citing *Nemet Chevrolet Ltd.*, 591 F.3d at 253). However, bare assertions of legal conclusions or formulaic recitations of the elements of a claim are not entitled to be assumed true. *Iqbal*, 556 U.S. at 681. Thus, facts pled that are "merely consistent with" liability are not sufficient. *A Soc'y Without A Name*, 655 F.3d at 346 (citing *Iqbal*, 556 U.S. at 678).

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Notwithstanding this provision, a court may consider certain matters outside the pleadings on a Rule 12(b)(6) motion without converting it into one for summary judgment, including documents appearing in the record of the case, matters of public record, items subject to judicial notice, matters incorporated by reference into the complaint, and exhibits attached to the complaint whose authenticity is unquestioned. S*ee, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004 & Supp. 2007)); *Clark v. BASF Salaried Employees' Pension Plan*, 329 F. Supp. 2d 694, 697 (W.D.N.C. 2004); *In re FAC Realty Sec. Litig.*, 990 F. Supp. 416, 420 (E.D.N.C. 1997). These matters may

6

properly be considered because "a lack of notice for the nonmoving party is not implicated." *In re FAC Realty Sec. Litig.*, 990 F. Supp. at 420. The decision whether to consider matters outside the pleadings and convert a Rule 12(b)(6) motion into one for summary judgment lies within the court's discretion. *See, e.g., Finley Lines Joint Protective Bd. Unit 200 v. Norfolk Southern Corp.*, 109 F.3d 993, 996 (4th Cir. 1997); *Matherly v. Johns*, No. 5:11–CT–3020–BR, 2012 WL 2953671, at *1 (E.D.N.C. 19 July 2012).

## II. MATTERS CONSIDERED ON DEFENDANT'S MOTION

The court has considered only the complaint and Exhibit A to it in determining defendant's motion. While the parties submitted evidentiary exhibits in connection with defendant's original and resubmitted dismissal motions, the exhibits related primarily to jurisdictional and other issues no longer presented by the resubmitted motion. The one notable exception is an exhibit to which plaintiff alludes in its original response memorandum, a declaration by one of its attorneys referencing discovery in the United Kingdom case purportedly showing that defendant purchased 12 copies of the SAS Learning Edition. (Pl.'s Orig. Resp. Mem. (D.E. 23) 24 (citing Decl. of Pressly M. Millen (D.E. 24) ¶ 6)). However, at the hearing, plaintiff emphasized that it stood by the complaint as filed. (*Id., e.g.*, 32:11-12). In any event, the information about the alleged purchases does not merit consideration on the instant motion, and the court has not considered it.

In addition, the court has excluded from its consideration of the motion purported facts outside the complaint referenced at the hearing by defendant. The purported facts are matters that defendant represented as having been established in the litigation in the United Kingdom. Defendant made it clear that it was not asking the court to consider these facts on the merits of the motion so as to transform it into one for summary judgment. (Hrg. Tr. 18:10-18; 19:5-6).

7

Instead, defendant argued that this information made it possible for plaintiff to plead its claims more accurately and narrowly, and that the court should require plaintiff to do so. (*Id.*, *e.g.*, 17:6 to 19:19). Defendant did not present any specific evidentiary support for the facts purportedly developed in the foreign litigation or demonstrate the admissibility of any such evidence in this proceeding. Nor did defendant cite to any legal authority for its request that plaintiff be required to replead (candidly acknowledging that it had not researched the court's authority to require plaintiff to amend its complaint under the circumstances presented (*id.* 29:14-19)). In light of the lack of demonstrated support for defendant's position and the sufficiency of the complaint in its present form, the court declines to adopt the approach defendant advocates. There, of course, remain numerous means under the Federal Rules of Civil Procedure for the parties to narrow the issues in dispute, including stipulations, requests for admission, and the other discovery devices.

At the hearing, plaintiff also alluded to a number of purported facts not reflected in the complaint. As indicated, though, it stated that it was standing by the complaint as filed, and the court has not considered the extraneous facts plaintiff cited in evaluating defendant's motion.

## III. COPYRIGHT INFRINGEMENT CLAIMS

As discussed, plaintiff's complaint sets forth two claims for copyright infringement: the first with respect to SAS System software and SAS Learning Edition, and the second with respect to SAS Manuals. Each is discussed below after a review of applicable principles relating to copyright infringement.

### A. Standards for Copyright Infringement

Computer programs are subject to copyright protection. *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 142 (5th Cir. 2004); *see also M. Kramer Mfg. Co. v. Andrews*, 783 F.2d at

8

436 (finding that "[i]f other programs can be written or created which perform the same function as the [programer's] operating system program, then the program is an expression of an idea and hence copyrightable"); *Tegg Corp. v. Beckstrom Elec. Co.*, No. 08-435, 2008 WL 5101358, at *7 (W.D. Pa. 26 Nov. 2008). Such protection includes both the literal elements of computer software, namely, the source code and object code, and the computer program's nonliteral elements, including its structure, sequence, organization, user interface, screen displays, and menu structures. *Gen. Universal*, 379 F.3d at 142.

There are two basic elements to a typical copyright infringement claim. A plaintiff must show that: (1) it owned a valid copyright in the product at issue; and (2) defendant copied the constituent elements of the work. *Darden v. Peters*, 488 F.3d 277, 285 (4th Cir. 2007). A certificate from the United States Copyright Office creates a presumption that the plaintiff's copyright is valid. *M. Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 434 (4th Cir. 1986). In the absence of direct evidence of copying, the copying element can be satisfied by evidence that the defendant had access to plaintiff's work and that defendant's work is substantially similar to plaintiff's work. *Id.* at 445.

Infringement can also arise where the user of copyrighted matter has a license for its use. Specifically, a licensee infringes the licensor's copyright if the licensee's use exceeds the scope of the license. *Jacobsen v. Katzer*, 535 F.3d 1373, 1380 (Fed. Cir. 2008) (citing *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir. 1989)).

## B.     Infringement regarding the SAS System and SAS Learning Edition

### 1.     SAS System

Applying the foregoing principles, the court finds that plaintiff adequately pleads both the ownership and copying elements of its infringement claim regarding the SAS System. As to

9

ownership, plaintiff alleges that the SAS System "contains a number of computer programs whose source code contains copyrightable subject matter under the laws of the United States." (Compl. ¶ 35). Plaintiff further alleges that the SAS System "contains a structure, sequence and organization in the form of its syntax, calls, commands and procedures" (*id.*) and, by implication, that these elements enjoy copyright protection since defendant's reproduction of the operations, syntax, and command structures purportedly infringed plaintiff's copyright (*id.* ¶ 45). Plaintiff further alleges that it "is the sole owner of all right, title and interest, including copyright, in both [the SAS System's] source code and its structure, sequence and organization." (*Id.* ¶ 35). Finally, plaintiff alleges that it has complied with all copyright laws and has received a certificate of copyright registration for the SAS System (specifically Release 8.2). (*Id.* ¶ 36.a). Thus, the allegations show that plaintiff owned a valid copyright in the SAS System.

In satisfaction of the copying element, plaintiff adequately alleges that defendant had access to the SAS System and that the WPS is substantially similar to SAS System software. As to similarity, plaintiff alleges that WPS reproduces critical aspects of the SAS System such that WPS is intended as a replacement for some, but not all, of the SAS System. (*Id.* ¶ 20). Defendant itself allegedly promotes its WPS software as a substitute for the SAS System: "In marketing WPS, WPL touts its ability 'to emulate the behavior of the SAS System to a sufficient degree that the WPS implementation can replace the SAS System implementation for many applications' by 'identically replicating the behavior of the SAS System' with respect to the data inputs (including SAS data source structures and the complete SAS Language) accepted by WPS and the outputs produced by WPS." (*Id.* ¶ 32; *see also id.* ¶ 21). Defendant also allegedly identifies on its website specific SAS System functions provided by WPS. (*Id.* ¶

10

21). Further, the manual for WPS allegedly describes in detail the syntax of instructions for the SAS System, which defendant's own WPS software purportedly follows, and states that the WPS software enables users to read and write data in file formats developed by plaintiff. (*Id.* ¶ 22; *see also id.* ¶ 41). In addition to these specific allegations, plaintiff alleges broadly that defendant's reproduction of the SAS System includes its operations, syntax, and command structure. (*Id.* ¶ 41).

As to defendant's access to the SAS System, plaintiff plausibly alleges that defendant must have used one or more copies of the SAS System to be able to develop software that emulates it so closely. Specifically, plaintiff alleges that "WPL has used one or more copies of the SAS System (including one or more copies of the SAS Learning Edition) in order to ascertain the manner in which the SAS System functions and in order to perform benchmarking tests on the SAS System for the purposes of developing and thereafter marketing its WPS Software." (*Id.* ¶ 30). Defendant itself allegedly "claims in its marketing materials to have conducted benchmark testing of its 'WPS emulator' against the SAS System by executing the 'two systems side-by-side across a suite of test programs' that broadly compared a breadth of system inputs and controls with outputs produced by the two systems." (*Id.* ¶ 33). Plaintiff also alleges that defendant attempted in 2008, unsuccessfully, to obtain a license to use the SAS System, thereby substantiating its interest in having a copy of it. (*Id.* ¶ 23).

Defendant contends that plaintiff's claim fails because it relies on alleged copying by it of the SAS System's operations, syntax, and command structure—which defendant contends are not protectable under the copyright laws—instead of copying of the SAS System's source code—which defendant acknowledges is protectable. Defendant argues that such nonliteral elements are not protectable because they are mere ideas and it is well established that

11

copyright protection extends only to expressions of ideas, not ideas themselves, *see* 17 U.S.C. § 102(b). The argument has no merit.

The courts recognize that nonliteral elements of a program, such as its operations, syntax, and command structure, can constitute expressions of ideas and therefore can be protectable under the copyright laws. *See, e.g.*, *Gen. Universal*, 379 F.3d at 142; *Whelan Assoc., Inc. v. Jaslow Dental Lab., Inc.*, 797 F.2d 1222, 1248 (3d Cir. 1986); *Merchant Transaction Sys., Inc. v. Nelcela, Inc.*, No. CV 02-1954-PHX-MHM, 2009 WL 723001, at *7 (D. Ariz. 18 Mar. 2009); *Rouse v. Walter & Assoc., L.L.C.*, 513 F. Supp. 2d 1041, 1055 (S.D. Iowa 2007); *DSMC, Inc. v. Convera Corp.*, 479 F. Supp. 2d 68, 81 (D.D.C. 2007); *Cognotec Servs. Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 862 F. Supp. 45, 49 (S.D.N.Y. 1994). The determination whether particular nonliteral elements are protectable is highly fact specific, often done as part of the process of determining whether there is substantial similarity between the copyrighted and allegedly infringing programs, and is seldom appropriately done at the dismissal motion stage. *See, e.g.*, *Cognotec*, 862 F. Supp. at 49, 50; *SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 613 (E.D. Va. 2005). That is particularly true here where the court does not even have a copy of any of the software at issue.

The Second Circuit's decision in *Computer Assoc. Int'l., Inc. v. Altai, Inc.*, 982 F.2d 693 (2d Cir. 1992), which defendant cites as supportive, is not to the contrary. The portion upon which defendant relies stands for the prosaic principle, just noted, that ideas, as opposed to expressions of ideas, are not protectable. *Id.* at 703. In that case, after a bench trial, the district court found as part of its substantial similarity analysis that the allegedly infringing nonliteral elements of a program were not protectable under the copyright laws and therefore that no infringement had occurred. *Id.* at 714-15. The appellate court affirmed that portion of the

12

district court's decision. *Id.* at 715. The Second Circuit itself has cited *Computer Associates* for the proposition that there are cases in which the question of substantial similarity—which, as in that case, can include the issue of protectability of nonliteral elements of the allegedly infringed program—cannot be addressed without the aid of discovery or expert testimony. *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,* 602 F.3d 57, 65 (2d Cir. 2010) (citing *Computer Assoc.*, 982 F.2d at 713).

Defendant also argues with respect to the instant claim, as well as other claims, that plaintiff's allegations are too vague and conclusory to be deemed true. (*See* Def.'s Orig. Support. Mem. (D.E. 13), *e.g.*, 16-18). Defendant reaches this conclusion, in part, by failing to consider the overall context alleged, frequently taking particular allegations and relating them to a few other selected, tangentially related allegations. In particular, defendant largely omits from its analysis WPS's alleged emulation of the SAS System. This alleged emulation lends substantial credence to the various allegations that defendant mined SAS materials for information about the SAS System. It is not apparent how defendant would have achieved this alleged emulation of the SAS System—as well as the alleged benchmark testing underlying it— without accessing SAS materials.[2] Moreover, the allegations show both explicitly and implicitly that defendant was attempting to secrete its allegedly wrongful activities from plaintiff. That fact is appropriately considered in evaluating the level of detail required in the complaint. In any event, as indicated by the discussions herein of the various claims, there are

---

[2] This case is thereby readily distinguishable from *Tessler v. NBC Universal, Inc.*, Civ. Act. No. 2:08cv234, 2009 WL 866834 (E.D. Va. 31 Mar. 2009), upon which defendant relies. (Def.'s Orig. Support. Mem. 17-18). There, unlike here, the court had available to it on defendant's Rule 12(b)(6) motion the copies of both the allegedly copyrighted and infringing material (*i.e.*, videotapes and related documents) and found that they were not substantially similar. *Tessler*, 2009 WL 866834, at \*4-\*5. Other differences include plaintiff's assertion of allegations "inconsistent with [] and contrary to" one of her claims (*i.e.*, breach of contract) and failure to offer a viable legal theory for another claim (*i.e.*, conversion).

13

sufficient allegations that are entitled to be deemed true when appropriately read in context to establish the elements of each of plaintiff's claims.

For this and the other reasons stated, the court concludes that the complaint sufficiently states a claim for copyright infringement with respect to the SAS System. It will therefore be recommended that defendant's motion be denied with respect to this claim.

### 2. SAS Learning Edition

Plaintiff alleges infringement with respect to the SAS Learning Edition based on defendant's exceeding the scope of its license to use that software. Plaintiff alleges, first, that it has received a certificate of copyright registration for the SAS Learning Edition (Edition 4.1) and that it has complied with all copyright laws regarding it, thereby establishing its ownership of a valid copyright in the SAS Learning Edition. (Compl. ¶ 36.b). Plaintiff further alleges, upon its information and belief, that defendant obtained a copy of the SAS Learning Edition and agreed to the terms of a license agreement for it. (*Id.* ¶ 25). The license agreement allegedly required that the SAS Learning Edition be used solely for the purpose of learning how to use the SAS System and not for the user's own commercial purposes. (*Id.* ¶¶ 15, 16, 18, 49). Notwithstanding this limitation, defendant allegedly used one or more copies of the SAS Learning Edition "in order to ascertain the manner in which the SAS System functions and in order to perform benchmarking tests on the SAS System for the purposes of developing and thereafter marketing its WPS Software." (*Id.* ¶ 30). Indeed, plaintiff alleges that defendant's "benchmarking could not have been accomplished other than by violating the prohibitions contained in its [license for the SAS Learning Edition] with SAS or by convincing an individual or company which has entered into a SAS MLA to violate the prohibitions in that agreement." (*Id.* ¶ 33).

14

Although plaintiff does not allege specifics regarding defendant's acquisition of a copy of the SAS Learning Edition and entry into a license for it, the court finds that such conduct is plausible, not merely speculative. The alleged substantial similarity between defendant's WPS and the SAS System, as well as defendant's own alleged claims of execution of both programs side-by-side for benchmarking purposes, clearly implies that defendant has gained a thorough knowledge of how the SAS System works and how to use it. The SAS Learning System was designed to impart such knowledge.

Moreover, plaintiff alleges that defendant's acquisition of the SAS Learning Edition came only after prior attempts by defendant to learn more about the SAS System failed or apparently failed. One such attempt, as noted above, was defendant's effort in 2008 to buy through a reseller a license for the SAS System. (*Id.* ¶ 24). Plaintiff declined to approve the license when it was told that defendant wanted the software to check the software's syntax. (*Id.* ¶ 26). Previously, in 2006, a vice president of defendant, misrepresenting defendant as being in the "Financial Services" business, allegedly registered on the SAS website "in a manner designed to permit [defendant] to view, download, copy and print certain information proprietary to SAS, including certain SAS Manuals." (*Id.* ¶ 26). There is no allegation that the vice president succeeded in gaining access to such materials, suggesting that he did not. Having failed in other ways to learn about the SAS System, it is plausible that defendant resorted to the SAS Learning Edition to gain such knowledge.

The court concludes that plaintiff adequately states a claim for copyright infringement as to the SAS Learning Edition. It will accordingly be recommended that defendant's motion be denied with respect to this claim.

15

## C.     Infringement regarding the SAS Manuals

Plaintiff adequately pleads both the ownership and copying elements of its infringement claim regarding the SAS Manuals. As to the ownership element, plaintiff alleges that the SAS Manuals "contain[] copyrightable subject matter under the laws of the United States of which SAS is the sole owner of all right, title and interest, including copyright." (*Id.* ¶ 37). Plaintiff further alleges that it has complied with all copyright laws with respect to the SAS Manuals and identifies in Exhibit A certificates of registration for almost 100 publications included among the SAS Manuals. (*Id.* ¶¶ 37, 38; Ex. A).

As to the copying element, plaintiff alleges expressly that defendant copied one or more of the SAS Manuals listed in Exhibit A (*id.* ¶ 41) and that "[defendant] has created its [manual] and certain WPS spreadsheets by copying substantial parts of the SAS Manuals" (*id.* ¶ 31). Plaintiff alleges specifically that defendant's manual contains a detailed description of the syntax of all the instructions to the SAS System. (*Id.* ¶ 22). The alleged substantial similarity of defendant's manual to the SAS Manuals tends to be substantiated by the alleged similarity in the operations, syntax, and command structures of defendant's WPS software to those elements of the SAS System. Defendant's acquisition of one or more of the SAS Manuals is supported by the allegations, previously discussed, that defendant obtained a copy of the SAS Learning Edition since the SAS Learning Edition allegedly contains a selection of the SAS Manuals. (*Id.* ¶ 14).

The court concludes that plaintiff adequately states a claim for infringement regarding the SAS Manuals. It rejects in particular defendant's contention that plaintiff was required to identify more particularly the portions of the SAS Manuals defendant allegedly copied. Defendant's motion to dismiss should therefore be denied with respect to this claim.

16

## IV. BREACH OF LICENSE AGREEMENT FOR SAS LEARNING EDITION

To establish a claim for breach of contract in North Carolina, the complaint must allege that: (1) a valid contract existed between the parties; (2) the defendant breached the terms of that contract; and (3) the plaintiff was damaged thereby. *Sirsi Corp. v. Craven-Pamlico-Carteret Reg'l Library Sys.*, 815 F. Supp. 2d 931, 933 (E.D.N.C. 2011) (citing *Claggett v. Wake Forest Univ.*, 126 N.C. App. 602, 608, 486 S.E. 2d 443, 446 (1997)). Plaintiff's complaint adequately alleges these elements with respect to defendant's alleged breach of the license for the SAS Learning Edition.

As previously detailed, plaintiff adequately alleges that defendant agreed to the terms of the license for the SAS Learning Edition. (*Id.* ¶ 25). Plaintiff also adequately alleges that defendant used the SAS Learning Edition in a manner that exceeded the scope of the license and thereby breached it. (*Id.* ¶¶ 30, 33). Lastly, plaintiff expressly alleges that it has suffered damages as a result of defendant's actions as alleged in the complaint, which include the alleged breach of the license agreement for the SAS Learning Edition, and that the damages include lost profits. (*Id.* ¶¶ 42, 51). The complaint clearly implies that such damages have resulted, at least in part, from loss of customers to defendant. (*Id.* ¶¶ 19, 20). It will therefore be recommended that defendant's motion be denied with respect to the claim for breach of the license agreement for the SAS Learning Edition.

## V. TORTIOUS INTERFERENCE WITH SAS MLA

To establish a claim for tortious interference with contract, plaintiff must establish that: (1) plaintiff was party to a valid contract; (2) defendant had knowledge of plaintiff's contract; (3) defendant intentionally induced the other party not to perform the contract with plaintiff; (4) defendant acted without justification; and (5) defendant's actions caused plaintiff actual

17

damages. *Cobra Capital, LLC v. RF Nitro Commc'ns, Inc.*, 266 F. Supp. 2d 432, 439 (M.D.N.C. 2003) (citing *Childress v. Abeles*, 240 N.C. 667, 674, 84 S.E.2d 176, 181-82 (1954)). Plaintiff adequately alleges these elements.

The contract with which defendant allegedly interfered was a SAS MLA between plaintiff and one of its SAS System customers. (Compl. ¶ 53). Defendant allegedly knew that such agreement prohibited the customer from allowing defendant access to the SAS System for purposes other than the customer's own business because in 2008 defendant had itself signed a SAS MLA, which plaintiff ultimately refused to countersign. (*Id.* ¶¶ 11, 23, 24, 54). Nevertheless, defendant intentionally induced the customer to give defendant access to the SAS System in violation of the SAS MLA. (*Id.* ¶¶ 53, 55). Defendant did so to enable it to develop and benchmark test WPS instead of or in addition to using the SAS Learning Edition for this purpose. (*Id.* ¶ 53). Plaintiff alleges that defendant's benchmarking could not have been accomplished without wrongful use of either the SAS Learning Edition or SAS System. (*Id.* ¶ 33). Plaintiff further alleges, of course, that there was no justification for defendant's action (*id.* ¶ 55) and the allegations certainly show none. Plaintiff allegedly suffered damages as a result of defendant's intentional interference, including lost profits. (*Id.* ¶¶ 42, 56).

Defendant argues with respect to the tortious interference claim that the only pertinent allegations are those in the section of the complaint setting out the elements of this claim (*id.* ¶¶ 52-56). (Def.'s Orig. Support. Mem. 23). It contends that these allegations are too conclusory to adequately state the claim.

As the foregoing analysis shows, however, the allegations of the elements are not as barren as defendant contends. Moreover, there are numerous other allegations that provide the requisite detail and context to substantiate the allegations of the elements. Notably, all prior

allegations of the complaint are re-alleged as if fully set forth as part of the allegations of the elements of this claim (Compl. ¶ 52), as they are with respect to the allegations of the elements of all the other claims (*id.* ¶¶ 43, 46, 48, 57, 62). Defendant makes this same argument regarding the tortious interference with prospective economic advantage claim (Def.'s Orig. Support. Mem. 23) and UDTPA claim (*id.* 25), and it fails with respect to them for the same reasons it fails with respect to the instant, tortious interference with contract claim.

To the extent that defendant is arguing that there is an inherent flaw in the format of the complaint—a lengthy presentation of the allegations of fact followed by a section identifying and reciting the elements of each claim asserted—it is incorrect. This format is one commonly used in this court (as well as North Carolina state courts).

The court concludes that the plaintiff has adequately stated a claim for tortious interference with contract. It will therefore be recommended that defendant's motion be denied with respect to this claim.

## VI. TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

To establish a claim for tortious interference with prospective economic advantage, plaintiff must show that: (1) a valid contract would have existed between plaintiff and a third party but for defendant's conduct; (2) defendant maliciously induced that third party not to enter into contract with plaintiff; and (3) defendant's conduct caused plaintiff actual damages. *Cobra Capital, LLC.*, 266 F. Supp. 2d at 439 (citing *Spartan Equip. Co. v. Air Placement Equip. Co.*, 263 N.C. 549, 559, 140 S.E. 2d 3, 11 (1965)). Acting maliciously in this context signifies acting with a design to hurt the plaintiff and for a reason not reasonably related to a legitimate business interest. *Cobra Capital, LLC.*, 266 F. Supp. 2d at 438, 439 (citing, *e.g.*, *Smith v. Ford Motor Co.*, 289 N.C. 71, 94, 221 S.E.2d 282, 296 (1976)). Although defendant

19

contends that plaintiff's allegations of these elements are impermissibly conclusory, the court disagrees.

The contracts that would have existed between plaintiff and third parties but for defendant's conduct are allegedly renewed license agreements for SAS programs between plaintiff and its customers. (Compl. ¶ 59). More specifically, plaintiff alleges that it has longstanding customers which license its software to run SAS programs and which, it can be inferred, renew such licenses as necessary to be able to continue using the SAS programs. (*Id.* ¶¶ 19, 58).

Defendant has allegedly induced such customers not to renew their licenses with SAS, but to license WPS software instead that enables them to continue to run SAS programs. (*Id.* ¶ 59). Indeed, plaintiff alleges that defendant's marketing of WPS "is primarily if not entirely directed at current SAS licensees, by seeking to persuade those SAS customers to license WPS instead of the SAS System." (*Id.* ¶ 34). In other words, defendant allegedly "seeks to convince [current longstanding] SAS customers to continue to use the SAS Programs they already use, but to divert their license fees paid to SAS to [defendant] as license fees for WPS." (*Id.* ¶ 19).

Defendant is, of course, allegedly able to accomplish such inducement because of its alleged wrongful development of software that emulates the SAS System. (*See, e.g.*, ¶¶ 20, 33). Thus, defendant's alleged inducement of SAS customers not to renew their license agreements with SAS was done with a design to harm SAS and not in pursuit of legitimate business interests or, as plaintiff expressly alleges, was "without justification." (*Id.* ¶ 60). Finally, plaintiff alleges that defendant's inducement has caused it damages, implicitly the lost renewal license fees and the profits thereon. (*Id.* ¶¶ 42, 61).

The complaint accordingly adequately states a claim for tortious interference with prospective economic advantage. The portion of the motion seeking dismissal of this claim should accordingly be denied.

## VII. UDTPA CLAIM

Defendant contends that plaintiff's UDTPA claim fails to state a claim on two grounds: the allegations underlying it are too conclusory and the claim is preempted by the copyright laws. Neither ground has merit.

### A. Conclusory Nature of Allegations

N.C. Gen. Stat. § 75-1.1 declares unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a). "Commerce" includes all business activities other than professional services rendered by a member of a learned profession. *Id.* (b).

To state a UDTPA claim, plaintiff must show that: (1) defendant engaged in conduct that was in or affecting commerce; (2) the conduct was unfair or "had the capacity or tendency to deceive"; and (3) plaintiff suffered actual injury as a proximate result of defendant's actions. *South Atl. Ltd. P'ship of Tenn., L.P. v. Riese*, 284 F.3d 518, 535 (4th Cir. 2002) (citing *Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond*, 80 F.3d 895, 902 (4th Cir. 1996)). "Conduct is 'unfair' if it offends established public policy or is otherwise immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Bender v. Beach Realty of N.C., Inc.*, No. 2:06-CV-12, 2007 WL 2873612, at *11 (E.D.N.C. 26 Sept. 2007) (internal quotation marks omitted) (citing *Gatx Logistics, Inc. v. Lowe's Companies, Inc.*, 143 N.C. App. 695, 701, 548 S.E.2d 193, 197 (2001)). Conduct is deceptive if it has the capacity or tendency to deceive a reasonable person. *Id.* (citing *Jones v. Capitol Broad. Co.*, 128 N.C. App. 271, 276, 495 S.E.2d 172, 175

21

(1998)). It is not essential that anyone actually be deceived. *Smith v. Dade Behring Holdings, Inc.*, Civ. No. 1:05CV86, 2007 WL 152119, at \*17 (W.D.N.C. 16 Jan. 2007) (citing *Lapierre v. Samco Dev. Corp.*, 103 N.C. App. 551, 557-58, 406 S.E.2d 646, 648 (1991)).

Here, plaintiff alleges that the conduct by defendant subject to its UDTPA claim consists of all of defendant's actions alleged in the complaint "separate and apart from any copyright violations." (Compl. ¶ 63). As to the first UDTPA element, plaintiff alleges expressly that this conduct affects commerce. (*Id.*). The specific allegations throughout the complaint substantiate this allegation; the complaint is devoted entirely to business activities of defendant and plaintiff. Indeed, the effect on commerce of defendant's actions as a whole, including those subject to the UDTPA claim, is alleged to be worldwide: defendant has allegedly "convinc[ed] SAS users worldwide to license [defendant's] software in place of SAS [software]" (*id.* ¶ 1) through its marketing of WPS both inside and outside the United States (*id.* ¶ 19).

In satisfaction of the second element, the alleged conduct by defendant separate and apart from any copyright violations includes actions that are unfair or deceptive within the meaning of UDTPA. Such actions include the misrepresentation by a vice president of defendant in 2006 that defendant is a financial services company when registering on the SAS website in a manner designed to gain access to proprietary SAS materials. (*Id.* ¶ 26). Both defendant's alleged tortious inducement of a SAS customer to violate the SAS MLA (*id., e.g.,* ¶¶ 53-55) and its tortious inducement of SAS customers not to renew their license agreements with SAS (*id., e.g.,* ¶¶ 58-60) are also unfair or deceptive conduct within the ambit of a UDTPA claim. *Bender*, 2007 WL 2873612, at \*11 ("North Carolina courts have made clear that the same conduct that forms the basis for a[] tortious interference claim may be 'unfair' or

22

'deceptive' within the meaning of UDTPA." (citing, *e.g.*, *United Labs. v. Kuykendall*, 322 N.C. 643, 665, 370 S.E.2d 375, 389 (1988))); *Sunbelt Rentals, Inc. v. Head & Engquist Equip., L.L.C.*, 174 N.C. App. 49, 58 n.8, 620 S.E.2d 222, 229 n.8 (2005) (recognizing plaintiff's tortious interference with contract and tortious interference with prospective economic advantage claims as subsumed within plaintiff's UDTPA claim) (citing, *e.g.*, *Roane-Barker v. Se. Hosp. Supply Co.*, 99 N.C. App. 30, 392 S.E.2d 663 (1990))).

Finally, plaintiff adequately alleges that it suffered actual injury as a proximate result of defendant's actions in violation of the UDTPA. Such injury included specifically, as discussed, loss of renewal of licenses for SAS programs and the associated lost profits. (Compl. ¶¶ 42, 59, 64).

The court concludes that the nature of the allegations underlying the UDTPA claim is sufficient to state that claim. This basis for dismissal of the UDTPA claim should accordingly be rejected.

## B. Preemption

Section 301(a) of the Copyright Act provides for preemption of all state law rights that are equivalent to those protected under federal copyright law:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 [of the Copyright Act] in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 . . . are governed exclusively by this title.

17 U.S.C. § 301(a). Section 301(a) thereby establishes two requirements for preemption: first, "the work is within the scope of the subject matter of copyright as specified in 17 U.S.C. §§ 102, 103"; and second, "the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106," such as reproduction,

23

performance, distribution, or display of a protected work. *Rosciszewski v. Arete Assoc., Inc.*, 1 F.3d 225, 229 (4th Cir. 1993) (internal quotation marks omitted) (quoting *Ehat v. Tanner*, 780 F.2d 876, 878 (10th Cir. 1985)); *Innovative Med. Products, Inc. v. Felmet*, 472 F. Supp. 2d 678, 683 (M.D.N.C. 2006) (listing exclusive rights granted under § 106) (citing *Computer Assocs.*, 982 F.2d at 716); 17 U.S.C. § 106.

Plaintiff has expressly pled that the SAS System and SAS Manuals are subject to the copyright laws, as previously discussed. The first requirement for preemption is therefore met. The issue is therefore whether the second requirement, equivalency to federal rights, is met.

The Fourth Circuit uses the so-called extra element test to determine whether the equivalency requirement is satisfied. *Rutledge v. High Point Reg'l Health Sys.*, 558 F. Supp. 2d 611, 618 (M.D.N.C. 2008) (citing *Rosciszewsk*, 1 F. 3d at 229-30). It is not satisfied and a state law claim is not preempted "if an extra element is required [for the state claim] instead of or in addition to the acts of reproduction, performance, distribution or display, . . . provided that the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim." *Rosciszewsk*, 1 F. 3d at 229-30.

For some state claims, equivalency may be determined by comparing only the elements of the state claim to those for copyright infringement. *See Rutledge*, 558 F. Supp. 2d at 611 (citing *Trandes Corp. v. Guy Atkinson Co.*, 996 F.2d 655, 659 (4th Cir. 1993)). But that is not sufficient with respect to a UDPTA claim. It does not require an element beyond those necessary to constitute a claim of copyright infringement, suggesting that it is equivalent to a copyright infringement claim. *Pan-American Prod. & Holding, LLC v. R.T.G.*, 825 F. Supp. 2d 664, 698 (M.D.N.C. 2011). In fact, though, a UDTPA claim can rest on conduct apart from that

comprising a copyright claim given its broad application to conduct that is unfair or deceptive. *Id.*

Thus, in evaluating the possible equivalency of a UDTPA claim courts often look to alleged facts underlying it. *Id.*; *Rutledge*, 558 F. Supp. 2d at 611. For a UDTPA claim to survive preemption, the underlying allegations must show more than an unfair trade practice based on such conduct as copying or reproducing copyright-protected material, but instead must show such underlying conduct as misrepresentation, deception, confidential relationship, or palming off. *Pan-American*, 825 F. Supp. 2d at 698 (citing *Innovative Med. Prods.*, 472 F. Supp. 2d at 683). In other words, to avoid preemption, "allegations of what constitutes unfairness or deception to support a UDTPA claim must rest on sufficient alleged misconduct separate from, and not controlled by, the Copyright Act." *Id.* (internal quotations omitted).

The court finds that plaintiff's allegations that defendant tortiously interfered with the SAS MLA between plaintiff and a SAS customer are separate from and not controlled by the Copyright Act and thereby enable plaintiff's UDTPA claim to survive preemption. The gravamen of the tortious interference claim is defendant's alleged intentional inducement of a SAS customer not to honor an agreement it had with plaintiff. That conduct does not depend on whether plaintiff holds a valid copyright to the SAS System or whether defendant has infringed any such copyright. Other cases have held that obtaining allegedly copyright-protected material through improper means in order to misappropriate the material is conduct sufficiently separate and apart from the copyright infringement to defeat preemption. *Pan-American*, 825 F. Supp. 2d at 698-700 (finding no preemption based on UDTPA claim alleging that defendant obtained copyright-protected designs by promising falsely to use them pursuant to contracts entitling plaintiff to broker fees); *Baldine v. Furniture Comfort Corp.*, 956 F. Supp. 580, 587 (M.D.N.C.

1996) ("False representations made by . . . [defendant] for the purpose of obtaining [plaintiff's] design with intent to use it without paying for it would constitute a viable claim under 75–1.1 [not subject to preemption] since the fraud and not the actual copyright violation would be the gravamen of the claim.").

Defendant's alleged misrepresentation of itself as a financial company when registering on plaintiff's website in 2006, tortious interference with prospective economic advantage, and possibly other conduct may also be sufficient to defeat preemption. But the court need not address the effect of such alleged conduct on preemption because it has already determined that the allegations of tortious interference with contract are sufficient to enable the UDTPA claim to survive.

The court concludes that the portion of defendant's motion seeking dismissal of the UDTPA claim on the basis of preemption should accordingly be denied. Having already concluded that the other portions of defendant's motion should be denied, the court concludes that the motion should be denied in its entirety.

## CONCLUSION

For the foregoing reasons IT IS RECOMMENDED that the motion (D.E. 71) by defendant to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) be DENIED.

IT IS FURTHER ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have until 1 November 2012 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

26

Any response to objections shall be filed due no later than 14 days from service of the objections.

This, the 18th day of October 2012.

James E. Gates
United States Magistrate Judge