| | |
|---|---|
| SAS INSTITUTE INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| WORLD PROGRAMMING LIMITED, ) | |
| ) | |
| Defendant. ) | |

This case comes before the court on a motion (D.E. 122) by plaintiff SAS Institute Inc. ("SAS" or "plaintiff") to compel discovery from defendant World Programming Limited ("defendant" or "WPL"), specifically, the documents sought in Production Request No. 10 (D.E. 122 at 1) of plaintiff's second set of production requests (D.E. 123-2). The motion has been fully briefed[1] and referred to the undersigned for disposition pursuant to 28 U.S.C. § 636(b)(1)(A). (*See* Minute Entry after D.E. 128). For the reasons set forth below, the motion will be allowed in part and denied in part.

## BACKGROUND

### I.   PLAINTIFF'S CLAIMS[2]

Plaintiff alleges in its complaint as follows:

Plaintiff is a North Carolina corporation that produces business intelligence software and other software products, having its principal place of business in Cary, North Carolina.

---

[1] In support of its motion, plaintiff filed a memorandum (D.E. 123) and exhibits (D.E. 122-1 through D.E. 122-5; D.E. 123-1 through D.E. 123-4). Defendant filed a memorandum (D.E. 128) in opposition.

[2] Although the court necessarily bases its analysis and ruling on the present version of the complaint, they would be the same if based on plaintiff's proposed amended complaint (D.E. 130-1), which seeks to add a fraud claim grounded on alleged misrepresentations by defendant to plaintiff.

(Compl. (D.E. 1) ¶ 2). Defendant is incorporated under the laws of England and Wales and also develops software. (*Id.* ¶¶ 3, 19).

Plaintiff has developed SAS System software that enables users to access, manage, analyze, and present data. (*Id.* ¶ 12). The SAS System has copyright protection. (*Id.* ¶¶ 35, 36). Customers of the SAS System are required to enter into a license agreement, the SAS Master License Agreement ("SAS MLA"), which, among other things, prohibits the customer from using the SAS System for purposes other than the customer's own business. (*Id.* ¶ 11).

Plaintiff publishes a wide range of reference materials that describe the features of the SAS System and provide instructions and assistance to its users ("SAS Manuals"). (*Id.* ¶¶ 9, 10). The SAS Manuals have copyright protection. (*Id.* ¶¶ 37, 38).

In addition, plaintiff has developed software, known as SAS Learning Edition, that teaches individuals how to use the SAS System. (*Id.* ¶ 12). It includes a selection of SAS Manuals. (*Id.* ¶ 14). Before an individual is entitled to use SAS Learning Edition software, he is required to accept the terms of a license agreement that confers a nontransferable right to use it solely for the purpose of learning how to use the SAS System. (*Id.* ¶¶ 15, 16, 18). The SAS Learning Edition software has copyright protection. (*Id.* ¶ 36).

Defendant has developed software, named the World Programming System ("WPS"), that is designed to reproduce central aspects of the SAS System and thereby to replace the SAS System for certain customers of plaintiff. (*Id.* ¶¶ 19, 20). Defendant has also developed a manual for WPS. (*Id.* ¶ 31). Defendant's marketing of WPS is primarily, if not entirely, directed at current SAS licensees and seeks to persuade them to license WPS instead of the SAS System. (*Id.* ¶ 34).

To create WPS, defendant used one or more copies of the SAS System, although in 2008 plaintiff had refused to give defendant a license to use it. (*Id.* ¶¶ 23, 24, 30). In addition, to be able to create WPS, defendant must have studied SAS Manuals to understand various aspects of the SAS System. (*Id.* ¶ 29). Defendant also copied substantial parts of the SAS Manuals in creating the manual for WPS. (*Id.* ¶¶ 31 41).

Upon plaintiff's information and belief, defendant also acquired a copy of the SAS Learning Edition software and agreed to the terms of the associated license. (*Id.* ¶ 25). Instead of or in addition to doing so, defendant, again upon plaintiff's information and belief, convinced a party that had entered into the SAS MLA to violate prohibitions in it by allowing defendant access to the SAS System, which defendant used to develop and test WPS software. (*Id.* ¶ 53).

Plaintiff asserts claims for: copyright infringement with respect to the SAS System and SAS Learning Edition software (*id.* ¶¶ 43-45) (count I); copyright infringement with respect to the SAS Manuals (*id.* ¶¶ 46, 47) (count II); breach of contract, namely, the license agreement between plaintiff and defendant for the SAS Learning Edition software (*id.* ¶¶ 48-51) (count III); tortious interference with contract, that is, plaintiff's SAS MLA for the SAS System with another party (*id.* ¶¶ 52-56) (count IIIA); tortious interference with prospective economic advantage by inducing nonrenewal by SAS customers of their licenses with plaintiff (*id.* ¶¶ 57-61) (count IV); and unfair and deceptive trade practices and unfair competition under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et seq.* ("UDTPA") (*id.* ¶¶ 62-64) (count V). Plaintiff seeks compensatory damages, punitive damages, statutory treble damages, injunctive relief, expenses, attorney's fees, and any other just and

3

proper relief. (*Id.*, Request for Relief 14-15). Defendant denies the material allegations in plaintiff's complaint. (*See generally* Ans. to Compl. (D.E. 99)).

## II. DISCOVERY AT ISSUE

On 24 January 2013, plaintiff served on defendant its second set of requests for production of documents, which included Production Request No. 10. This request seeks documents relating to communications between defendant and plaintiff's customers and similar documents. (*See* Prod. Req. No. 10). Defendant asserted an array of objections to the request. (*See* Resp. to Prod. Req. No. 10 (D.E. 123-4)). In the parties' meet-and-confer process (*see* Emails (D.E. 122-4)), plaintiff proposed an alternate form of the request, but the parties could not resolve the dispute. Plaintiff subsequently filed the instant motion to compel defendant to produce the requested documents.

## DISCUSSION

### I. APPLICABLE LAW

The Federal Civil Rules enable parties to obtain information by serving requests for discovery on each other, including requests for production of documents. *See generally* Fed. R. Civ. P. 26-37. Rule 26 provides for a broad scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). The rules of discovery, including Rule 26, are to be given a broad and liberal construction. *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Nemecek v. Bd. of Governors*, No. 2:98-CV-62-BO, 2000 WL 33672978, at *4 (E.D.N.C. 27 Sep. 2000).

While Rule 26 does not define what is deemed relevant for purposes of the rule, relevance has been "'broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party.'" *EEOC v. Sheffield Fin. LLC*, No. 1:06CV889, 2007 WL 1726560, at *3 (M.D.N.C. 13 June 2007) (quoting *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 473 (N.D. Tex. 2005)). The district court has broad discretion in determining relevance for discovery purposes. *Watson v. Lowcountry Red Cross*, 974 F.2d 482, 489 (4th Cir. 1992). In addition, the court may limit the extent of discovery otherwise allowable where "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii); *Basile Baumann Prost Cole & Assocs., Inc. v. BBP & Assocs. LLC*, No. WDQ-11-2478, 2013 WL 1622001, at *3 (D. Md. 9 Apr. 2013) ("Further, '[a]ll discovery is subject to the [proportionality] limitations imposed by Rule 26(b)(2)(C).'") (quoting Fed. R. Civ. P. 26(b)(1)). Rule 37 allows for the filing of a motion to compel discovery responses. Fed. R. Civ. P. 37(a)(3)(B).

## II. PRODUCTION REQUEST NO. 10

Production Request No. 10 seeks:

All documents relating to any communication or correspondence between WPL or any of its representatives, including without limitation any reseller of WPL products, and any of SAS's customers, known potential customers, and/or business partners.

(Prod. Req. No. 10). "Communication," "SAS," and "WPL" are each given broad definitions. (*See* Def.'s Mem. 3-4).

Defendant objected, in part, that the request "is overly broad, burdensome, vague, and ambiguous, particularly the terms 'relating to,' 'reseller,' 'potential customers,' and 'business

5

partners.'" (Resp. to Prod. Req. No. 10). Defendant also asserted confidentiality and other objections. (*See id.*).[3]

In their meet-and-confer process, plaintiff offered to modify Production Request No. 10 to seek:

> (i) all communications with SAS's US customers where SAS was displaced or WPL licensed some product or
>
> (ii) communications with all other customers that mention SAS or any SAS product.

(Mot. 2 ¶ 6).[4]

Defendant contends that the request, even as modified, is not relevant to any of plaintiff's causes of action and amounts to an improper fishing expedition. As plaintiff argues, however, at least certain communications defendant may have had with plaintiff's customers are relevant to plaintiff's claims that defendant engaged in tortious interference with prospective business advantage by inducing plaintiff's customers not to renew their licenses with plaintiff and that defendant engaged in unfair and deceptive trade practices in violation of UDTPA. The pertinent communications are those that focus on the purported wrongdoing by

---

[3] Defendant's objection reads in full:

> WPL incorporates by reference each of its General Objections. WPL objects to this request on the grounds that it is overly broad, burdensome, vague, and ambiguous, particularly the terms "relating to," "reseller," "potential customers," and "business partners." WPL further objects to the extent it asks WPL to produce or analyze information not within its possession, custody, or control, calls for WPL to prepare documents and/or things that do not already exist, or calls for information in a format other than that in which it is ordinarily kept by WPL. WPL also objects to this request because the documents that SAS seeks may be subject to confidentiality restrictions and may contain confidential trade secret information. WPL finally objects to this request to the extent it requests documents that are protected by the attorney-client or work product privileges.

(Resp. to Prod. Req. No. 10).

[4] As indicated, this is the version of the modified request appearing in plaintiff's motion. The version appearing in the email proposing the modified request uses the phrase "all others," rather than "all other customers" in part (ii). (*See* 28 Mar. 2013 Email from Millen to Cohen (D.E. 122-4 at 2)). Since the proposal is plaintiff's, the court assume "all others," means "all other customers." Moreover, since part (i) concerns plaintiff's "US customers," the court interprets "all other customers" to mean all other customers of plaintiff.

6

defendant that is either expressly alleged in the complaint or can reasonably be inferred from it. Such communications between defendant and plaintiff's customers are those that: represent that defendant's software is able to emulate or identically replicate or has been benchmarked against plaintiff's software or certain features of it; request copies of plaintiff's software or manuals; represent that any action requested relating to plaintiff or its software would not violate a license or copyright of plaintiff, or otherwise violate any law; or request that any action requested relating to plaintiff or its software not be disclosed or otherwise be kept confidential.

The court will therefore allow plaintiff's motion to the extent that it seeks production of the foregoing communications between defendant and customers of plaintiff. The court is adopting measures, specified below, to minimize the burden on defendant in the event that mass-mailed form letters are included within the scope of the production being ordered.

Defendant represents that it has already produced the specific communications of this sort. (*See* Def.'s Mem. 6). As to any such documents subject to the directive for production herein, defendant may, in lieu of producing them again, identify them by Bates number in its supplemental response and state that it has already produced them, as specified below.[5]

To the extent that the modified request encompasses documents other than those ordered to be produced, it is overbroad. The other documents would either have no demonstrated relevance to any claims or defenses in this case, or the burden of producing them would be disproportionate to any relevance they do have. The overbreadth is exemplified by part (ii) of the modified request, which seeks communications with all non-U.S. customers of plaintiff "that mention SAS or any SAS product." (Mot. ¶ 6). Defendant is a competitor of plaintiff and

---

[5] Defendant's representation that it has already produced such documents appears to foreclose any contention by it that compliance with this order as to such documents would be unduly burdensome or otherwise objectionable.

7

the mere fact that a communication by defendant with a customer of plaintiff mentions plaintiff or a product of plaintiff does not make it reasonably likely that the communication constitutes or contains evidence of the alleged wrongdoing by defendant. At the same time, the production of such communications would manifestly appear to be extensive and burdensome.

Part (i) of the modified request is arguably broader because it is not limited by the content of the communication with the customers involved, plaintiff's U.S. customers. Rather, it seeks all communications with any U.S. customer, irrespective of content, simply if the defendant licensed some product to the customer or "SAS was displaced," whatever that might mean.

In support of its motion, plaintiff points to its own purported responsiveness to a production request by defendant similar to Production Request No. 10. While the court commends the parties for resolving their differences with respect to defendant's production request, the outcome there does not dictate a result here different from that provided herein.

Plaintiff has not requested an award of expenses. The court finds that an award of expenses is not warranted to either party because the circumstances would make an award of expenses unjust. *See* Fed. R. Civ. P. 37(a)(5)(B). The court therefore declines to award any expenses incurred in connection with the instant motion.

## CONCLUSION

For the foregoing reasons, the motion to compel (D.E. 122) is ALLOWED in part and DENIED in part on the following terms:

1.   Pursuant to Production Request No. 10, defendant shall produce to plaintiff all documents constituting communications between defendant (including anyone on its behalf) and persons (including corporate and governmental entities and individuals) that defendant

knew at the time of the communication to be customers of plaintiff that: (a) represent that defendant's software is able to emulate or identically replicate or has been benchmarked against plaintiff's software or certain features of it; (b) request copies of plaintiff's software or manuals; (c) represent that any action requested relating to plaintiff or its software would not violate a license or copyright of plaintiff, or otherwise violate any law; or (d) ask or suggest that any action requested relating to plaintiff or its software not be disclosed or otherwise be kept confidential.

2. In the event that any documents included within the scope of paragraph 1 are form letters, defendant may, in lieu of producing all copies of the form letter, produce a single copy accompanied by a list of the addressees (which term includes the name and address of the addressee) and dates set out in each copy of the form letter. A letter shall be deemed a form letter if it is identical in contents and all other respects to one or more other letters except for the addressee and the date set out therein.

3. The documents ordered to be produced herein shall be served with a supplemental response to Production Request No. 10, duly signed by counsel, that includes an identification by Bates number of the documents being produced, any other information called for by this order, and such other information as counsel deems appropriate.

4. In the event defendant has already produced documents subject to the directive for production herein, it may, in lieu of producing them again, identify them by Bates number in its supplemental response, state that it has already produced them, and provide the date of production.

5. Defendant shall make the production ordered herein by 27 August 2013.

6. Each party shall bear its own costs incurred on the motion.

9

SO ORDERED, this 6th day of August 2013.

                                                                     _____  
                                                                     James E. Gates  
                                                                     United States Magistrate Judge