| | |
|---|---|
| SAS INSTITUTE INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| WORLD PROGRAMMING LIMITED, ) | |
| ) | |
| Defendant. ) | |

This case comes before the court on a motion (D.E. 147) by plaintiff SAS Institute Inc. ("SAS" or "plaintiff") to compel discovery from defendant World Programming Limited ("defendant" or "WPL"), specifically, documents and information sought in Plaintiff's First Interrogatories and Third Request for Production of Documents. The motion has been fully briefed and referred to the undersigned for disposition pursuant to 28 U.S.C. § 636(b)(1)(A). (*See* Minute Entry after D.E. 158). For the reasons set forth below, the motion will be allowed in part and denied as moot in part.

## BACKGROUND

### I. PLAINTIFF'S CLAIMS

Plaintiff alleges in its first amended complaint as follows:

Plaintiff is a North Carolina corporation that produces business intelligence software and other software products, having its principal place of business in Cary, North Carolina. (Am. Compl. (D.E. 143) ¶ 2). Defendant is incorporated under the laws of England and Wales and also develops software. (*Id*. ¶¶ 3, 19).

Plaintiff has developed SAS System software that enables users to access, manage, analyze, and present data. (*Id.* ¶ 12). The SAS System has copyright protection. (*Id.* ¶¶ 35, 36). Customers of the SAS System are required to enter into a license agreement, the SAS Master License Agreement ("SAS MLA"), which, among other things, prohibits the customer from using the SAS System for purposes other than the customer's own business. (*Id.* ¶ 11).

Plaintiff publishes a wide range of reference materials that describe the features of the SAS System and provide instructions and assistance to its users ("SAS Manuals"). (*Id.* ¶¶ 9, 10). The SAS Manuals have copyright protection. (*Id.* ¶¶ 37, 38).

In addition, plaintiff has developed software, known as SAS Learning Edition, that teaches individuals how to use the SAS System. (*Id.* ¶ 12). It includes a selection of SAS Manuals. (*Id.* ¶ 14). Before an individual is permitted to use SAS Learning Edition software, he is required to accept the terms of a license agreement that confers a nontransferable right to use it solely for the purpose of learning how to use the SAS System. (*Id.* ¶¶ 15, 16, 18). The SAS Learning Edition software has copyright protection. (*Id.* ¶ 36).

Defendant has developed software, named the World Programming System ("WPS"), that is designed to reproduce central aspects of the SAS System and thereby to replace the SAS System for certain customers of plaintiff. (*Id.* ¶¶ 19, 20). Defendant has also developed a manual for WPS. (*Id.* ¶ 31). Defendant's marketing of WPS is primarily, if not entirely, directed at current SAS licensees and attempts to persuade them to license WPS in place of the SAS System. (*Id.* ¶ 34).

To create WPS, defendant used one or more copies of the SAS System, although in 2008 plaintiff had refused to give defendant a license to use it. (*Id.* ¶¶ 23, 24, 30). In addition, to be able to create WPS, defendant must have studied SAS Manuals to understand various

2

aspects of the SAS System.  (*Id.* ¶ 29).  Defendant also copied substantial parts of the SAS Manuals in creating the manual for WPS.  (*Id.* ¶¶ 31 41).

Upon plaintiff's information and belief, defendant also acquired a copy of the SAS Learning Edition software and agreed to the terms of the associated license.  (*Id.* ¶ 25).  Instead of or in addition to doing so, defendant, again upon plaintiff's information and belief, convinced a party that had entered into the SAS MLA to violate prohibitions in it by allowing defendant access to the SAS System, which defendant used to develop and test WPS software.  (*Id.* ¶ 54).

Plaintiff filed its initial complaint (D.E. 1) on 19 January 2010.  With leave of court (*see* D.E. 138), plaintiff filed its first amended complaint on 14 August 2013, which added a claim that defendant obtained access to the SAS Learning Edition software by fraud.  (*See* 1st Am. Compl. ¶¶ 1, 50-52; Request for Relief ¶ D).

Plaintiff asserts the following claims in its first amended complaint: copyright infringement with respect to the SAS System and SAS Learning Edition software (*id.* ¶¶ 43-45) (count I); copyright infringement with respect to the SAS Manuals (*id.* ¶¶ 46, 47) (count II); breach of contract, namely, the license agreement between plaintiff and defendant for the SAS Learning Edition software, by fraud (*id.* ¶¶ 48-52) (count III); tortious interference with contract, that is, plaintiff's SAS MLA for the SAS System with another party (*id.* ¶¶ 53-57) (count IIIA); tortious interference with prospective economic advantage by inducing nonrenewal by SAS customers of their licenses with plaintiff (*id.* ¶¶ 58-62) (count IV); and unfair and deceptive trade practices and unfair competition under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et seq.* (*id.* ¶¶ 63-65) (count V). Plaintiff seeks compensatory damages, punitive damages, statutory treble damages, injunctive

3

relief, expenses, attorney's fees, and any other just and proper relief. (*Id.*, Request for Relief 17-18). Defendant denies the material allegations in plaintiff's complaint. (*See generally* Ans. to Am. Compl. (D.E. 149)).

Prior to filing the instant lawsuit, plaintiff filed a lawsuit against defendant in the United Kingdom ("U.K. Litigation"), arising from some of the same disputes. In the course of discovery in the U.K. Litigation, the parties exchanged voluminous discovery.

## II. DISCOVERY AT ISSUE

On 11 June 2013, plaintiff served on defendant its first set of interrogatories and third set of requests for production of documents. Defendants served responses on 15 July 2013, asserting an array of objections to the document requests and interrogatories. (Resp. to Prod. Reqs. (D.E. 147-4); Resp. to Interrs. (D.E. 147-3)). The parties engaged in a meet-and-confer process, but could not resolve their disputes. (*See generally* Mot. ¶¶ 2-6). Plaintiff subsequently filed the instant motion to compel defendant to produce the requested documents and information.

## DISCUSSION

## I. APPLICABLE LAW

The Federal Civil Rules enable parties to obtain information by serving requests for discovery on each other, including interrogatories and requests for production of documents. *See generally* Fed. R. Civ. P. 26-37. Rule 26 provides for a broad scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

4

Fed. R. Civ. P. 26(b)(1). The rules of discovery, including Rule 26, are to be given a broad and liberal construction. *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Nemecek v. Bd. of Governors*, No. 2:98-CV-62-BO, 2000 WL 33672978, at *4 (E.D.N.C. 27 Sept. 2000).

While Rule 26 does not define what is deemed relevant for purposes of the rule, relevance has been "'broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party.'" *EEOC v. Sheffield Fin. LLC*, No. 1:06CV889, 2007 WL 1726560, at *3 (M.D.N.C. 13 June 2007) (quoting *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 473 (N.D. Tex. 2005)). The district court has broad discretion in determining relevance for discovery purposes. *Watson v. Lowcountry Red Cross*, 974 F.2d 482, 489 (4th Cir. 1992). In addition, the court may limit the extent of discovery otherwise allowable where "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii); *Basile Baumann Prost Cole & Assocs., Inc. v. BBP & Assocs. LLC,* No. WDQ-11-2478, 2013 WL 1622001, at *3 (D. Md. 9 Apr. 2013) ("Further, '[a]ll discovery is subject to the [proportionality] limitations imposed by Rule 26(b)(2)(C).'") (quoting Fed. R. Civ. P. 26(b)(1)). Rule 37 allows for the filing of a motion to compel discovery responses. Fed. R. Civ. P. 37(a)(3)(B).

By the instant motion, plaintiff challenges three sets of objections asserted by defendant in response to a number of production requests and interrogatories.[1] Each set of objections will be addressed separately below.

---

[1] Plaintiff also moved to compel defendant to identify non-United States companies in response to Interrogatory No. 9, which sought identification of companies that gave defendant access to SAS software or information containing plaintiff's products. (Mot. 3 ¶ 7; Pl.'s Mem. (D.E. 148) 1 n.2; 10 n.7; Interr. No. 9). Because defendant

5

## II. OBJECTION THAT REQUESTS ARE ON SUBJECTS AT ISSUE IN THE UK LITIGATION AND THEREFORE BARRED
(Prod. Reqs. Nos. 15-25; Interrs. Nos. 4-7, 9)

Defendant objects to a number of discovery requests on grounds that they seek documents or information on subjects previously at issue in the U.K. Litigation without limitation to the post-June 2010 period and that they therefore violate § I.B. of the Amended Case Management Order entered in this case on 8 June 2012 (D.E. 89). Plaintiff proposed § I.B for inclusion in the initial Case Management Order, and the court adopted it over a competing version proposed by defendant. (*See* CMO (D.E. 84) § I.B; Jt. Rule 26(f) Rept. (D.E. 75) ¶ 4.a, Versions I and II). Section I.B. was carried forward unchanged to the Amended Case Management Order and was not altered by subsequent amendments to that Order (*see, e.g.*, D.E. 129, 135, 142, 146, 160, 162).

> Section I.B reads:
>
> Discovery previously exchanged by the parties in the course of related litigation in the United Kingdom ("U.K. Discovery") shall be useable in this litigation as if produced herein. Subject to the following exceptions, discovery shall be limited to the time period following June 2010, which is the approximate end date of the U.K. Discovery, and shall be on subjects relevant to the claims and defenses of the part[i]es. The exceptions to the aforementioned limitation are that discovery may be taken for any time period on subjects not at issue in the U.K. action, including, without limitation, the validity of plaintiff's alleged copyrights referenced in the pleadings.

(Am. CMO § I.B).

As can be seen, this provision bars discovery in this case on subjects at issue in the U.K. Litigation for the period up through June 2010, the approximate end date of the discovery in the U.K. Litigation ("June 2010 ban"). (*Id.*). Conversely, § I.B places no time limitation on discovery on subjects not at issue in the U.K. Litigation, including the validity of plaintiff's

---

asserts in its memorandum that it responded to this interrogatory on a worldwide basis (Def.'s Mem. (D.E. 157) 7), the court finds this aspect of plaintiff's motion moot, and it will be denied as such.

alleged copyrights referenced in the pleadings.[2] (*Id.*). The ostensible purpose of the June 2010 ban is to prevent a party from engaging not only in discovery that it undertook in the U.K. Litigation, but also discovery that it could have undertaken.

Notably, § I.B does not speak simply of subjects "in the U.K. Action," but rather subjects "*at issue* in the U.K. Action" (emphasis added). Thus, the mere presence of a subject in the U.K. Litigation is not sufficient to trigger the June 2010 ban; the subject must also have been "at issue." A subject can be said to have been at issue in the U.K. Litigation if it related to the establishment of a contested claim or defense in that case. This meaning is consistent with the ostensible purpose of the June 2010 ban because only if a subject relates to a contested claim or defense would it ordinarily be an object or prospective object of discovery.

Section I.B does not address the degree to which a subject must have been at issue in the U.K. Litigation for the June 2010 ban to apply. The general principle of proportionality in discovery reflected in Rule 26(b)(2)(C) provides useful guidance. It counsels that the relative materiality of the subject in question in the two cases should be considered in applying § I.B. Thus, it is questionable whether a subject that was only tangentially relevant to a contested claim in the U.K. Litigation and therefore relatively less likely to be a target of discovery should be held to bar discovery for the period up to June 2010 on a subject directly relevant to a contested claim or defense in this case.

Lastly, of course, which subjects are at issue is affected by the claims asserted in a case. Different claims have different elements requiring different proof and are associated with

---

[2] The requirement that all discovery in this case be relevant to the claims or defenses of the parties tracks the comparable requirement in Rule 26(b)(1). Although § I.B speaks literally of relevance to the "claims and defenses" of the parties, the court interprets this phrase, read in context, to mean either or both the claims and defenses, an interpretation not at odds with the positions taken by either party on the instant motion.

different defenses. Therefore, a subject or evidence relating to it may be at issue as to certain claims, but not at issue with respect to others.

The specific discovery requests to which defendant asserted the § I.B objection are Production Requests Nos. 15-25 and Interrogatories Nos. 4-7 and 9. Several of these requests concern the origin, format, and development of WPS, as well as its source code. (Prod. Reqs. Nos. 15, 16, 17; Interr. No. 6). One request seeks manuals for WPS. (Prod. Req. No. 21). Several seek documents or information concerning any efforts by defendant to obtain an MLA from SAS (Prod. Req. No. 22) or register on the SAS website (Prod. Req. No. 23), defendant's use of the SAS Learning Edition software (Prod. Req. No. 24), and defendant's use of SAS Manuals or certain other documentation of plaintiff's in developing WPS (Prod. Req. No. 25; Interr. No. 4). One interrogatory seeks a list of all SAS components and other specified items supported by WPS (Interr. No. 5) and another the identification of any company that gave defendant access to any SAS product (Interr. No. 9). The remaining requests seek identification of each of defendant's employees with a graduate degree in statistics (Interr. No. 7) and documents concerning communications between defendant and IBM (Prod. Req. No. 18), Shaw Industries (Prod. Req. No. 19), and Minequest (Prod. Req. No. 20).

Plaintiff first challenges the § I.B objections to these requests on the grounds that defendant waived any such objection by not asserting it with respect to other discovery requests to which the objection was arguably applicable and because defendant itself served discovery requests on subjects at issue in the U.K. Litigation. Defendant disputes that it failed to assert an objection under § I.B when one was applicable. But even if defendant had failed to assert the objection as plaintiff contends, plaintiff has not shown that defendant intentionally waived or can justly be deemed to have waived the objection as to the instant discovery requests.

8

Similarly, defendant denies that it has sought discovery on subjects at issue in the U.K. Litigation. But even if defendant did, plaintiff, again, has not shown that defendant intentionally waived or can justly be deemed to have waived the objection as to discovery requests directed to it.

In addressing these objections on the merits, both parties speak in terms of whether plaintiff did or did not demonstrate that the documents and information sought are subject to the June 2010 ban. But as the party seeking discovery, plaintiff does not have the burden of showing that the documents and information sought are discoverable. Instead, defendant, as the party resisting discovery, has the burden of showing that they are not. *Johnson v. City of Fayetteville*, No. 5:12-CV-456-F, 2013 WL 4039418, at *4 (E.D.N.C. 6 Aug. 2013) ("The party resisting discovery, not the party moving to compel discovery, bears the burden of persuasion."); *Synovus Bank v. Karp*, No. 1:10-cv-172, 2013 WL 3927604, at * 1 (W.D.N.C. 29 Jul. 2013) ("'Over the course of more than four decades, district judges and magistrate judges in the Fourth Circuit . . . have repeatedly ruled that the party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion.'") (quoting *Kinetic Concepts, Inc. v. ConvaTec, Inc.*, 268 F.R.D. 226, 243 (M.D.N.C. 2010)). Notably, the court rejected defendant's proposed version of § I.B which would have placed on the party seeking discovery the obligation to show that it was not available in the U.K. Litigation.[3] (*See* Jt. Disc. Plan ¶ 4.a, Version I). Defendant has failed to meet its burden.

One deficiency is that defendant analyzes in detail only 2 of the 16 discovery requests in question, Production Request No. 15 and Interrogatory No. 6. Defendant discusses the specific

---

[3] Defendant's proposed provision read, in relevant part, "Discovery beyond the foregoing [*i.e.*, discovery for the period after June 2010 and the validity of plaintiff's alleged patents] shall be subject to a showing by the party seeking it that such discovery was not available in the course of the U.K. Discovery." (Jt. Disc. Plan ¶ 4.a, Version I).

9

subject matter of another request—Production Request No. 24, which seeks materials on defendant's use of the SAS Learning Edition software—without actually identifying the request. Application of § I.B requires the particularized consideration of each request involved to determine, among other things, the specific subject to which it relates; the extent to which, if any, that subject was at issue in the U.K. Litigation; and the extent to which, if any, it is at issue in this case. With the exception of source code for WPS, there is no indication in the parties' submissions on the motions that plaintiff requested or obtained in the U.K. Litigation the documents and information it is now seeking. This fact could be an indication that such documents and information were not on subjects directly at issue in the U.K. Litigation. In any event, defendant's failure to even attempt to make the requisite particularized showing alone arguably renders feckless its objections to virtually all the requests in question.

Rather than particularizing its analysis, defendant argues that the June 2010 ban of § I.B applies to all the requests in question because they all relate to topics included in the Re-Amended Particulars of Claim ("Particulars") in the U.K. Litigation and do not relate "exclusively" to plaintiff's U.S. copyright claims. (Def.'s Mem. (D.E. 157) 4). Nowhere, though, does defendant explain what role the Particulars served in the U.K. Litigation. Nor does defendant explain how a reference in the Particulars to the documents or information sought in the requests establishes that these documents or pieces of information were on a subject at issue in the U.K. Litigation within the meaning of § I.B so as to completely bar their production in this case for the period prior to June 2010.

Moreover, § I.B does not state that discovery must relate exclusively to plaintiff's copyright claims to avoid the June 2010 ban, as defendant argues. Certain documents and information could conceivably relate to both the U.S. copyright claims and claims in the U.K.

Litigation. Defendant does not explain why such overlapping evidence should be deemed on a subject at issue in the U.K. Litigation and thereby subject to the June 2010 ban when there were no U.S. copyright claims in that case.

Further, defendant's contention that the discovery must relate exclusively to plaintiff's copyright claims omits the fraud claim relating to the SAS Learning Edition software which was added subsequent to entry of the initial Case Management Order and Amended Case Management Order. Defendant justifies the omission on the grounds that the conduct underlying the fraud claim was a subject at issue in the U.K. Litigation, again citing to the Particulars. But the fraud claim was not asserted in the U.K. Litigation. Defendant has not explained how the conduct on which the alleged fraud is based can nonetheless be deemed to have been a subject at issue in the U.K. Litigation.

Defendant's detailed discussion of Production Request No. 15 fares no better. It seeks all source code for WPS. Defendant argues that since defendant's source code was "arguably the main issue in the U.K." and plaintiff was given access to "relevant" portions of defendant's source code in the U.K. Litigation, Production Request No. 15 is on a subject at issue in the U.K. Litigation. (Def.'s Mem. 5). Again, though, defendant has not explained how that is so when any proceedings in the U.K. Litigation relating to defendant's source code took place outside the context of any U.S. copyright claims.

Defendant's discussion of Interrogatory No. 6 points out, correctly, that this discovery request itself refers explicitly to the U.K. Litigation. It seeks a list of "all published papers and books on applied statistics used by WPL's programmers in creating or developing the [WPS] product as described in paragraph 71 of the Judgment in the UK Action dated July 23, 2010 ["U.K. Judgment"]." (Interr. No. 6). In the U.K. Judgment, these materials are included in a

11

list, compiled by defendant's expert, of sources defendant's developers used. (*See* U.K. J. (D.E. 74-3) ¶¶ 14, 71). Here, again, even assuming that these materials are on a subject at issue in the U.K. Litigation, defendant has failed to demonstrate that they do not also relate to plaintiff's U.S. copyright claims so as to exclude them from the June 2010 ban.

The court will accordingly overrule defendant's objections based on § I.B and allow plaintiff's motion as to them. To the extent, of course, that defendant has already produced the documents or information sought in any of the requests at issue, it will not be required to produce such materials again.

### III. OBJECTIONS THAT FAILURE BY PLAINTIFF TO PROVIDE DISCOVERY OBVIATES OR PRECLUDES RESPONSES BY DEFENDANT (Prod. Reqs. Nos. 28-30, 32; Interrs. Nos. 1, 4)

Defendant objected to certain discovery requests on the grounds that the purported failure by plaintiff to respond to discovery directed to it rendered unnecessary or impossible responses by defendant to certain discovery requests from plaintiff. The objections are meritless.

For example, with respect to Production Requests Nos. 28-30 and 32, which sought financial information relating to defendant, defendant objected that "SAS has refused to provide a computation of categories of damages, constituting an admission by SAS that this request seeks irrelevant information." (Resps. to Prod. Reqs. Nos. 28-30, 32). Of course, a party's purported failure to respond to discovery does not excuse another party from its own discovery obligations. The specific notion advanced in these objections that plaintiff's purported failure to produce certain damages-related documents and information essentially renders plaintiff's damages claims irrelevant and beyond the scope of discovery is frivolous. Defendant's further argument that it cannot discern which documents or information to produce in response to these

requests without knowing more about plaintiff's damages theory is also meritless. The descriptions of the documents and information in the requests are clearly sufficient to enable defendant to determine what plaintiff is seeking.[4]

Similarly, in response to Interrogatory No. 4, which sought a listing of all SAS Manuals obtained by defendant and related information, defendant objected that "SAS has refused to provide a list of manuals infringed, constituting an admission by SAS that this interrogatory seeks irrelevant information." (Resp. to Interr. No. 4). This objection is baseless for reasons comparable to those just discussed. In particular, defendant does not need to know which specific manuals plaintiff alleges defendant infringed to be able to list the SAS Manuals defendant obtained. Indeed, one obvious purpose of the interrogatory is to enable plaintiff to determine which manuals defendant may have infringed by determining which ones defendant had.

In response to Interrogatory No. 1, which sought facts supporting defendant's assertion of the fair use defense to plaintiff's copyright claims, defendant objected that plaintiff had not produced comparable information or related documents defendant had sought from plaintiff regarding the copyright claims: "SAS has refused to provide nearly identical documents and information." (Resp. to Interr. No. 1). Again, the alleged failure by plaintiff to produce discovery does not excuse defendant from its obligations to do so. Moreover, it was defendant that pled the fair use defense. (Answer to Am. Compl. 8, 4th Affirm. Def. ("WPL's actions with respect to SAS's allegedly copyrighted materials are a 'fair use' under 17 U.S.C. § 107.")). Defendant's counsel could have properly pled that defense only if they had the requisite factual support. *See, e.g.*, Fed. R. Civ. P. 11(b)(3). The court, of course, assumes that counsel met this

---

[4] The court notes that the instructions for the production requests and interrogatories specify that the time period covered, unless otherwise specified, is 1 January 2002 to the present. (*See* Prod. Reqs. (D.E. 147-2) 6, Insts. ¶ 3; Interrs. (D.E. 147-1) 4, Insts. ¶ 3).

13

Case 5:10-cv-00025-FL   Document 169   Filed 11/26/13   Page 13 of 17

obligation and therefore that there is a factual basis for this defense.  Hence, defendant would necessarily appear to have at least some information responsive to this interrogatory.

The court accordingly overrules this group of objections and will allow the motion to compel with respect to them.

## IV.     OBJECTIONS THAT REQUESTS ARE UNDULY VAGUE
         (Prod. Reqs. Nos. 22, 23; Interrs. Nos. 5, 7)

Defendant objected to several discovery requests on the grounds that the requests contained terms that were vague.  The specific discovery requests to which defendant asserted such an objection are Production Requests Nos. 22 and 23 and Interrogatories Nos. 5 and 7.

The terms in Production Requests Nos. 22 and 23 that defendant alleges are vague include "obtain a Master License Agreement" and "register on the SAS website," respectively. The purportedly vague terms in Interrogatory No. 5 include "components," "functions," and "PROCS" and in Interrogatory No. 7 "graduate degree."

The court finds the vagueness objections unfounded.  The meaning of some terminology, such as "graduate degree," appears sufficiently clear on its face to enable defendant to respond, although plaintiff has submitted explanatory information (D.E. 148-1) with its motion.  Much of the other challenged terminology was used previously in this case, as detailed by plaintiff in its memorandum (Pl.'s Mem. (D.E. 148) 9-10), and its meaning was arguably apparent from such prior usage.  Even if the prior usage did not make the meaning clear to defendant, the explanation provided by plaintiff in its memorandum should eliminate any material ambiguity.  The court will accordingly overrule the vagueness objections and allow plaintiff's motion with respect to them.

14

## V.     OTHER OBJECTIONS BY DEFENDANT

Defendant notes that it asserted objections to the discovery requests subject to plaintiff's motion that plaintiff does not address in support of its motion and argues that these objections therefore remain intact. The court disagrees.

Plaintiff made clear in its motion and supporting memorandum that it seeks an order compelling production of all the information or documents sought in the challenged discovery requests. In its motion, plaintiff states, "WHEREFORE, SAS respectfully requests that the Court enter an order compelling WPL to *fully* produce information and documents responsive to SAS's First Interrogatories (Int. Nos. 1, 4-7 & 9) and Third Request for Production of Documents (RFP Nos. 15-25, 28-30 & 32)." (Mot. 3, Prayer for Relief (emphasis added); *see also id.* 1). Similarly, in its memorandum, plaintiff states, "SAS respectfully requests that its Motion to Compel be granted and that the Court enter an order compelling WPL to *fully* produce information and documents responsive to SAS's RFP Nos. 15-25, 28-30 & 32 and Interrogatory Nos. 1, 4-7 & 9." (Pl.'s Mem. 10 (emphasis added)). Thus, by its motion, plaintiff was challenging all the objections to each of the discovery requests subject to its motion even though it chose to discuss only some of the objections.

Defendant's argument that Local Civil Rule 7.1(c) required plaintiff to explicitly address each objection is unfounded. Plaintiff sufficiently complied with the rule by submitting copies of defendant's responses to the discovery requests subject to its motion, including all the objections and grounds asserted therefor. The rule serves to ensure that the court has before it the discovery requests and responses, including objections, that are the subject of a discovery motion. That objective was clearly achieved here.

15

The burden to defend all the objections to the discovery requests at issue rested with defendant, as the party asserting them. Plaintiff's decision not to discuss all the objections did not relieve defendant of this burden. Defendant has failed to carry this burden. The court finds that objections asserted by defendant beyond those in the three categories discussed are without merit, and they will be overruled.

## VI. EXPENSES

The court finds that the circumstances would make an award of expenses unjust. *See* Fed. R. Civ. P. 37(a)(5)(A)(iii), (C). The court therefore declines to make such an award.

## CONCLUSION

For the foregoing reasons, the motion to compel (D.E. 147) is ALLOWED in part and DENIED AS MOOT in part on the following terms:

1. By 17 December 2013, defendant shall produce to plaintiff the documents and other materials sought in Requests for Production Nos. 15-25, 28-30, and 32 in Plaintiff's Third Request for Production of Documents. The production shall include responsive documents and other materials for the period 1 January 2002 to the time of the responses, except as otherwise specified in the production request. The documents and other materials produced shall be accompanied by a supplemental response to the production requests involved identifying the documents and other materials being produced. The supplemental response shall be duly signed by counsel.

2. By 17 December 2013, defendant shall serve on plaintiff complete answers to Interrogatories Nos. 1, 4-7, and 9 in plaintiff's First Interrogatories. The supplemental answers shall include responsive information for the period 1 January 2012 to the time of the answers,

except as otherwise specified in the interrogatory. The answers shall be accompanied by a verification in accordance with Fed. R. Civ. P. 33(b)(3).

    3.      Defendant having already responded to Interrogatory No. 9 on a worldwide basis, the foregoing paragraph 2 does not include a directive to defendant to do so (subject to defendant's obligation of supplementation under Rule 26(e)).

    4.      Each party shall bear its own costs incurred on the motion.

SO ORDERED, this 26th day of November 2013.

_____
James E. Gates
United States Magistrate Judge