IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:10-CV-25-FL

| | |
|---|---|
| SAS INSTITUTE INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| WORLD PROGRAMMING LIMITED, ) | |
| ) | |
| Defendant. ) | |

This case comes before the court on a motion (D.E. 164) by defendant World Programming Limited ("WPL") to compel discovery from plaintiff SAS Institute Inc. ("SAS"), specifically, certain information and documents sought in WPL's Second Interrogatories and Second Request for Production of Documents. The motion has been fully briefed and referred to the undersigned for disposition pursuant to 28 U.S.C. § 636(b)(1)(A). (*See* Minute Entry after D.E. 168). For the reasons set forth below, the motion will be allowed in part and denied in part.

## BACKGROUND

**I. SAS'S CLAIMS**

SAS alleges in its first amended complaint as follows:

SAS is a North Carolina corporation that produces business intelligence software and other software products, having its principal place of business in Cary, North Carolina. (Am. Compl. (D.E. 143) ¶ 2). WPL is incorporated under the laws of England and Wales and also develops software. (*Id*. ¶¶ 3, 19).

SAS has developed SAS System software that enables users to access, manage, analyze, and present data. (*Id.* ¶ 12). The SAS System has copyright protection. (*Id.* ¶¶ 35, 36). Customers of the SAS System are required to enter into a license agreement, the SAS Master License Agreement ("SAS MLA"), which, among other things, prohibits the customer from using the SAS System for purposes other than the customer's own business. (*Id.* ¶ 11).

SAS publishes a wide range of reference materials that describe the features of the SAS System and provide instructions and assistance to its users ("SAS Manuals"). (*Id.* ¶¶ 9, 10). The SAS Manuals have copyright protection. (*Id.* ¶¶ 37, 38).

In addition, SAS has developed software, known as SAS Learning Edition, that teaches individuals how to use the SAS System. (*Id.* ¶ 12). It includes a selection of SAS Manuals. (*Id.* ¶ 14). Before an individual is permitted to use SAS Learning Edition software, he is required to accept the terms of a license agreement that confers a nontransferable right to use it solely for the purpose of learning how to use the SAS System. (*Id.* ¶¶ 15, 16, 18). The SAS Learning Edition software has copyright protection. (*Id.* ¶ 36).

WPL has developed software, named the World Programming System ("WPS"), designed to reproduce central aspects of the SAS System and thereby to replace the SAS System for certain customers of SAS. (*Id.* ¶¶ 19, 20). WPL has also developed a manual for WPS. (*Id.* ¶ 31). WPL's marketing of WPS is primarily, if not entirely, directed at current SAS licensees and attempts to persuade them to license WPS in place of the SAS System. (*Id.* ¶ 34).

To create WPS, WPL used one or more copies of the SAS System, although in 2008 SAS had refused to give WPL a license to use it. (*Id.* ¶¶ 23, 24, 30). In addition, to be able to create WPS, WPL must have studied SAS Manuals to understand various aspects of the SAS

2

System. (*Id.* ¶ 29). WPL also copied substantial parts of the SAS Manuals in creating the manual for WPS. (*Id.* ¶¶ 31 41).

Upon SAS's information and belief, WPL also acquired a copy of the SAS Learning Edition software and agreed to the terms of the associated license. (*Id.* ¶ 25). Instead of or in addition to doing so, WPL, again upon SAS's information and belief, convinced a party that had entered into the SAS MLA to violate prohibitions in it by allowing WPL access to the SAS System, which WPL used to develop and test WPS software. (*Id.* ¶ 54).

SAS filed its initial complaint (D.E. 1) on 19 January 2010. With leave of court (*see* D.E. 138), SAS filed its first amended complaint on 14 August 2013, which added a claim that WPL obtained access to the SAS Learning Edition software by fraud. (*See* 1st Am. Compl. ¶¶ 1, 50-52; Request for Relief ¶ D).

SAS asserts the following claims in its first amended complaint: copyright infringement with respect to the SAS System and SAS Learning Edition software (*id.* ¶¶ 43-45) (count I); copyright infringement with respect to the SAS Manuals (*id.* ¶¶ 46, 47) (count II); breach of contract, namely, the license agreement between SAS and WPL for the SAS Learning Edition software, by fraud (*id*. ¶¶ 48-52) (count III); tortious interference with contract, that is, a SAS MLA for the SAS System SAS entered into with another party (*id*. ¶¶ 53-57) (count IIIA); tortious interference with prospective economic advantage by inducing nonrenewal by SAS customers of their licenses with SAS (*id*. ¶¶ 58-62) (count IV); and unfair and deceptive trade practices and unfair competition under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et seq.* (*id*. ¶¶ 63-65) (count V). SAS seeks compensatory damages, punitive damages, statutory treble damages, injunctive relief, expenses, attorney's

fees, and any other just and proper relief. (*Id*., Request for Relief 17-18). WPL denies the material allegations in SAS's complaint. (*See generally* Ans. to Am. Compl. (D.E. 149)).

Prior to filing the instant lawsuit, SAS filed a lawsuit against WPL in the United Kingdom ("U.K. Litigation"), arising from some of the same disputes. In the course of discovery in the U.K. Litigation, the parties exchanged voluminous discovery.

## II. DISCOVERY AT ISSUE

On 6 August 2013, WPL served on SAS its second set of interrogatories and second set of requests for production. SAS served responses on 6 September 2013, asserting an array of objections to the interrogatories and production requests. (Resp. to Interrs. (D.E. 165-1); Resp. to Prod. Reqs. (D.E. 165-2)). The parties engaged in a meet-and-confer process, but could not resolve their disputes. (*See generally* Mot. ¶¶ 1-3). WPL subsequently filed the instant motion to compel SAS to produce additional information and documents.

## DISCUSSION

## I. APPLICABLE LAW

The Federal Civil Rules enable parties to obtain information by serving requests for discovery on each other, including interrogatories and requests for production of documents. *See generally* Fed. R. Civ. P. 26-37. Rule 26 provides for a broad scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). The rules of discovery, including Rule 26, are to be given a broad and liberal construction. *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Nemecek v. Bd. of Governors*, No. 2:98-CV-62-BO, 2000 WL 33672978, at *4 (E.D.N.C. 27 Sep. 2000).

4

While Rule 26 does not define what is deemed relevant for purposes of the rule, relevance has been "'broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party.'" *EEOC v. Sheffield Fin. LLC*, No. 1:06CV889, 2007 WL 1726560, at *3 (M.D.N.C. 13 June 2007) (quoting *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 473 (N.D. Tex. 2005)). The district court has broad discretion in determining relevance for discovery purposes. *Watson v. Lowcountry Red Cross*, 974 F.2d 482, 489 (4th Cir. 1992). In addition, the court may limit the extent of discovery otherwise allowable where "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii); *Basile Baumann Prost Cole & Assocs., Inc. v. BBP & Assocs. LLC,* No. WDQ-11-2478, 2013 WL 1622001, at *3 (D. Md. 9 Apr. 2013) ("Further, '[a]ll discovery is subject to the [proportionality] limitations imposed by Rule 26(b)(2)(C).'" (quoting Fed. R. Civ. P. 26(b)(1))). Rule 37 allows for the filing of a motion to compel discovery responses. Fed. R. Civ. P. 37(a)(3)(B).

## II.  DISCOVERY REQUESTS AT ISSUE

By the instant motion, WPL seeks an order compelling SAS to respond more fully to Interrogatories Nos. 20 and 21 and Production Requests Nos. 33 to 37.[1] These discovery requests are discussed separately below.

### A.  Interrogatories Nos. 20 and 21 (Allowed in Part and Denied in Part)

Interrogatories Nos. 20 and 21 concern the scope of searches conducted by SAS in responding to WPL's discovery requests. Specifically, Interrogatory No. 20 asks "[i]f SAS has utilized any search terms in responding to any of WPL's discovery requests or intends to use

---

[1] The requests and responses to them are set out in WPL's motion.

5

search terms in responding to current or future discovery requests, [to] list those search terms." (Mot. 1). Interrogatory No. 21 similarly requests "[i]f SAS has searched the documents of only certain custodians in responding to any of WPL's discovery requests, or intends to use search terms in responding to current or future discovery requests, [to] list those custodians." (Mot. 2). In response to these interrogatories, SAS objected to the vagueness of the term "future discovery requests." (*Id.*). Subject to that objection, it identified the search terms it utilized and provided a list of individuals for whom it obtained information in response to certain requests for production and/or interrogatories.

WPL contends that SAS's responses are insufficient. Specifically, it argues that it is entitled to more information to allow it to assess whether SAS has adequately complied with its obligations to search for documents. WPL wants SAS to explain whether the information it has provided "represent[s] the entire universe of search terms used and custodians searched and to which requests each list [of search terms] was applied." (Mot. 5). It also argues that the information that has been disclosed demonstrates that the searches conducted have been deficient.

As an initial matter, the court agrees that the request for search terms and the identity of custodians relating to "future discovery requests" is unduly vague. To the extent there can even be future requests given the discovery schedule in this case, WPL has not demonstrated how SAS can reasonably be expected to know search terms and document custodians relevant to requests it has not seen. The portion of WPL's motion relating to future requests is therefore DENIED.

Further, to the extent that WPL is asking the court to direct SAS to identify which search terms it used and the persons whose records it searched with respect to each particular

6

discovery request, such request is DENIED. WPL has not justified the need for such a seemingly burdensome and intrusive inquiry. In particular, WPL has made no showing that SAS has intentionally conducted inadequate searches in response to WPL discovery requests.

During meet-and-confer sessions between the parties, SAS agreed to search the accounts of nearly three dozen custodians identified by WPL and to use a revised list of search terms. (14 Oct. 2013 letter (D.E. 168-4)). The court finds that the supplemental production to which SAS has agreed will satisfy any further obligation it may have under Interrogatories Nos. 20 and 21. SAS shall therefore serve on WPL the additional information it has agreed to produce by 10 March 2014. To that extent, WPL's motion shall be deemed ALLOWED as to these interrogatories. In all other respects, the motion is DENIED as to Interrogatories Nos. 20 and 21.

B. **Production Requests Nos. 33, 34, and 36 (Allowed in Part and Denied in Part)**

Production Requests Nos. 33, 34, and 36[2] seek documents relating to third parties whose content is contained in SAS Manuals and software, and any agreements for such content. WPL contends that it needs the information responsive to these production requests to determine if portions of the material it allegedly infringed upon is owned by third parties. SAS objected to these discovery requests on the grounds that the phrase "[a]ll documents, communications, and other information that relate to third party content contained or referenced" is vague, ambiguous, and overbroad. SAS also noted that third-party content contained in the SAS

---

[2] Production Request No. 33 seeks "[a]ll documents, communications, and other information that relate to third party content contained or referenced in any SAS Manual, including without limitation copyright assignments, and permissions or licenses for the third party content." (Mot. 3). Production Request No. 34 seeks "[a]ll documents, communications, and other information that relate to third party content contained or referenced in the SAS Software, including without limitation copyright assignments, and permissions or licenses for the third party content." (Mot. 4). Production Request No. 36 seeks "[a]ll documents, communications, and other information that relate to the open source code that is included in the SAS Software, including without limitation any open source or third party license agreements." (Mot. 4).

7

Manuals, including copyright assignments, permissions, or licenses, is listed in the bibliographies to the manuals it has already produced.

During meet-and-confer sessions, SAS agreed to supplement its response by producing anew all of the SAS Manuals that it had previously produced in the U.K. Litigation; providing all "vendor developer program agreements with third parties concerning third-party content contained in SAS Software"; and producing a report that provides detail about the open-source material in the SAS software. (SAS's Mem. (D.E. 168) 8). SAS has also agreed to produce a representative sample of 20 license agreements for third-party content in SAS's software and the SAS Manuals, but objects to producing every such agreement. SAS has adequately demonstrated that, given the relatively minimal relevance of the license agreements, it is not required to produce all of them and that the selected production proposed would be adequate.

The court finds that the supplemental production to which SAS has agreed will satisfy any further obligation it may have under Production Requests Nos. 33, 34, and 36. SAS shall therefore serve on WPL the additional documents it has agreed to produce by 10 March 2014. To that extent, WPL's motion shall be deemed ALLOWED as to Production Requests Nos. 33, 34, and 36. In all other respects, the motion is DENIED as to these production requests.

### C. Production Request No. 35 (Allowed)

Production Request No. 35 seeks all documents submitted by SAS to or received by SAS from the United States Copyright Office relating to SAS's copyrights. (Mot. 4). SAS objects on the ground that the information sought is all publicly available from the Copyright Office and that the burden of obtaining the information is no greater for WPL than it would be for SAS.

While the court recognizes the principle that, in certain circumstances, a responding party should not be required to produce documents to which the requesting party has equal access, it finds that the principle is not applicable here. The production request at issue seeks documents in SAS's possession, custody, or control. There could conceivably be a discrepancy between that set of documents and any group of like documents the Copyright Office may have. Moreover, production by SAS would avoid delays that could be incurred in obtaining corresponding documents from the Copyright Office.

Accordingly, the portion of WPL's motion relating to Production Request No. 35 is ALLOWED. SAS shall produce to WPL the documents sought in Production Request No. 35 no later than 10 March 2014.

**D.    Production Request No. 37 (Denied)**

Production Request No. 37 seeks "[a]ll information SAS is required to produce pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, but which SAS has not yet produced, including, but not limited to damages calculations and supporting documentation." (Mot. 5). The parties in their Discovery Plan proposed, and the court accepted in its Amended Case Management Order (D.E. 89) § I.A, an agreement not to exchange initial disclosures. On this basis, SAS objects to the production request.

The court finds the objection well taken. Read literally, there is no information responsive to this production request because SAS was not required to produce any information pursuant to Rule 26(a)(1). The court, of course, recognizes that the matters addressed by Rule 26(a)(1) remained subject to discovery even though the obligation to produce such information under that provision did not exist. But WPL has already served discovery requests regarding such matters not worded in terms of Rule 26(a)(1). (*See, e.g.*, 4 Dec. 2013 Order (D.E. 170) 10

9

Case 5:10-cv-00025-FL   Document 201   Filed 03/03/14   Page 9 of 10

(compelling production by SAS of documents relating to its damages pursuant to WPL's Production Req. No. 19)). Thus, when WPL wanted discovery not based on the disclosure obligation under Rule 26(a)(1), it knew how to request it. WPL's motion is therefore DENIED with respect to Production Request No. 35.

**III. EXPENSES**

The court finds that the circumstances would make an award of expenses unjust. *See* Fed. R. Civ. P. 37(a)(5). The court therefore declines to make such an award.

## CONCLUSION

In sum, IT IS ORDERED as follows:

1. WPL's motion to compel (D.E. 164) is ALLOWED IN PART AND DENIED IN PART on the terms set forth above.

2. SAS shall serve a verification with its supplemental answers to Interrogatories Nos. 20 and 21, and shall serve with its supplemental production in response to Production Requests Nos. 33 to 36 a duly signed supplemental response to these requests identifying the documents being produced.

3. Each party shall bear its own costs incurred on the motion.

SO ORDERED, this 3rd day of March 2014.

/s/ James E. Gates
James E. Gates
United States Magistrate Judge