IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:10-CV-25-FL

| | | |
|---|---|---|
| SAS INSTITUTE INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| WORLD PROGRAMMING LIMITED, | ) | |
| | ) | |
| Defendant. | ) | |

This case comes before the court on a motion (D.E. 198) by plaintiff SAS Institute Inc. ("SAS" or "plaintiff") to compel discovery from defendant World Programming Limited ("defendant" or "WPL"). The motion has been fully briefed and referred to the undersigned for disposition pursuant to 28 U.S.C. § 636(b)(1)(A). (*See* Minute Entry after D.E. 204). For the reasons set forth below, the motion will be allowed in part and denied in part.

## BACKGROUND

**I.    SAS'S CLAIMS**

SAS alleges in its first amended complaint as follows:

SAS is a North Carolina corporation that produces business intelligence software and other software products, having its principal place of business in Cary, North Carolina. (Am. Compl. (D.E. 143) ¶ 2). WPL is incorporated under the laws of England and Wales and also develops software. (*Id*. ¶¶ 3, 19).

SAS has developed SAS System software that enables users to access, manage, analyze, and present data. (*Id.* ¶ 12). The SAS System has copyright protection. (*Id.* ¶¶ 35, 36). Customers of the SAS System are required to enter into a license agreement, the SAS Master

License Agreement ("SAS MLA"), which, among other things, prohibits the customer from using the SAS System for purposes other than the customer's own business. (*Id.* ¶ 11).

SAS publishes a wide range of reference materials that describe the features of the SAS System and provide instructions and assistance to its users ("SAS Manuals"). (*Id.* ¶¶ 9, 10). The SAS Manuals have copyright protection. (*Id.* ¶¶ 37, 38).

In addition, SAS has developed software, known as SAS Learning Edition, that teaches individuals how to use the SAS System. (*Id.* ¶ 12). It includes a selection of SAS Manuals. (*Id.* ¶ 14). Before an individual is permitted to use SAS Learning Edition software, he is required to accept the terms of a license agreement that confers a nontransferable right to use it solely for the purpose of learning how to use the SAS System. (*Id.* ¶¶ 15, 16, 18). The SAS Learning Edition software has copyright protection. (*Id.* ¶ 36).

WPL has developed software, named the World Programming System ("WPS"), designed to reproduce central aspects of the SAS System and thereby to replace the SAS System for certain customers of SAS. (*Id.* ¶¶ 19, 20). WPL has also developed a manual for WPS. (*Id.* ¶ 31). WPL's marketing of WPS is primarily, if not entirely, directed at current SAS licensees and attempts to persuade them to license WPS in place of the SAS System. (*Id.* ¶ 34).

To create WPS, WPL used one or more copies of the SAS System, although in 2008 SAS had refused to give WPL a license to use it. (*Id.* ¶¶ 23, 24, 30). In addition, to be able to create WPS, WPL must have studied SAS Manuals to understand various aspects of the SAS System. (*Id.* ¶ 29). WPL also copied substantial parts of the SAS Manuals in creating the manual for WPS. (*Id.* ¶¶ 31 41).

Upon SAS's information and belief, WPL also acquired a copy of the SAS Learning Edition software and agreed to the terms of the associated license. (*Id.* ¶ 25). Instead of or in

2

addition to doing so, WPL, again upon SAS's information and belief, convinced a party that had entered into the SAS MLA to violate prohibitions in it by allowing WPL access to the SAS System, which WPL used to develop and test WPS software. (*Id.* ¶ 54).

SAS filed its initial complaint (D.E. 1) on 19 January 2010. With leave of court (*see* D.E. 138), SAS filed its first amended complaint on 14 August 2013, which added a claim that WPL obtained access to the SAS Learning Edition software by fraud. (*See* 1st Am. Compl. ¶¶ 1, 50-52; Request for Relief ¶ D).

SAS asserts the following claims in its first amended complaint: copyright infringement with respect to the SAS System and SAS Learning Edition software (*id.* ¶¶ 43-45) (count I); copyright infringement with respect to the SAS Manuals (*id.* ¶¶ 46, 47) (count II); breach of contract, namely, the license agreement between SAS and WPL for the SAS Learning Edition software, by fraud (*id*. ¶¶ 48-52) (count III); tortious interference with contract, that is, a SAS MLA for the SAS System SAS entered into with another party (*id*. ¶¶ 53-57) (count IIIA); tortious interference with prospective economic advantage by inducing nonrenewal by SAS customers of their licenses with SAS (*id*. ¶¶ 58-62) (count IV); and unfair and deceptive trade practices and unfair competition under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et seq.* (*id*. ¶¶ 63-65) (count V). SAS seeks compensatory damages, punitive damages, statutory treble damages, injunctive relief, expenses, attorney's fees, and any other just and proper relief. (*Id*., Request for Relief 17-18). WPL denies the material allegations in SAS's complaint. (*See generally* Ans. to Am. Compl. (D.E. 149)).

Prior to filing the instant lawsuit, SAS filed a lawsuit against WPL in the United Kingdom ("U.K. Litigation"), arising from some of the same disputes. In the course of discovery in the U.K. Litigation, the parties exchanged voluminous discovery.

3

## II.  DISCOVERY DISPUTES AT ISSUE

On 26 November 2013, this court issued an order (D.E. 169) on SAS's motion to compel (D.E. 147).  It directed WPL to produce (by 17 December 2013) all its source code for WPS software, pursuant to Production Request No. 15, that it has not already produced.  (26 Nov. 2013 Order 11, 12).  SAS contends that WPL is refusing to produce certain source code subject to this directive, although WPL acknowledges the producibility of other source code pursuant to Production Request No. 15.  SAS's motion seeks, in part, compliance with this directive.  SAS also seeks relief from WPL's insistence that any additional source code due, as well as bug-tracking reports producible pursuant to the 26 November 2013 Order (*see* pp. 8, 12) and Production Request No. 16, be produced in the U.K.

On 20 December 2013, SAS served on WPL its fourth set of requests for production (D.E. 198-1).  WPL served responses (D.E. 198-2) on 21 January 2013, objecting to production of, among other documents, those sought in Production Request No. 39, certain SAS Manuals.  SAS's motion requests an order compelling production of these SAS Manuals.

Prior to filing its motion, SAS and WPL engaged in a meet-and-confer process, as required.  (*See generally* Mot. ¶¶ 6-9, 13).  This process, though, proved unsuccessful.

## DISCUSSION

### I.  APPLICABLE LAW

The Federal Civil Rules enable parties to obtain information by serving requests for discovery on each other, including interrogatories and requests for production of documents. *See generally* Fed. R. Civ. P. 26-37.  Rule 26 provides for a broad scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . .  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.

4

> Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). The rules of discovery, including Rule 26, are to be given a broad and liberal construction. *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Nemecek v. Bd. of Governors*, No. 2:98-CV-62-BO, 2000 WL 33672978, at *4 (E.D.N.C. 27 Sep. 2000).

While Rule 26 does not define what is deemed relevant for purposes of the rule, relevance has been "'broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party.'" *EEOC v. Sheffield Fin. LLC*, No. 1:06CV889, 2007 WL 1726560, at *3 (M.D.N.C. 13 June 2007) (quoting *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 473 (N.D. Tex. 2005)). The district court has broad discretion in determining relevance for discovery purposes. *Watson v. Lowcountry Red Cross*, 974 F.2d 482, 489 (4th Cir. 1992). In addition, the court may limit the extent of discovery otherwise allowable where "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii); *Basile Baumann Prost Cole & Assocs., Inc. v. BBP & Assocs. LLC,* No. WDQ-11-2478, 2013 WL 1622001, at *3 (D. Md. 9 Apr. 2013) ("Further, '[a]ll discovery is subject to the [proportionality] limitations imposed by Rule 26(b)(2)(C).'" (quoting Fed. R. Civ. P. 26(b)(1))). Rule 37 allows for the filing of a motion to compel discovery responses. Fed. R. Civ. P. 37(a)(3)(B).

5

## II. COMPLIANCE WITH 26 NOVEMBER 2013 ORDER (Allowed in Part and Denied in Part)

### A. Production of WPL Source Code

As noted, in its 26 November 2013 Order, the court directed WPL to produce, pursuant to SAS's Production Request No. 15, all source code for the WPS software that it had not "already produced." (26 Nov. 2013 Order 12 § II). WPL contends that, by its terms, this directive does not apply to the source code it alleges it previously produced to SAS in the U.K. Litigation. SAS counters that the source code was not actually *produced* to it in the U.K. Litigation, but instead was just made available to its U.K. counsel for review in a controlled environment. (SAS's Mem. (D.E. 199) 4).

The court finds that WPL's prior provision of access to its source code does not satisfy the requirement for its production under the 26 November 2013 Order. The manner of the prior disclosure did not make the source code available to SAS's current counsel, as production of the information in a durable medium would have. Thus, WPL's provision of access to SAS's current counsel would not be duplicative of the prior disclosure. Accordingly, the court directs WPL to make available to SAS's current counsel all the WPS source code WPL had previously disclosed to SAS's U.K. counsel in the U.K. Litigation. WPL shall do so by 14 May 2014. The portion of SAS's motion seeking production of such software is therefore ALLOWED.

### B. Place and Manner of Production of Source Code and Bug-tracking Reports

WPL asserts that it will make additional source code available for SAS's review only on a computer at its U.K.'s counsel's London offices and the bug-tracking reports available only on a computer at WPL's U.K. offices. SAS argues that this information should be made available to it within this judicial district rather than in the U.K., in part, because of the financial and other burdens of having to review it in the U.K.

6

While there may well be burdens to SAS associated with provision of the information as WPL insists, SAS agreed to the provision of information in this way. In the Amended Stipulated Protective Order (D.E. 106), SAS agreed that:

> [w]here applicable, Discovery Materials shall be accessed by the Parties on an "Approved Device(s)," meaning any computer or computer terminal, server, digital optical or other storage or retrieval system together with an appropriate means of display at a specified location which is approved in writing by the producing Party or nonparty to be used by the Party receiving the Discovery Material for the purposes of storing, reviewing, inspecting and/or testing the Discovery Material.

(Am. Prot. Order ¶ 2). SAS has not made a persuasive showing that it should be relieved from this stipulated provision. Accordingly, the portion of SAS's motion seeking an order directing that WPL make its source code and bug-tracking reports available for inspection in this judicial district is DENIED.

### C. Production Request No. 39 (Allowed)

Production Request No. 39 seeks all SAS Manuals WPL obtained "with any markings or notations by WPL." (Prod. Req. No. 39).[1] WPL objects to this production request on the principal ground that WPL made available copies of SAS Manuals in the U.K. proceeding. SAS contends that its U.K. counsel has limited excerpts of WPL's SAS Manuals, but does not have complete copies and never explicitly requested copies with all markings or annotations.

The court finds that WPL has failed to show that it should not be required to comply fully with Production Request No. 39 to the extent that it has not already done so. WPL shall

---

[1] Production Request No. 39 seeks: "All SAS Manuals referenced in WPL's response to SAS's Interrogatory No. 4 with any markings or notations by WPL." Interrogatory No. 4 reads:

> List *all SAS manuals obtained by WPL* and include, for each manual, (1) the date of publication of the manual, (2) the title, volume and version of the manual, (3) the date WPL obtained the manual, and (4) a detailed description of the manner the manual was obtained, including, without limitation, details of the set of SAS manuals acquired by Dr. Quarendon as described in paragraph 65 of the Judgment in the UK Action dated July 23, 2010.

(Int. No. 4) (emphasis added).

therefore produce to WPL, by 14 May 2014, copies of all SAS Manuals it obtained with markings or notations by WPL that it has not yet produced to SAS. The portion of SAS's motion seeking production of SAS Manuals pursuant to Production Request No. 39 is therefore ALLOWED.

### III. EXPENSES

The court finds that the circumstances would make an award of expenses unjust. *See* Fed. R. Civ. P. 37(a)(5), (b)(2)(C). The court therefore declines to make such an award.

### CONCLUSION

In sum, IT IS ORDERED as follows:

1. SAS's motion to compel (D.E. 198) is ALLOWED IN PART AND DENIED IN PART on the terms set forth above.

2. WPL shall serve with any supplemental production in response to Production Requests Nos. 15, 16, and 39 a duly signed supplemental response to these requests identifying the documents being produced.

3. Each party shall bear its own costs incurred on the motion.

SO ORDERED, this 30th day of April 2014.

_____
James E. Gates
United States Magistrate Judge