IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CV-25-FL

| | |
|---|---|
| SAS INSTITUTE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| WORLD PROGRAMMING LIMITED, ) | |
| ) | |
| Defendant. ) | |

This matter comes before the court on defendant's motion to exclude plaintiff's expert Dr. James A. Storer ("Storer"), (DE 329), pursuant to Federal Rule of Evidence 702 and <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993). The issues raised have been briefed fully, and the parties have presented witness testimony and argument at hearing held July 23 and 24, 2015. In this posture, the issues raised are ripe for ruling. Defendant's motion also sounds in part as one under Federal Rule of Evidence 403. For the reasons that follow, defendant's broad based <u>Daubert</u> motion to exclude Storer's testimony is denied.[1] However, with regard to Rule 403 considerations, where defendant challenges certain portions of Storer's opinion, the motion is granted to the extent the court will exclude Storer's opinion that the SAS system is not "an interpreter or compiler" but, rather, is a "system" of interpreters and compilers.

---

[1] Also pending before the court is plaintiff's motion to exclude certain opinions of defendant's proffered expert, Kendyl A. Roman. (DE 347). The court orally granted plaintiff's motion at hearing. A separate order grounding and expanding on the court's oral ruling will follow.

## BACKGROUND

This case has a complex procedural history and lengthy factual background. The court recounts the following facts and procedure pertinent to the issues now under consideration.

Plaintiff develops and markets a group of software products designed to perform data analysis, management, and presentation, collectively known as the SAS system. Users of the SAS system may write various programs, also known as procedures or "PROCs" using a system of inputs known as the "SAS language." Plaintiff bundles and markets a select group of the products comprising the SAS system as a less expensive and functionally limited SAS Learning Edition, ("SAS LE"), aimed at users who are interested in learning the SAS language.

Defendant develops a competing software product, the World Programming System ("WPS"). Defendant intended to develop WPS to mimic the SAS system's functionality, aspiring to achieve a uniform correspondence of outputs for any given set of inputs in the SAS language ("input/output correspondence"). In the course of WPS's development, defendant purchased several copies of SAS LE for the purpose of comparing WPS's output against the SAS system's. When installing SAS LE, defendant's employees were required to agree to the terms of the SAS LE license agreement, which contained a number of terms and conditions, including explicit terms limiting use of SAS LE to "nonproduction purposes only" and prohibiting "reverse engineering" of SAS LE. This court previously has determined that defendant breached the SAS LE license agreement by using the software for "production purposes" and "reverse engineering" SAS LE.

To assist in the calculation of damages owed to plaintiff as a result of defendant's breach of the SAS LE license agreement, as well as damages on other claims which remain pending for trial,[2] the parties employed experts who developed opinions bearing on whether WPS could have been developed to its current state but for defendant's impermissible use of SAS LE, and if so, how much delay defendant would have experienced in its production process as a result. Stated another way, the parties attempted to qualify, and quantify, the benefit provided to defendant's development of WPS by SAS LE.

Defendant argues that Storer's testimony is both irrelevant and unreliable. With respect to the relevancy of Storer's testimony, defendant contends he is not qualified to offer an opinion in this case and that, even if he is, his testimony will be unhelpful to the jury because his opinions are not grounded in his relevant expertise. Regarding the reliability of Storer's proposed testimony, defendant argues that his opinions are not grounded in reliable methodology or data. At hearing, Storer testified and responded to questions posited by counsel for the parties, as well as by the court.

**COURT'S DISCUSSION**

A.  Standard of Review

The admission of expert testimony is governed by Rule 702 of the Federal Rules of Evidence. The proponent of the expert testimony bears the burden of establishing its admissibility by a preponderance of proof. Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 (4th Cir. 2001). A district court is granted broad latitude in making its determination on the admissibility of proposed

---

[2] In addition to the breach of contract claim discussed in the text, also pending for trial are claims for copyright violation; fraudulent inducement to contract; and violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 et seq.. At hearing, plaintiff, through counsel, expressed willingness to dismiss plaintiff's copyright claim, but stopped short of making an oral motion to dismiss that claim. Rather, plaintiff's counsel indicated that he preferred to file a written motion. To date, no such motion has been filed.

expert testimony. United States v. Gastiaburo, 16 F.3d 582, 589 (4th Cir. 1994) ("The trial judge has broad discretion under Rule 702."). Review by the advisory committee shows that the rejection of expert testimony is the exception rather than the rule. Fed. R. Evid.702 advisory committee's note (2000).

Rule 702 provides that expert testimony is appropriate when it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Rule 702 further provides that a witness qualified as an expert may be permitted to testify where "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Id. Courts have distilled the requirements of Rule 702 into two crucial inquiries: whether the proposed expert's testimony is relevant and whether it is reliable. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999); Daubert, 509 U.S. at 589; United States v. Forrest, 429 F.3d 73, 80 (4th Cir. 2005). The trial court must carry out the special gate-keeping obligation of ensuring that expert testimony meets both requirements. Kumho Tire, 526 U.S. at 147; United States v. Moreland, 437 F.3d 424, 431 (4th Cir. 2006), overruling on other grounds recognized by United States v. Diosdado-Star, 630 F.3d 359 (4th Cir. 2011).

In order to be considered relevant, the proposed expert testimony must appear to be helpful to the trier of fact. See Daubert, 509 U.S. at 591-92. "Testimony from an expert is presumed to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror." Kopf v. Skyrm, 993 F.2d 374, 377 (4th Cir. 1993).

"'[T]he test of reliability is flexible' and 'the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability

4

determination.'" United States v. Wilson, 484 F. 3d 267, 274 (4th Cir. 2007) (quoting Kumho Tire, 526 U.S. at 141-42).

One factor pertinent to reliability is the proposed expert's qualifications. See Giddings v. Bristol-Myers Squibb Co., 192 F.Supp.2d 421, 425 (D.Md. 2002). A witness may qualify to render expert opinions in any one of the five ways listed in Rule 702: knowledge, skill, experience, training, or education. Kumho Tire, 526 U.S. at 147. The Fourth Circuit has ruled that when an expert's qualifications are challenged, "'the test for exclusion is a strict one, and the purported expert must have neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered.'" Kopf, 993 F.2d at 377 (quoting Thomas J Kline, Inc. v. Lorillard, Inc., 878 F.2d 791, 799 (4th Cir. 1989)).

Additional factors also bear on the reliability of the expert's testimony. They may include: "(1) whether a theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its application; and (4) whether the theory or technique enjoys general acceptance within the relevant community." Tunnell v. Ford Motor Co., 245 F. App'x. 283, 286 (4th Cir. 2007) (citing Kumho Tire, 526 U.S. at 149-50); accord Daubert, 509 U.S. at 593-94. In addition, "[a]n expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record." Tyger Const. Co. Inc. v. Pensacola Const. Co., 29 F.3d 137, 142 (4th Cir. 1994).

Of course, the admission of expert testimony must be considered within the context of the other rules of evidence. In particular, Rule 403 provides that the court must ensure that the probative value of any proffered evidence is not "substantially outweighed by the danger of unfair

5

prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. As this court has noted, "[d]espite the court's ability to exercise broad discretion and flexibility when determining the admissibility of expert testimony, the court must balance this discretion with the concerns of Rule 403 to ensure that the probative value of the proffered testimony is not 'substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" Bouygues Telecom, S.A. v. Tekelec, 472 F. Supp. 2d 722, 725 (E.D.N.C. 2007) (quoting Fed. R. Evid. 403).

B.      Summary of Storer's Qualifications and Opinions

Storer is a professor of computer science at Brandies University in Waltham, Massachusetts, and has served in that capacity or similar capacities since 1981. He holds a Ph.D. in computer science from Princeton University. His primary research interest is data compression, and he is accomplished in that field. However, he teaches classes on a wide variety of computer science topics. Storer knows and has studied many different programming languages and has developed software in a traditional commercial setting, for government research, and in academia.

If allowed to testify at trial, Storer will opine on defendant's inability to develop WPS fully without use of SAS LE. In particular, Storer will opine that development of WPS required "heavy" or "integral" use of SAS LE in order to achieve defendant's desired input/output correspondence between the two systems. Storer bases the majority of this opinion on documents produced by defendant in this litigation, as well as documents from a parallel litigation in the United Kingdom between the parties.[3] In addition, Storer will opine that defendant could not have developed WPS

---

[3] A more through discussion of the United Kingdom litigation may be found in a prior order. SAS Inst. v. World Programming Ltd., No. 5:10-CV-25-FL, slip op, at *2-6 (E.D.N.C. July 21, 2015).

6

fully by exclusively relying on SAS outputs obtained from third parties, because doing so would have been too "impractical."

C.  Analysis

With respect to defendant's challenge under Daubert, because plaintiff has established both the relevance and the reliability of Storer's testimony, the court will not close the gate on this witness.  With regard to defendant's Rule 403 argument, the court will exclude a portion of Storer's proposed testimony as unnecessarily confusing to the jury.

   1.  Qualifications

Defendant first contends Storer's opinion is irrelevant, because he is not qualified to offer an opinion in this case.  Defendant's challenge to Storer's qualifications is grounded in his lack of experience in the realm of commercial software development, generally, and with both the SAS system and WPS, more specifically.  Defendant's argument takes too narrow a view of Rule 702.

"Where the expert's qualifications are challenged, the test for exclusion is a strict one. . . . One knowledgeable about a particular subject need not be precisely informed about all details of the issues raised in order to offer an opinion."  Kopf, 993 F.2d at 377 (quoting Thomas J. Kline, Inc. v. Lorillard, Inc., 878 F.2d 791, 799 (4th Cir. 1989)) (internal quotations omitted).  Accordingly, a challenge based on lack of qualifications alone must demonstrate that "the purported expert [has] neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered."  Thomas J. Kline, Inc. v. Lorillard, Inc., 878 F.2d 791, 799 (4th Cir. 1989).

Storer has been a computer scientist for approximately 30 years.  Over that time he has developed software personally, in a commercial setting as a part-time job prior to beginning his

7

Ph.D. program; while working in the self-described "post-doctoral" atmosphere of Bell Laboratories in Princeton, New Jersey, where he obtained a federal grant to develop both hardware and software; and with fellow academics at Brandies University. In addition he has supervised students as they developed their own software, as required undergraduate work and as a student's chosen area of research in pursuit of his or her graduate studies. This various and lengthy background sufficiently satisfies the court that Storer's experience and training qualify him as an expert in the area of software development.

Defendant's contentions grounded in a lack of commercial experience and experience with the relevant software also are without merit. As an initial matter, defendant has done nothing to demonstrate why commercial software development is so unique that an otherwise qualified expert should be disqualified in the absence of specialized experience. See Belk, Inc. v. Meyer Corp., 679 F.3d 146, 162 (4th Cir. 2012) ("[The opponent of the proffered expert] provides no support for its argument that consumer survey research in trade dress litigation is *sui generis* such that an expert's lack of experience in designing these specific surveys necessarily disqualifies him from giving an expert opinion.").

In addition, defendant's objections are irrelevant in light of the high level nature of Storer's proposed opinion. As is discussed more fully below, Storer does not ground his opinion that defendant could not have developed WPS in specific evidence of defendant's use of SAS LE or in his technical understanding of the software at issue. Rather, more accurately stated, Storer opines that defendant could not have developed WPS without use of SAS LE in light of his experience in software development generally. His opinion neither involves nor requires a granular analysis of WPS and SAS LE, but instead offers a general conclusion of impracticality in light of his

8

background in software development. Although plaintiff's tactical choice to employ an expert qualified to offer a general opinion only could suggest fertile ground for cross examination, it is not within the province of the court to close the gate on that basis alone where he meets the requirements for sufficient expertise under Daubert and its progeny in light of the opinion offered.

    2.    Helpfulness

Defendant also challenges the relevance of Storer's opinion by arguing that it will not be "helpful" to the trier of fact. See Fed. R. Evid. 702(a). Defendant contends Storer's entire opinion is unhelpful because he did not rely on his expertise in reaching his conclusion. To address the helpfulness of Storer's opinion it is necessary separately to consider what the court has identified as its two constituent parts. First, the court considers Storer's opinion that WPS is a "clone" of SAS LE. Second, the court considers Storer's opinion that development of WPS would have been "impractical" without use of SAS LE.

An expert may not ground his or her opinion in sensibilities common to the average juror. See United States v. Perkins, 470 F.3d 150, 155-56 (4th Cir. 2006) ("[A]n expert witness must possess some specialized knowledge or skill or education that is not in the possession of the jurors."); Scott v. Sears, Roebuck & Co., 789 F.2d 1052, 1055 (4th Cir. 1986) ("Rule 702 makes inadmissible expert testimony as to a matter which obviously is within the common knowledge of the jurors, because such testimony, almost by definition, can be of no assistance."). Rather, the opinion must be a product of the expert's expertise. See Perkins, 470 F.3d at 155-56; Persinger v. Norfolk & W. Ry. Co., 920 F.2d 1185, 1188 (4th Cir. 1990). Thus, where a person with no special skill or experience can draw the same conclusion as the proffered expert after only brief exposure

9

to the relevant evidence, the expert's opinion must be excluded as unhelpful. See SMD Software, Inc. v. EMove, Inc., 945 F. Supp. 2d 628, 640 (E.D.N.C. 2013)

Storer's first opinion will be helpful to the jury. Defendant primarily argues that Storer's opinion merely summarizes already admissible evidence and presents it to the jury in a format susceptible to undue weight, given its expert source. The court disagrees.

Rule 702 does not grant an expert an unlimited license to testify in a manner that simply summarizes otherwise admissible evidence without some connection to the expert's proffered expertise. United States v. Johnson, 54 F.3d 1150, 1157 (4th Cir. 1995); *In re* C.R. Bard, Inc., 948 F. Supp. 2d 589, 560 (S.D. W. Va. 2013) ("Expert testimony which merely regurgitates factual information that is better presented directly to the jury rather than through the testimony of an expert witness is properly excluded."). Nevertheless, the rule specifically contemplates that an expert may be used to educate the jury, which ordinarily is unfamiliar with the subject matter of the expert's testimony. See Fed. R. Evid. 702, advisory committee notes (2000) ("Yet, it might also be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply the principles to the specific facts of the case."). Consistent with the rule's goal of "education," courts have recognized that when presented with complex or technical documentary evidence, it is permissible to allow the expert to summarize or characterize the evidence in order to educate the jury on the import of the evidence, in light of the expert's field of expertise. See Johnson, 54 F.3d at 1157 (allowing expert to summarize prior lay testimony through a demonstrative

10

exhibit in light of expertise); Bouygues Telecom, 472 F. Supp. 2d at 726 (allowing expert to summarize certain evidence, where the summary was presented through the lense of expertise).[4]

Under the circumstances of this case, Storer's opinion, admittedly derived in large part from defendant's internal communications and prior trial testimony, will be helpful to the trier of fact in understanding the technical nature of those documents. Although some of the documents from which Storer draws his conclusion are self explanatory, a large number of those documents were written "programmer to programmer," such that they are not readily understood by lay persons. In summarizing or characterizing these "programmer to programmer" documents for the jury, Storer will rely on his background knowledge of computer science to educate the jury and assist in their understanding of the case. See Fed. R. Evid. 702, advisory committee notes (2000); Johnson, 54 F.3d at 1157.

Although Storer's testimony aimed toward facilitating the jury's understanding of the evidence is admissible, such admissibility does not give plaintiff a "blank check" to inquire as to Storer's characterization of all the evidence he reviewed. When an expert summarizes evidence for the jury, the cornerstone of admissibility is the expert's reliance on his or her expertise in conveying that summary. See Johnson, 54 F.3d at 1157; Bouygues Telecom, 472 F. Supp. 2d at 726-27. Allowing Storer to offer testimony as to the non-technical facts or opinions contained in the various documents he reviewed would confuse the jury, or may cause them to give the evidence undue

---

[4] Other cases relevant to this issue include: United States v. Milkiewicz, 470 F.3d 390, 401 (1st Cir. 2006) (expert was allowed to summarize complex evidence to jury through use of demonstrative exhibit); Hale Cnty. A & M Transp., LLC v. City of Kan. City, 998 F. Supp. 2d 838, 845 (W.D. Mo. 2014) (allowing expert to summarize prior lay testimony in light of expertise); Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, 691 F. Supp. 2d 448, 461-62 (S.D.N.Y. 2010). But see In re Trasylol Prods. Liab. Litig., 709 F. Supp. 2d 1323, 1345-47 (S.D. Fla. 2010).

11

weight absent special procedural protections. See United States v. Garcia, 752 F.3d 382, 392 (4th Cir. 2014). Thus, to the extent plaintiff intends to use Storer as a vehicle to convey to the jury the substance of all documents on which he relied when forming his opinion, rather than only certain technical documents, plaintiff cannot do so absent appropriate procedural safeguards. When questioning Storer as an expert, plaintiff's counsel should be mindful to inquire only as to the technical meaning of certain documents or groups of documents, rather than asking for the expert's opinion of all the evidence "stripped of its technical gloss." Persinger, 920 F.2d at 1188.

With respect to Storer's second opinion, that development of WPS would have been impractical without use of SAS LE, defendant's motion also must be denied. It is doubtful defendant can mount a serious challenge to the helpfulness of this opinion, because its subject matter is technical in nature and outside the common knowledge of the average juror. As is discussed below, this opinion is grounded firmly in Storer's expertise and was reached applying reliable methodology. Accordingly, defendant's motion to exclude Storer's testimony as unhelpful is denied.

    3.    Methodology

        a.    Defendant's Motion Presentation

Before turning to the substance of defendant's challenges to Storer's methodology, the court takes this opportunity to address the manner of analysis defendant employed in mounting its attacks. Defendant attempts to shoehorn its challenges into the framework relevant to scientific analysis, outlined in Daubert v. Merrell Dow Pharmaceuticals, citing a lack of publication and peer review, among other things, as relevant concerns. Defendant's mechanical adherence to the factors outlined in Daubert results in awkward motion presentation. "[W]here an expert relies on his experience and

12

training and not a particular methodology to reach his conclusions, application of the [scientific analysis applied in] Daubert . . . is unwarranted." Freeman v. Case Corp., 118 F.3d 1011, 1016 n.6 (4th Cir. 1997) (alterations and internal quotations omitted); accord Talkington v. Atria Reclamelucifers Fabrieken BV, 152 F.3d 254, 265 (4th Cir. 1998). "Experiential expert testimony . . . does not rely on anything like a scientific method" and thus its admissibility is not tied necessarily to its scientific testability. Wilson, 484 F.3d at 274 (internal quotations omitted).

Where an expert's methodology is grounded in his experience, as Storer's is, a proper methodology analysis focuses on three areas: 1) how the expert's experience leads to the conclusion reached; 2) why that experience is a sufficient basis for the opinion; and 3) how that experience is reliably applied to the facts of the case. SMD Software, 945 F. Supp. 2d at 644 (quoting Fed. R. Evid. 702 advisory committee's note (2000)); Collins v. Cottrell Contracting Corp., 733 F. Supp. 2d 690, 702 (E.D.N.C. 2010). Accordingly, a motion to exclude proffered experiential testimony should aim to undermine one of these three considerations. In addition, a proper motion to exclude may demonstrate that an expert's experience is atypical of other experts in the relevant industry, thus undermining the rules's requirement that an expert's proposed testimony be based on facts or data upon which experts in the particular field would reasonably rely. See Fed. R. Evid. 703.

In any event, although defendant's briefing presents its argument in an awkward fashion, it is not so obtuse as to preclude proper analysis of defendant's motion. This is especially true in light of the court's own questioning of Storer at hearing and the arguments of counsel. With these considerations in mind, the court turns now to the merits of the remaining part of defendant's motion.

13

b.  "Integral" use of SAS LE

Relying on EEOC v. Freeman, 778 F.3d 463 (4th Cir. 2015), defendant first argues that Storer's opinion as to defendant's "integral" use of SAS LE in the creation of WPS is inadmissible, where Storer has not conducted an independent analysis of WPS but rather relies only on documentary evidence to support his conclusion. Defendant grounds its argument in the general principle that "experts [cannot] draw[] broad conclusions from incomplete data." Freeman, 778 F.3d 463, 468 (4th Cir. 2015) (Agee, J., concurring); see also Lilly v. Harris-Teeter Supermarkets, 720 F.2d 326, 337 (4th Cir. 1983) (criticizing expert for using limited statistical of data to draw sweeping conclusions); EEOC v. Am. Nat'l Bank, 652 F.2d 1176, 1195 (4th Cir. 1981) (holding expert evidence unreliable where it drew conclusions about seven-year period from only two relevant years). However, defendant's reliance on Freeman and other similar cases is misplaced.

Defendant's comparison of Storer's opinion to that offered by the proposed expert at issue in Freeman borders on specious. First, in Freeman the defendant's objection to the EEOC's expert was grounded in errors in the expert's statistical methodology. Freeman, 778 F.3d at 466-67 (majority opinion). In the instant matter, by contrast, because Storer relied on his experience the "proper" amount of data he could or should have reviewed is more nebulous and qualitative, not subject to reduction to a statistical rate of error.

Even assuming the principles in Freeman are applicable to the case at bar, defendant's argument still misses the mark. In Freeman, the EEOC's expert was presented with a universe of data, all of which were relevant to his methodology and could have impacted his overall conclusion, which he subsequently ignored in large part when developing his opinion. See id.; id. at 468-69 (Agee, J., concurring). Under the circumstances of this case, there is no indication that the entire

14

universe of evidence available was relevant to Storer's methodology, where he offers only a high level opinion based on his experience in software development.  Moreover, even if the complete universe of evidence could have impacted Storer's opinion, the court cannot substitute its judgment for that of the expert as to what is sufficient evidence to inform his experiential conclusion.  See Cooper, 259 F.3d at 202 (noting a court should only exclude expert testimony where the expert cannot provide a reasoned basis for his failure to consider additional evidence).  Rather, the court only can review holistically the data relied upon by the expert and determine whether it is so incomplete as to render his methodology unreliable.  See Freeman, 778 F.3d at 468-69; Lilly, 720 F.2d at 337.  Here, Storer has satisfied the court that his review of the evidence is sufficient, and thus that his methodology is reliable in light of the general nature of his opinion.

In essence, defendant contends Storer should have looked at a larger universe of data when drawing his conclusion.  In most cases, it is not the court's place to close the gate based on that ground; so too here.  In view of the nature of Storer's opinion, any failure to consider additional evidence or employ a different, more quantitative mode of analysis must be the subject of cross examination.

c. Development by Third Party Installation "Impractical"

Defendant also suggests Storer's opinion, that development of WPS would have been "impractical" without use of SAS LE, should be excluded as unreliable.  The court disagrees.

As part of his experience relevant to this case, Storer discussed a computer programming concept known as a "standard," published data describing the industry accepted output with respect to a type of file, such as an MPEG file which contains audio and video. Storer further discussed the integral nature of a program, known in the industry as a "reference coder," that allows a programmer

15

to compare in real time the output of his or her own program against that standard. Storer indicated that he previously had used a "reference coder" to compare output of his own program against a "standard." Storer then stated that the SAS system is not a "standard," and as such no reference coder exists, but that it is possible to use SAS LE or another SAS installation as if it is a reference coder, as defendant did here. He then opined that, in light of the heavy reliance on "reference coders" by programmers attempting to perfect a single output, it would have been impractical for defendant to develop WPS without reliance on a readily accessible copy of SAS LE, given the fact that defendant sought to create a unified input/output correspondence.

Storer's opinion seems wanting in certain aspects. For example, his opinion regarding the impracticality of relying on third parties fails to account for how much defendant actually used SAS LE in the course of WPS's development. However, in the context of the general nature of both Storer's qualifications and his opinion, considered as a whole, this omission is not material. Repeatedly at hearing Storer stated that his opinion was not intended to be quantitative, attempting to count the number of times defendant had relied on SAS LE to develop WPS. Although this opinion teeters dangerously close to being an assumption unsupported by the record, see Tyger Const., 29 F.3d at 142, in light of its general nature Storer's proffered opinion is the result of reliable application of his background to the facts of the case, where he grounds his opinion in the practical realities of software development and the typical developer's heavy reliance on a "reference coder" to achieve just a single output correspondence as compared to the numerous input/output correspondences defendant sought to achieve in the development of WPS. Accordingly, even though failure to consider defendant's actual reliance on SAS LE may be a glaring oversight, the

court concludes that it more properly bears on the weight of Storer's proposed opinion rather than its admissibility.

  4.  Rule 403

Defendant also argues that Storer's opinion contains certain statements that should be excluded under Federal Rule of Evidence 403. First, defendant contends that the court should exclude Storer's opinion inasmuch as he states that the SAS system is <u>not</u> an interpreter or compiler, because the court found that the SAS system was in its order on summary judgment. Next, defendant contends that the court should exclude Storer's opinion where he opines that WPS is a "clone" of the SAS system.

Federal Rule of Evidence 403 provides that the court may exclude otherwise relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence." Fed. R. Evid. 403. When making rulings under Rule 403, the district court is afforded wide discretion. See <u>Minter v. Wells Fargo Bank, N.A.</u>, 762 F.3d 339, 349-50 (4th Cir. 2014).

With regard to Storer's statements that the SAS system is not "an interpreter or compiler," as was found by this court in its order on summary judgment, but, rather is a <u>system</u> of interpreters and compilers, defendant's motion is allowed. The opinion is of scant, if any, probative value. Moreover, whether or not the SAS system more properly is characterized as a <u>system</u> of interpreters and compilers versus "<u>an</u> interpreter or compiler" is of no moment in this case and could confuse the jury.

17

Defendant's argument regarding Storer's statement that WPS is a "clone" of SAS LE or that defendant's development of WPS essentially was "copying" of SAS LE is without merit. Defendant contends Storer's testimony will be unnecessarily confusing. Even though defendant contends the use of the word "clone" or "copy" is contrary to this court's order on summary judgment, wherein the court concluded that the SAS language could be freely used, the court declines defendant's invitation to exclude Storer's opinion based on his repeated use of those terms. The terms "clone" or "copy" will be helpful to the jury in understanding Storer's opinion regarding the functionality overlap between WPS and SAS LE. Understanding the correspondence between the two programs is integral to understanding Storer's later-offered opinion that WPS could not have been developed but for defendant's use of SAS LE.[5]

**CONCLUSION**

Based on the forgoing defendant's motion to exclude Storer's testimony as irrelevant and unreliable under <u>Daubert</u> is DENIED. (DE 329). However, to the extent plaintiff will have Storer characterize otherwise admissible evidence, Storer must confine his opinion to those documents that require expertise to comprehend. Plaintiff is reminded that Storer may not offer expert testimony about the substance of all otherwise admissible documents he reviewed in forming his opinion absent procedural protections.

To the extent defendant's motion sounds as one to exclude certain portions of Storer's testimony under Rule 403, that motion is GRANTED in PART and DENIED in PART. In

---

[5] Defendant also suggests that use of the terms "clone" and "copy," as well as their derivatives, should be excluded under <u>Daubert</u>, where Storer uses technical terms without providing a meaning. Despite defendant's protestations, it is apparent that Storer's use of those terms is not grounded in any veiled technical meaning, unexplained in his report, deposition, or at hearing. The court concludes, rather, that Storer's use of the words "clone" and "copy" is colloquial in nature and will be helpful to a the jury in understanding the substance of his opinion.

18

particular, defendant's Rule 403 motion is granted as to Storer's opinion that the SAS system is a system of "interpreters and compilers" rather than "an interpreter or compiler," because Storer's characterization is of little probative value and may confuse the jury. However, defendant's motion is denied in remaining part.

SO ORDERED, this the 12th day of August, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge

19

Case 5:10-cv-00025-FL   Document 398   Filed 08/12/15   Page 19 of 19

particular, defendant's Rule 403 motion is granted as to Storer's opinion that the SAS system is a system of "interpreters and compilers" rather than "an interpreter or compiler," because Storer's characterization is of little probative value and may confuse the jury. However, defendant's motion is denied in remaining part.

SO ORDERED, this the 12th day of August, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge