IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO: 5:10-CV-25-FL

SAS INSTITUTE, INC.,

      Plaintiff,

v.                              MEMORANDUM OPINION AND ORDER

WORLD PROGRAMMING LIMITED,

      Defendant.


Pending before the court is plaintiff's motion for a permanent injunction. (Doc. No. 536). For the reasons expressed below, that motion is **DENIED**.

## I. Background

On September 22, 2015, the instant action went to trial on three claims asserted by plaintiff SAS Institute, Inc. ("SAS"): (1) damages for defendant World Programming Limited's ("WPL") breach of the SAS Learning Edition License Agreement ("SAS LE"),[1] (2) fraudulent inducement by WPL in obtaining the SAS Learning Edition license, and (3) unfair and deceptive trade practices as prohibited by North Carolina General Statute § 75-1.1, pursuant to plaintiff's fraudulent inducement claim. After a two-and-a-half week trial, the jury rendered its verdict, finding that:

---

[1] The court previously entered summary judgment in favor of plaintiff on its claim for breach of contract. (Doc. No. 296). As a result, the only issue for the jury on this claim was a calculation of the damages owed to plaintiff.

(1) defendant's breach of the SAS Learning Edition License
Agreement damaged plaintiff in the amount of $26,376,635; (2)
defendant fraudulently induced plaintiff to enter into the
license agreement and this fraudulent inducement damaged
plaintiff in the same amount; and (3) defendant's fraudulent
inducement was in or affecting commerce and the proximate cause
of plaintiff's injury, again resulting in damages in the same
amount. (Doc. No. 517). The jury further awarded plaintiff
$3,000,000 in punitive damages on its fraudulent inducement
claim. Id.

Plaintiff is now asking the court to enter a permanent
injunction "barring the continuing marketing, selling, or
licensing (including renewal or re-licensing) of . . . World
Programming System ("WPS") for use in the United States." (Doc.
No. 536). Defendant argues that entry of a permanent injunction
is inappropriate because "there is no basis in statute or equity
for" injunctive relief and, in any event, SAS cannot satisfy the
requirements for an injunction. (Doc. No. 552).

## II.  Legal Standard

"[A] plaintiff seeking a permanent injunction must satisfy a
four-factor test before a court may grant such relief.  A
plaintiff must demonstrate:  (1) that it has suffered an
irreparable injury; (2) that remedies available at law, such as
monetary damages, are inadequate to compensate for that injury;

(3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 156-57 (2010) (quoting eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006)). "An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." Id. at 165 (citing Weinberger v. Romero-Barcelo, 456 U.S. 305, 311-12 (1982)). "An injunction should issue only where the intervention of a court of equity 'is essential in order effectually to protect property rights against injuries otherwise irremediable.'" Weinberger, 456 U.S. at 312 (quoting Cavanaugh v. Looney, 248 U.S. 453, 456 (1919)).

The burden is on the party seeking injunctive relief to demonstrate its entitlement to an injunction. See Walgreen Co. v. Sara Creek Prop. Co., 966 F.2d 273, 275 (7th Cir. 1992) ("The plaintiff who seeks an injunction has the burden of persuasion – damages are the norm, so the plaintiff must show why his case is abnormal."); Safeway Inc. v. CESC Plaza Ltd. P'ship, 261 F. Supp. 2d 439, 466-67 (E.D. Va. 2003)("[Plaintiff] bears the burden of showing that it is entitled to the extraordinary remedy of injunctive relief and is not limited to damages, if any, caused by [defendant]'s . . . violation of the lease.")(internal citations and quotations omitted). The decision to grant or deny

3

permanent injunctive relief is reviewed on appeal for abuse of
discretion.  See Virginia Soc'y for Human Life, Inc. v. Federal
Election Comm'n, 263 F.3d 379, 392 (4th Cir. 2001).  "However,
even if Plaintiff demonstrates all four elements [to obtain a
permanent injunction], the Court may still deny" a motion for a
permanent injunction "in its `equitable discretion.'" Signature
Flight Support Corp. v. Landow Aviation Ltd. P'ship, 698 F. Supp.
2d 602, 624 (E.D. Va. 2010) (quoting Christopher Phelps & Assoc.,
LLC v. Galloway, 492 F.3d 532, 543 (4th Cir. 2007)).

## III.  **Discussion**

Having considered SAS's request for injunctive relief under
the traditional four-factor test, the court cannot conclude that
SAS is entitled to the injunction it seeks.  What SAS glosses
over in its papers, but is significant in the context of the
instant motion, is that the court found in favor of WPL on SAS's
claim for copyright infringement.  Therefore, there is no
infringement, continuing or otherwise, which could under the
right circumstances support the entry of an injunction.  For this
reason, most of the cases cited by plaintiff in support of its
motion for injunctive relief are simply inapposite because they
involve either patent, copyright, or trademark infringement
claims where (1) injunctive relief is specifically authorized by

4

statute,[2] and (2) the court found that without an injunction the illegal infringement would continue.  See, e.g., Capitol Records, LLC v. McEwan, No. 5:08-CV-00473-BR, 2009 WL 103611 (E.D.N.C. Jan. 13, 2009); see also Adalis Corp. v. Forbo Adhesives, LLC, No. 1:06CV270, 2007 WL 673764, *4 (M.D.N.C. Feb. 27, 2007) ("At most, Adalis has offered evidence that tends to show potential past injury.  Injury caused by past conduct does not justify the extraordinary remedy of a preliminary injunction, absent clear evidence of ongoing or imminent infringement.").

The propriety of an injunction in this case will now be considered under the rubric of the four-factor test set out above.

## A.    Irreparable Injury

According to SAS, although it was awarded damages at trial representing its loss of profits from certain customers who left SAS in favor of WPL, such damages do not "include damages for customers SAS loses to WPL post-trial.  That prospect of future

---

[2]    The Patent Act, 35 U.S.C. § 283, gives courts the power to "grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable."  Likewise, § 502 of the Copyright Act grant courts the ability to enter "temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a).  The Lanham Act permits a court to "grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office."  15 U.S.C. § 1116(a).

harm constitutes irreparable harm to SAS and counsels in favor of a permanent injunction." (Doc. No. 537 at p.3). SAS contends that such future harm includes loss of existing customers, loss of new customers, loss of goodwill, etc. SAS maintains that "[b]ut for WPL's using SAS software in violation of the SAS Learning Edition License Agreement, [WPL] would have no WPS software to sell." Id. at p.13-14.

WPL counters that the jury's verdict reflects future lost profits and that if the court were to grant a permanent injunction SAS would get the benefit of a double recovery. As to SAS's argument that the nature of the losses it sustained make calculating damages difficult and therefore supports the entry of an injunction, WPL maintains that any alleged difficulty is undermined by the fact that SAS asked for and received an award representing lost future profits.

SAS argues that it continues to suffer from WPL's conduct and "[t]hat prospect of future harm constitutes irreparable harm to SAS and counsels in favor of a permanent injunction."). (Doc. No. 537 at p.3). The cases cited by SAS on the issue of ongoing harm, however, are distinguishable from SAS in certain key respects. For example, in Capitol Records, Inc. v. McEwan, 2009 WL 103611, at *3 (E.D.N.C. Jan. 13, 2009), this court granted a permanent injunction to prohibit future infringement under the Copyright Act. In so doing, the court explicitly recognized

that, without the injunction, it was probable that future infringement would continue. However, in this case, there is no chance of a future breach of the licensing agreement or future fraud in the inducement because SAS LE is unusable as the licenses expired years ago. Future damages of SAS, if they occur, are attributable only to past breaches of SAS LE's license agreement. Such future damages were asked for by SAS under its theory of the case and supported by SAS's expert testimony.

In Complex Systems, Inc. v. ABN AMRO Bank, N.V., 2014 WL 1883474, *11 (S.D.N.Y. May 9, 2014), the court granted a permanent injunction to prohibit the ongoing breach of a software license agreement. However, in Complex Systems, the software was still available for use and, therefore, it was clear that plaintiff would continue to suffer ongoing harm not from the breaches of the past, but rather from the continuing breach of the software license agreement. Again, although SAS may continue to suffer damages from WPL's conduct, that conduct of WPL serving as the basis of the both the breach of contract and fraud claims is attributable solely to past breaches. The foregoing weighs against entry of a permanent injunction solely "to address completed wrongs." United Nat. Maint., Inc. v. San Diego Convention Ctr., Civil No. 07CV2172 AJB, 2012 WL 3861946, *5, 9 (S.D. Cal. Sept. 5, 2012)(declining to grant a permanent injunction where plaintiff did not demonstrate irreparable harm,

7

in part, "because the contracts have already expired and have not been renewed, an injunction could not prevent a future breach of the contracts.").

SAS also argues that it has suffered irreparable harm, supporting entry of a permanent injunction, because it is impossible to quantify the amount of damages it has suffered from WPL's conduct. According to SAS, lost profits from existing customers are difficult to calculate because SAS will have no way of knowing whether a cancellation or nonrenewal is attributable to WPL. SAS also contends that it is impossible to capture damages attributable to lost sales from potential new SAS customers and that those sorts of damages were not captured in SAS's damages analysis offered at trial.

Finally, SAS argues that a damages calculation cannot adequately capture its lost business relationships, loss of market share, lost goodwill and that is another type of irreparable harm suffered by SAS. According to SAS, the loss of a customer results in a greater loss than just the particular profit on the license that was not renewed or cancelled because, for example, SAS loses the ability to market other products to that customer.

WPL counters that SAS's claims in this regard are vague and unsupported by any evidence. WPL also contends that SAS has not met its burden to show that these types of losses – including

lost business relationships, loss of current or future market share, loss of goodwill or reputation, and the effects of direct competition – could not be compensated by money damages.

The court agrees with SAS that the aforementioned categories of loss are a type of irreparable harm which may support the entry of an injunction, but, in this case, the evidence to support such damages is lacking. See, e.g., Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship, 698 F. Supp.2d 602, 624 (E.D. Va. 2010) ("Typically, a party may show an irreparable injury by demonstrating a `possibility' that it will suffer a `permanent loss of customers to a competitor or the loss of goodwill.'") (quoting Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 22 F.3d 546, 552 (4th Cir. 1994)). However, "record evidence must establish these losses." Presidio Components, Inc. v. Am. Technical Ceramics Corp., No. 08-cv-335-IEG-NLS, 2013 WL 4068833, * (S.D. Cal. Aug. 12, 2013); see also Spacemax Int'l, LLC v. Core Health & Fitness, LLC, Civil Action No. 2:13-4015-CCC-JAD, 2013 WL 5817168, *2 (D.N.J. Oct. 28, 2013) ("However, the loss of customer goodwill is often calculable and compensable, and its mere pleading does not necessitate injunctive relief.").

The court agrees with WPL that SAS has not met its burden of demonstrating that it will suffer irreparable harm if an injunction is not granted. First, SAS asked for and was awarded

damages representing future lost sales. Therefore, granting the injunction that SAS requests would lead to a double recovery. Second, the fact that SAS asked for and received an award of future damages undermines its argument that damages are too difficult to calculate.

While SAS does submit some evidence on these claimed damages, its evidence on this point is largely speculative. For example, SAS contends:

- "[T]he fact that SAS will lose some of these additional customers <u>without knowing that its losses are attributable to WPL</u> further supports a finding of irreparable harm."

- "SAS will have no way of knowing in the normal course of its business whether a particular license agreement canceled or not renewed <u>is attributable to WPL</u>."

- "[I]n the absence of an injunction, SAS <u>is likely to suffer ongoing harm</u> from the sale of WPS. . . ."

- "Here, there are many reasons that SAS lost profits <u>may not be quantifiable</u> with reasonable certainty. . . ."

- "Indeed, <u>it's likely</u> that most sales of the WPS software displace a SAS sale to an existing or prospective customer."

- "SAS's injury is not fully compensable by damages because – even though <u>most WPS sales likely result in</u>

<u>lost profits to SAS</u> – the amount of those damages is difficult to calculate with reasonable certainty." The foregoing makes obvious the speculative nature of SAS's alleged losses. Furthermore, there is little specific evidence regarding loss of market share or loss of goodwill. For example, there is little to no evidence in the record concerning the market share of SAS vis a vis WPL. SAS's "market dominance does not alter the reality that [it] has not set forth sufficient proof to establish that its harm is irreparable." <u>MercExchange, Ltd. Liab. Co. v. eBay, Inc.</u>, 500 F. Supp. 2d 556, 570 (E.D. Va. 2007); <u>see also</u> <u>Praxair, Inc. v. ATMI, Inc.</u>, 479 F. Supp. 2d 440, 443-44 (D. Del. 2007) (finding that plaintiff was not entitled to permanent injunction where plaintiff argues defendant's "presence in the market will cause [plaintiff] to `likely lose additional market share, profits, and goodwill,' without further detail").

For all of the foregoing reasons, the court concludes that the first factor does not weigh in favor of an injunction.

**B.   Inadequate Remedy at Law**

1.   *Collectibility*

SAS contends that its damages award is inadequate because it may have trouble collecting it due to "WPL's lack of assets in the United States, coupled with its status as a `start-up business'". (Doc. No. 537 at p.14). In its reply brief, SAS also notes that the judgment in this case will likely not be

afforded full faith and credit in the U.K. courts.  SAS also
argues that its remedy at law is inadequate because it will be
forced to bring successive suits for monetary damages.

With respect to SAS's argument regarding WPL's financial
ability to pay the judgment, the court agrees with WPL that SAS
has not shown that WPL is or faces imminent insolvency such that
injunctive relief is proper.  <u>See</u> <u>Sterling Ornaments Pvt. Ltd. v.</u>
<u>Hazel Jewelry Corp.</u>, No.14-cv-8822(JSR), 2015 WL 3650182, *1
(S.D.N.Y. Jun. 10, 2015) ("Thus, to show irreparable harm, a
plaintiff seeking damages must prove either that the defendant
took steps to frustrate a future judgment or that the defendant
is or imminently will be insolvent.").  The majority of the cases
cited by SAS on this issue are simply not on point because, in
those cases, either: (1) the plaintiff was seeking a preliminary
injunction in order to preserve assets until a final judgment
could be rendered;[3] (2) the defendant had already filed for
bankruptcy;[4] and/or (3) the court was given far more detailed and

_____

[3]    <u>See</u> <u>Hoxworth v. Blinder, Robinson & Co.</u>, 903 F.2d 186, 206
(3d Cir. 1990) (affirming grant of preliminary injunction and
concluding that "the unsatisfiability of a money judgment can
constitute irreparable injury").  SAS incorrectly cites
<u>International Fidelity Ins. Co. v. Waterfront Group NC, LLC</u>, No.
3:11-cv-00116-W, 2011 WL 4715155, *4 (W.D.N.C. Oct. 6, 2011), as
a permanent injunction breach of contract case.  <u>See</u> SAS
Memorandum at p. 15.  <u>International Fidelity</u> was, in fact, a case
in which the plaintiff was seeking a preliminary injunction for
breach of a collateral security provision in a contract.

[4]    <u>See</u> <u>Aspen Tech., Inc. v. M3 Tech., Inc.</u>, Nos. 12-20388, 13-
20268, 569 F. App'x 259, 273 (5th Cir. May 29, 2014) (granting

meaningful information about the financial condition of the defendant.[5]

It is plaintiff's burden to persuade the court that WPL is without the means to pay the judgment in this case or that it will be uncollectible because of the U.K. courts and it has failed to satisfy its burden at this juncture.[6]  See <u>Ichiyasu v. Christie, Manson & Woods Int'l, Inc.</u>, 630 F. Supp. 340, 343 (N.D. Ill. 1986) (denying preliminary injunction where plaintiff "offer[ed] no proof that the traditional avenues of collecting a judgment against [defendant] – a judgment which has yet to be entered – are inadequate, or would fail to make [plaintiff] whole.  Moreover, [plaintiff]'s claim of irreparable harm fails

---

permanent injunction where plaintiff was unlikely to collect a judgment because defendant had initiated bankruptcy proceedings).

[5]   See <u>Castle Creek Tech. Partners, LLC v. Cellpoint, Inc.</u>, No. 02 Civ. 6662(GEL), 2002 WL 31958696, *4 (S.D.N.Y. Dec. 9, 2002) (granting preliminary injunction where plaintiff demonstrated that defendant, "if not currently insolvent, may become so in the near future" by relying on defendant's Annual Report (Form 10-K) and other declarations laying out specifics of defendant's financial position).

[6]   In support of its claim that any monetary judgment in this case would not be enforceable in the United Kingdom, SAS offered the Declaration of John Boswell, Vice President, Chief Legal Officer, and Secretary for SAS.  See Doc. No. 535.  WPL has moved to strike Mr. Boswell's Declaration as inadmissible under Fed. R. Evid. 408.  While the court does not decide the motion to strike herein, it has nevertheless declined to consider the one sentence in Mr. Boswell's declaration that goes to this issue. Significantly, the objectionable sentence, i.e., what WPL "thinks" is going to happen, is not especially helpful to the court as it is pure speculation and does not offer the sort of specificity that make it factor in the court's decision.

for lack of sufficient proof. The allegations of [defendant]'s impending insolvency are conclusory only, lacking any factual support.").

2. *Prospect of Successive Lawsuits*

SAS also argues that it has an inadequate remedy at law because it will be forced to bring successive lawsuits to recover damages. SAS is correct that, in certain circumstances, courts have found that the prospect of having to bring successive suits for monetary damages shows that remedies at law are inadequate therefore weighing in favor of injunctive relief. What SAS fails to mention is that all of the cases it cited were infringement or misappropriation cases wherein continuing infringement and/or misappropriation was possible. See Meineke Car Care Centers, LLC v. ASAR Inc., LLC, NO. 3:14-cv-129-RJC, 2014 WL 3952491, *4 (W.D.N.C. Aug. 13, 2014)[7] ("'Irreparable injury necessary for injunctive relief regularly follows from trademark infringement. Otherwise, the denial of an injunction forces the plaintiff to suffer continued infringement and to bring successive suits for monetary damages.'") (quoting Teaching Co. Ltd. P'ship v. Unapix Entm't, Inc., 87 F. Supp. 2d 567, 587 (E.D. Va. 2000) (emphasis added)); see also Mon Cheri Bridals, LLC v. Partnerships, No.

---

[7]    In Meineke, the court also granted permanent injunctive relief to enforce a covenant not to compete. 2014 WL 3952491, at *6.

14

3:15-CV-00021-FDW-DCK, 2015 WL 3509259, *6 (W.D.N.C. June 5, 2015) ("An award of money damages alone will not cure the injury to Plaintiff's reputation and goodwill that will result if Defendant's infringing and counterfeiting actions are allowed to continue. Moreover, without an injunction, Plaintiff <u>will continue to suffer infringement</u> and be forced to bring successive suits for money damages.")(emphasis added); <u>Bridgetree, Inc. V. Red F. Marketing, LLC</u>, No. 3:10-cv-00228-FDW-DSC, 2013 WL 443698, *22 (W.D.N.C. Feb. 5, 2013) (granting a permanent injunction for defendant's misappropriation of trade secrets where North Carolina General Statute § 66-154(a) provided that "actual . . . misappropriation of a trade secret . . . shall be permanently enjoined upon judgment finding misappropriation").

In this case, the breach of contract and fraud are complete and are incapable of repetition as discussed earlier. Therefore, any successive lawsuits filed by SAS against WPL would be for additional damages flowing from the already-litigated breach and fraud.[8] This is a distinction that makes a difference. The

---

[8] This assumes of course that any such lawsuits would not be barred. <u>See, e.g.</u>, <u>Bouchat v. Balt. Ravens Ltd. P'ship</u>, 619 F.3d 301, 316 (4th Cir. 2010) ("In <u>Bouchat II</u>, we held that Bouchat was precluded from bringing claims for damages against licensees that used the infringing logos . . . [because] Bouchat's suits against the licensees involved <u>the very same acts of infringement</u> at issue in his earlier suit against the licensors.") (emphasis in original); <u>Bouchat v. Bon-Ton Dept. Stores, Inc.</u>, 506 F.3d 315, 326 (4th Cir. 2007) ("The related doctrines of claim preclusion and issue preclusion relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and,

court concludes that the second factor weighs in favor of denial of the injunction.

## C.    Balance of Hardships

With respect to the balance of hardships, SAS contends that the court need not consider the hardship to WPL if the requested injunction is granted because any harm to WPL is a "self-inflicted harm" entitled to little weight in the analysis. (Doc. No. 537 at p. 17). According to SAS, an injunction will merely prevent WPL from doing something which the law already prohibits. See id.

WPL takes issue with SAS's argument in this regard because this court, by granting WPL's motion for summary judgment on the copyright infringement claim, has found WPS is not an infringing product. Therefore, there has been no determination by the court or the jury that it is illegal for WPL to sell WPS and SAS's arguments to the contrary are not borne out by the record. The court agrees that the jury's verdict does not alter the requirement that this court consider the balance of hardships between SAS and WPL. See Bianco v. Globus Med., Inc., Case No. 2:12-CV-00147, WCB, 2014 WL 1049067, *10 n.6 (E.D. Tex. Mar. 17,

_____

by providing inconsistent decisions, encourage reliance on adjudication.")(internal citations and quotations omitted); Dillahunt v. City of New Bern, No. 4:08-CV-56-FL, 2009 WL 497153, *5 (E.D.N.C. Feb. 26, 2009) ("In North Carolina, it is well settled that `all damages incurred as the result of a single wrong must be recovered in one lawsuit.'")(quoting Bocweg v. Anderson, 333 N.C. 486, 492 (1993)).

16

2014) ("To ignore the harm to the infringer because `it cannot be heard to complain' runs contrary to eBay's mandate to `consider[] the balance of hardships between the plaintiff and defendant.'")(quoting Hynix Semiconductor Inc. v. Rambus, Inc., 609 F. Supp. 2d 951, 970 (N.D. Cal. 2009)).

According to WPL, granting the requested injunction would likely be ruinous for WPL. Manning Decl. ¶¶ 4-5. Although SAS takes issue with much of Mr. Manning's declaration, see SAS's Reply in Support of Motion for Permanent Injunction (Doc. No. 559), it does not offer anything to contradict his assertion on this point. Given the significant negative financial impact on WPL's sales if the injunction is granted, the court finds that the balance of hardships weighs against granting injunctive relief. See Bianco, 2014 WL 1049067, at *9 (finding balance of hardships favored denial of request for permanent injunction where sale of products sought to be enjoined made up a "substantial portion" of defendant's business); Hynix, 609 F. Supp. 2d at 984-85 (concluding balance of harms weighed against granting injunction where "injunction would decimate [defendant's] business"); Pfizer, Inc. v. Astra Pharm. Products, Inc., No. 92 CIV.752 (KC), 1992 WL 685742, *3 (S.D.N.Y. Feb. 20, 1992) (finding balance of hardships weighed in favor of defendant where impact of injunction would be "ruinous").

**D.    Public Interest**

SAS maintains that the public interest is best served by granting a permanent injunction because, by doing so, the court can "maintain[] the sanctity of contract." (Doc. No. 537 at p.18 (quoting <u>JTH Tax, Inc. v. Berg</u>, 2015 WL 893353, at *7 (E.D. Va. Feb. 27, 2015)). WPL responds that the public interest factor weighs in its favor because entry of an injunction prohibiting the sale of WPS in the United States would harm innocent third parties who are already WPS customers. These WPS customers would be forced to switch to a different software to replace WPS which would cause a disruption in their operations. WPS resellers would also be negatively impacted.

To the extent the public interest factor bears on the grant of an injunction,[9] the court agrees with WPL that the public interest factor weighs against granting the proposed injunction. Indeed, the cases cited by SAS on this factor are almost exclusively cases in which infringement has been found and an injunction was needed to prevent further infringement. Furthermore, the damage to U.S. customers of WPS if an injunction is granted is not speculative. Such customers would be forced to

---

[9]    For example, in the injunction context, the public interest factor is especially significant when health and safety concerns are present. <u>See, e.g.</u>, <u>Cardsoft, Inc. v. Verifone Holdings, Inc.</u>, Case No. 2:08-CV-98-RSP, 2013 WL 5862762, *1 (E.D. Tex. Oct. 30, 2013) ("The public interest factor appears to be otherwise neutral, as the technology and products at issue do not implicate health or safety concerns.").

18

expend time and money in obtaining a replacement for WPS. In any event, numerous courts have refused to grant an injunction affecting an infringing product where third party suppliers and consumers would be harmed. See, e.g., Bianco v. Globus Med., Inc., Case No. 2:12-CV-00147, WCB, 2014 WL 1049067, *10 (E.D. Tex. Mar. 17, 2014) (noting that "[a]lthough hardships to customers and patients are not the focus of the balance of hardships inquiry, . . . the impact on customers and patients bears on the related factor of the impact that an injunction would have on the public interest" and that an injunction was not merited where, in part, defendant had ongoing contractual relationships with customers); VirnetX Inc. v. Apple Inc., 925 F. Supp.2d 816, 846-47 (E.D. Tex. 2013), rev'd in part on other grounds sub nom. VirnetX, Inc. v. Cisco Sys., Inc., 767 F.3d 1308 (Fed. Cir. 2014) (denying permanent injunction in part because "an injunction would not only harm Apple, but also its customers and other third parties"); Fractus, S.A. v. Samsung Elecs. Co., 876 F. Supp.2d 802, 854 (E.D. Tex. 2012) ("Fractus's requested injunction will severely hamper Samsung's cell phone business, but most importantly, it will significantly disrupt related third-party businesses such as Samsung's suppliers and customers. Additionally, enjoining Samsung would detrimentally affect the retail sellers of Samsung phones, as well as their customers. Though the public has a keen interest in maintaining a strong

patent system, Fractus has not identified a specific public interest that would be served by entry of its requested injunction."); cf. I4I Limited P'ship v. Microsoft Corp., 598 F.3d 831, 863 (Fed. Cir. 2010) ("[T]he touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes a workable balance between protecting the patentee's rights and protecting the pubic from the injunction's adverse effects. . . . In particular, the injunction's narrow scope substantially mitigates the negative effects on the public, practically and economically."); Cardsoft, Inc. v. Verifone Holdings, Inc., Case No. 2:08-CV-98-RSP, 2013 WL 5862762, *1 (E.D. Tex. Oct. 30, 2013) (finding the balance of hardships did not favor granting an injunction where, if an injunction were granted, "[d]efendants will be forced to switch customers to other non-infringing payment terminals until Defendants complete the implementation of their non-infringing alternatives. . . . The burden and cost associated with switching appear to be significant in comparison to value of the invention assigned by the jury.")

Furthermore, the court cannot find that the public interest will be served by entry of the injunction in order to preserve "the sanctity of contracts." See, e.g., Computer Generated Solutions Inc. v. Koral, No. 97 Civ. 6298 (MBM), 1998 WL 1085945, *2 (S.D.N.Y. Dec. 9, 1998) ("Plaintiff's claim that in the

20

absence of an injunction, others might be tempted to use its systems without paying for them is downright laughable. If that were the standard, every claim for breach of contract and the like would warrant injunctive relief, lest others be tempted to violate the contracts as well. The argument falls of its own weight."). Additionally, the sanctity of contracts is well served by the large damage award obtained by SAS in this case.

Based on the foregoing, the court finds the public interest factor weighs in WPL's favor.

### IV. Conclusion

Having considered SAS's request for injunctive relief under the Ebay factors, the court concludes that the four factors weigh against entry of an injunction herein.[10] Accordingly, for the reasons stated herein, plaintiff's motion for a permanent injunction is **DENIED**. The Clerk is directed to forward a copy of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED** on this 17th day of June, 2016.

ENTER:  David A. Faber

David A. Faber
Senior United States District Judge

---

[10]    The court also agrees with WPL that the injunction SAS seeks is overbroad for a number of reasons. See Lilly v. Sisk, No. Civ.A. 99-0023-C, 1999 WL 370060, *7 (W.D. Va. Apr. 9, 1999)("Defendants have implied that plaintiffs' true goal is to prevent their new company from entering the specialty trucking business in which plaintiffs have a well-established market position. However, the injunction will not prevent defendants from competing altogether, only from competing for the business of those who are plaintiffs' customers.").