IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CV-25-FL

| | | |
|---|---|---|
| SAS INSTITUTE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| WORLD PROGRAMMING LIMITED, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on defendant's motion for attorney's fees, made pursuant to 17 U.S.C. § 505. (DE 571). Plaintiff has responded in opposition and defendant has replied. The motion is ripe for ruling. For the reasons that follow, the court denies defendant's motion.

**BACKGROUND**

Plaintiff created and distributes certain software known as the "SAS System," which allows users to perform a variety of tasks related to data management and analysis, among other things. SAS System users purchase a SAS System "license," which allows them to use the software subject to certain restrictions. In addition, plaintiff developed and distributed a functionally limited version of the SAS System, known as the SAS Learning Edition. The Learning Edition is marketed as an educational tool, to assist users in learning to use the SAS System. As a condition of use, each Learning Edition purchaser must agree to the Learning Edition License Agreement, which restricts his or her use of the Learning Edition to "non-production purposes" only and prohibits "reverse engineering" of that software. Both versions interpret and compile a common set of inputs, known as the "SAS Language."

Defendant created and distributes competing software known as the "World Programming System" ("WPS"). To develop WPS, defendant employed the Learning Edition, which it purchased on several occasions from Amazon.com after being denied a license to the full SAS System by plaintiff. As a condition of those purchases, defendant agreed to the Learning Edition License Agreement, including its restrictions. Defendant wanted WPS to mimic the Learning Edition's output for a given input. To achieve that goal, defendant's employees repeatedly modified WPS's source code in an effort to achieve a one-to-one correspondence between WPS's and the Learning Edition's outputs, even when defendant's employees believed those outputs to be incorrect. The source code that produced that desired correspondence, a so-called "golden result," then was incorporated into a testing framework against which later versions of WPS were tested. Thus, even though defendant moved away from use of the Learning Edition over time, each version of WPS has been indirectly tested against it.

Plaintiff initially filed suit in the United Kingdom, where defendant is headquartered. As relevant here, plaintiff claimed defendant violated several copyrights it held in the SAS System, including that defendant violated its copyright in the SAS Language where WPS utilizes that language. That action ended unfavorably for plaintiff; in 2013, both the "High Court" (trial court) and the Court of Appeal of England and Wales ruled in favor of defendant on the basis of certain provisions of law unique to the European Union.

Meantime, on January 19, 2010, plaintiff filed suit here. Plaintiff asserted six causes of action: 1) copyright infringement of the SAS System, in violation of the Copyright Act, 17 U.S.C. § 101 et seq. (the "software claim"); 2) copyright infringement of certain SAS manuals, also in violation of the Copyright Act (the "manual claim"); 3) breach of the Learning Edition License

Agreement; 4) tortious interference with contract; 5) tortious interference with prospective economic advantage; and 6) violation of North Carolina's Unfair and Deceptive Practices Act ("UDPA"), N.C. Gen. Stat. § 75–1.1 et seq. Plaintiff also sought a permanent injunction. On August 14, 2013, plaintiff amended its complaint to add a fraud claim.

On April 14, 2014, plaintiff moved for summary judgment on claims for breach of the Learning Edition License Agreement and tortious interference with contract. (DE 211). Defendant cross-moved for summary judgment on all of plaintiff's claims. (DE 220). By order entered September 29, 2014, the court granted in part and denied in part each motion. SAS Inst., Inc. v. World Programming Ltd., 64 F. Supp. 3d 755 (E.D.N.C. 2014). The court granted summary judgment in plaintiff's favor as to its breach of Learning Edition License Agreement claim, at least on the issue of liability. The court granted summary judgment in defendant's favor as to plaintiff's software claim, as well as plaintiff's tortious interference with contract and tortious interference with prospective economic advantage claims. The court set for trial the following claims: 1) the manual claim; 2) fraud; 3) violation of the UDPA. In addition, the court set for trial plaintiff's breach of Learning Edition License Agreement claim on the issue of damages.

The case went to trial on September 22, 2015.[1] Prior to trial, on September 9, 2015, plaintiff dismissed with prejudice its manual claim. On October 9, 2015, following a three-week trial, the jury returned a verdict in plaintiff's favor on its fraud and UDPA claims. (DE 517). The jury awarded plaintiff $26,376,635.00 in compensatory damages on each of plaintiff's breach of Learning Edition License Agreement, fraud, and UDPA claims. The jury also awarded plaintiff punitive

---

[1] The Honorable David A. Faber, Senior United States District Judge for the Southern District of West Virginia, sitting by designation, tried this case.

damages on its fraud claim in the amount of $3,000,000.00. The clerk entered the court's judgment on the claims tried to the jury on October 16, 2015. (DE 528).

Following trial, the court undertook certain post-trial motions. On November 13, 2015, plaintiff filed a motion for permanent injunction. (DE 536). Same day, defendant filed a renewed motion for judgment as a matter of law or, in the alternative, for a new trial, pursuant to Federal Rules of Civil Procedure 50(b) and 59. (DE 542). By orders entered June 17, 2016, the court denied plaintiff's motion for permanent injunction and denied defendant's renewed motion for judgment as a matter of law or, in the alternative, for a new trial. See SAS Inst., Inc. v. World Programming Ltd., No. 5:10-CV-25-FL, 2016 WL 3475281 (E.D.N.C. June 17, 2016) (denying plaintiff's motion for permanent injunction) (Faber, J.); SAS Inst., Inc. v. World Programming Ltd., No. 5:10-CV-25-FL, 2016 WL 3435196 (E.D.N.C. June 17, 2016) (denying defendant's renewed motion for judgment as a matter of law or, in the alternative, for a new trial) (Faber, J.).

As now relevant, defendant filed the instant motion for attorney's fees on February 5, 2016. Defendant seeks its attorney's fees related to plaintiff's software claim under the Copyright Act, 17 U.S.C. § 505. Defendant seeks approximately $760,721.59 in attorney's fees. That amount includes $710,130.00 owed to the law firm Baker Hostetler and approximately $50,591.59 owed to U.K. law firm Speechly Bircham, for its work in the earlier U.K. litigation.

In support of its motion, defendant argues that it is entitled to fees as the prevailing party on plaintiff's software claim, where it achieved significant success on the merits of that claim and where plaintiff's software claim was brought either in bad faith or in an objectively unreasonable manner, since plaintiff did not abandon that claim after learning in the earlier-concluded U.K. litigation that the factual predicate upon which its software claim was based did not exist. Plaintiff

4

argues in response that defendant's motion should be denied as untimely. Plaintiff further argues that defendant was not "the" prevailing party; that attorney's fees are not warranted here; and that, even if attorney's fees are warranted, defendant's attorney's fee award should be reduced substantially because the amount claimed is unreasonable.

**COURT'S DISCUSSION**

    1.    Timeliness of Defendant's Motion

Plaintiff first argues that defendant's motion summarily should be denied as untimely. In support of its position, plaintiff directs the court to Federal Rule of Civil Procedure 54(d), which provides that motions for attorney's fees must "be filed no later than 14 days after the entry of judgment." Fed. R. Civ. P. 54(d)(2)(B)(I). Because the clerk entered judgment on the docket on October 16, 2015, plaintiff maintains the instant motion for attorney's fees, filed February 5, 2016, comes well out of time. Defendant, in response, contends that the instant motion was timely filed. In support of that position, defendant relies on the language of the judgment, which does not reference plaintiff's software claim.

Defendant's instant motion for attorney's fees was timely filed. The "judgment" referenced in Rule 54(d) is a "final judgment" from which an appeal would lie. See Fed. R. Civ. P. 54(a) & advisory committee note (1993) ("[Rule 54(d)(2)(B)] provides a deadline for motions for attorneys' fees–14 days after <u>final judgment</u> unless the court or a statute specifies some other time.") (emphasis added); Fed. R. App. P. 4(a)(1) (appeal must be taken "within 30 days after the entry of judgment"). Plaintiff's argument rests on the assumption that the court's October 16, 2015, judgment was "final" for purposes of appeal. However, that is not so.

Post-judgment motions that potentially could affect court's judgment "interrupt the judgment's finality," precluding appellate review of a case until after their disposition. Weyant v. Okst, 198 F.3d 311, 314–15 (2d Cir. 1999); accord Barghout v. Bureau of Kosher Meat & Food Control, No. 96-2366, 1998 WL 193106, at *2 (4th Cir. Apr. 23, 1998). A Rule 50(b) motion affects the finality of the judgment. See Weyant, 198 F.3d at 315 (citing Fed. R. Civ. P. 59, advisory committee notes (1995)). Because defendant timely filed its renewed motion for judgment as a matter of law or, in the alternative, for a new trial on November 13, 2015, 28 days after the clerk entered the court's judgment on the docket, that motion "interrupted the judgment's finality," which was not restored until June 17, 2016, when the court entered order denying the motion. See id. at 314–15.

After disposition of defendant's renewed motion for judgment as a matter of law or, in the alternative, for a new trial, the filing period for attorney's fees motions began anew. See, e.g., Miltimore Sales, Inc. v. Int'l Rectifier, Inc., 412 F.3d 685, 687–88 (6th Cir. 2005); Members First Fed. Credit Union v. Members First Credit Union, 244 F.3d 806, 806–07 (11th Cir. 2001); see also, e.g., Roque-Rodriguez v. Lema Moya, 926 F.2d 103, 106 (1st Cir. 1991); Caperton v. Beatrice Pocahontas Coal Co., 585 F.2d 683, 688 n.10 (4th Cir. 1978). Thus, defendant's motion for attorney's fee, filed February 5, 2016, came before Rule 54(d)'s 14-day filing period elapsed on July 1, 2016.

2.  Merits of Defendant's Motion

In any civil action brought under the Copyright Act, "the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof." 17 U.S.C. § 505. "Costs" generally includes the prevailing party's reasonable attorney's fees. Id.

6

Awarding attorney's fees under the Copyright Act is a three-step procedure. See, e.g., Diamond Star Bldg. Corp. v. Freed, 30 F.3d 503, 505–07 (4th Cir. 1994); Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 & n.28 (4th Cir. 1978). First, the court determines whether the movant is the "prevailing party." Diamond Star, 30 F.3d at 505. Second, the court asks whether it should exercise its "equitable discretion" to award attorney's fees on the facts of the case. See Kirtsaeng v. John Wiley & Sons, Inc., 579 U.S. __, 136 S. Ct. 1979, 1985 (2016); Fogerty v. Fantasy, Inc., 510 U.S. 517, 533–34 (1994). Third, and finally, the court asks whether the attorney's fees claimed by the movant are "reasonable," using a 12-factor test. See Barber, 577 F.2d at 226 & n.28.

Relevant to the instant motion for attorney's fees is the second step. The court's "equitable discretion" is governed by four factors: 1) the motivation of the parties; 2) the "objective reasonableness" of the legal and factual positions advanced; 3) the need in particular circumstances to advance considerations of compensation and deterrence; and 4) any other relevant factor presented. Fogerty, 510 U.S. at 534 & n.19; Diamond Star, 30 F.3d at 505–06. The open-ended fourth factor may be any consideration germane to the case, so long as it is "faithful to the purposes of the Copyright Act." Lieb v. Topstone Indus., Inc., 788 F.2d 151, 156 (3d Cir. 1986).

Defendant argues that it is entitled to attorney's fees where plaintiff took an objectively unreasonable position on its software claim. Assuming that to be true, the court declines to exercise its "equitable discretion" and award defendant attorney's fees on the basis of other factors and the circumstances of this case. See Kirtsaeng, 136 S. Ct. at 1988 ("[O]bjective reasonableness can be only an important factor in assessing fee applications–not the controlling one.").

In this case, the first and fourth factors weigh heavily against an award of attorney's fees. On the open-ended fourth factor, defendant's fraudulent conduct outweighs the objective

7

unreasonableness of plaintiff's litigation position. The court may base its award of attorney's fees under the Copyright Act on any issue related to the copyright claim. See InvesSys, Inc. v. McGraw-Hill Cos., 369 F.3d 16, 19–22 (1st Cir. 2004). Here, the fraudulent means by which defendant obtained the Learning Edition is an antecedent to plaintiff's software claim. The jury found that defendant obtained the Learning Edition by making false, intentionally deceptive statements. See Myers & Chapman, Inc. v. Thomas G. Evans, Inc., 323 N.C. 559, 568 (1988) (defining "fraud"). The jury's damages award implies that defendant could not have created WPS, including any portion of WPS that uses SAS Language inputs, without use of the fraudulently obtained Learning Edition.

On the first factor, although plaintiff's litigation position was objectively unreasonable, defendant has not shown that it was subjectively so. In other words, defendant has produced no evidence to show that plaintiff pursued its copyright claim in bad faith. Without showing that plaintiff acted in bad faith, rather than in an objectively unreasonable manner, the court declines to reward defendant's fraud with attorney's fees.

In sum, without committing fraud defendant would not have been in the position to undertake the conduct that served as the basis of plaintiff's software claim. Accordingly, the court declines to award attorney's fees.

## CONCLUSION

Based on the foregoing, the court DENIES defendant's motion for attorney's fees. (DE 571).

SO ORDERED, this the 15th day of July, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge

8