IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CV-25-FL

| | | |
|---|---|---|
| SAS INSTITUTE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| WORLD PROGRAMMING LIMITED, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on renewed motion of plaintiff, judgment creditor herein, to compel responses to post-judgment interrogatories and request for production of documents (DE 722).[1] The judgment debtor defendant responded in opposition, and, upon leave of court, plaintiff replied. The parties thereafter filed additional documentation pertaining to the motion. In this posture, the issues raised are ripe for ruling. For the following reasons, the court grants in part and denies in part plaintiff's motion.

### BACKGROUND

On July 15, 2016, the court entered judgment in this matter awarding plaintiff, in pertinent, part, total damages of $79,129,905.00, comprising compensatory damages based upon breach of contract, fraudulent inducement to contract, and the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), as well as trebled damages based upon the UDTPA.

---

[1] Also pending are plaintiff's motion to alter judgment (DE 730) and defendant's motion to seal (DE 740), which will be addressed by separate order.

Plaintiff initially filed on October 31, 2016, a motion to compel responses to post-judgment interrogatories and requests for production of documents, which motion the court denied without prejudice pending the outcome of appeal in this matter. On October 24, 2017, the court of appeals affirmed this court's July 15, 2016 judgment in pertinent part. See SAS Inst., Inc. v. World Programming Ltd., 874 F.3d 370, 375 (4th Cir. 2017). On December 8, 2017, the court entered an amended judgment, affirming the court's prior judgment in pertinent part, in accordance with the mandate of the court of appeals.

Plaintiff filed the instant renewed motion on December 11, 2017, seeking an order compelling defendant to respond fully to plaintiff's "First Post-Judgment Interrogatories," and "First Post-Judgment Request for Production of Documents," served July 11, 2016, which are attached to plaintiff's memorandum . (See DE 722-2; 722-3). By way of summary, these discovery requests in aid to judgment collection seek information regarding defendant's financial interests, accounts, properties, assets, customers, transactions, and liabilities, without geographical limitation, as described in further detail in the analysis herein. Defendant's responses to these discovery requests, also attached to plaintiff's memorandum, include an objection to all requests to the extent they seek information regarding assets located outside of the United States. (See DE 722-4 at 2; DE 722-5 at 2). Defendant responded to some of plaintiff's requests relating to assets inside the United States, but also asserted additional objections based upon issues of confidentiality, burden, overbreadth, and irrelevance.

In opposition to plaintiff's motion to compel, defendant argues that the court should deny plaintiff's motion to the extent it relates to assets located outside the United States, and that its other objections are valid. Defendant suggests that the court should grant relief consistent with a prior

proposal to place in a "lockbox" defendant's ongoing United States revenue. Defendant relies upon a declaration of counsel Wayne F. Dennison; declaration of defendant's company director, Oliver Robinson; and defendant's responses to prior discovery requests during pendency of the lawsuit.

In reply, plaintiff relies upon correspondence regarding the "lockbox" proposal, as well as additional documentation regarding corporate transactions involving defendant in the United Kingdom, further supplemented in filing made February 6, 2018. (See DE 729; 736). Plaintiff requested expedited consideration of the motion on February 20, 2018.[2] Defendant filed on February 28, 2018, a notice and declaration of United Kingdom counsel attaching court documents from plaintiff's execution proceedings in the United Kingdom. (See DE 746; 747).

## COURT'S DISCUSSION

Federal Rule of Civil Procedure 69 provides that "[i]n aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person – including the judgment debtor – as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2). "The rules governing discovery in postjudgment execution proceedings are quite permissive." Republic of Argentina v. NML Capital, Ltd., 134 S. Ct. 2250, 2254 (2014). Under the federal rules,[3] "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevance in the context of discovery is "construed broadly to encompass any matter that bears on,

---

[2] By order signed February 21, 2018, the court directed payment of bond and additional funds deposited in escrow with the court to plaintiff.

[3] Plaintiff does not seek to compel discovery through North Carolina procedures. Accordingly, the court analyzes plaintiff's motion in accordance with the federal rules of procedure.

3

or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).

Although the Fourth Circuit has not opined on the scope of postjudgment discovery, district courts, including those within this circuit, have recognized a "presumption . . . in favor of full discovery of any matters arguably related to the creditor's efforts to trace the debtor's assets and otherwise to enforce its judgment." E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc., 286 F.R.D. 288, 291 (E.D. Va. 2012). "It is generally true that the judgment creditor must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor." Id. at 291; Silicon Knights, Inc. v. Epic Games, Inc., 917 F. Supp. 2d 503, 534 (E.D.N.C. 2012) (compelling discovery of "[i]nformation and documents pertaining to [defendant's] prejudgment assets and finances," as being "relevant to determining whether [defendant] has, in preparation for a possible judgment, secreted, hidden, wasted, or otherwise improperly disposed of assets"); cf. Republic of Argentina, 134 S.Ct. at 2254 (noting postjudgment discovery may be expected to encompass "investigation of any person shown to have any light to shed on the subject of the judgment debtor's assets or their whereabouts") (quotations omitted).

Here, plaintiff contends that defendant improperly has limited its responses or raised inadequate objections in several respects, which the court will address in turn below.

A.      Extraterritorial Discovery

Defendant limits several responses to information about assets or transactions in the United States, and it objects to discovery of information about assets or transactions outside of the United States. In particular, defendant limits its responses to interrogatories 3-10, 15, 19-21, and document requests 2-3, 11-17, 19, 21, 26-27, to the United States where those discovery requests otherwise

4

are not so limited geographically. Defendant also asserts a blanket objection to each interrogatory and document request "to the extent that it seeks information regarding assets located outside of the United States and is therefore not relevant to executing the judgment in the United States." (DE 722-4 at 1-2; 722-5 at 1-2).

Plaintiff contends in its motion that defendant should be compelled to supplement its responses without such territorial limitation, to the full extent of the scope of the questions posed. The court agrees with plaintiff. The federal rules and applicable caselaw do not provide grounds for limiting postjudgment discovery to a defendant's assets or transactions in the United States, to the exclusion of any and all other locations in the world. Indeed such a limitation is contrary to the purpose of postjudgment discovery to identify the whereabouts of a defendants assets, to trace their movement, and to discover hidden or concealed assets. See Republic of Argentina, 134 S.Ct. at 2254; EM Ltd. v. Republic of Argentina, 695 F.3d 201, 208 (2d Cir. 2012); E.I. DuPont de Nemours & Co., 286 F.R.D. at 291. Defendant has not identified, and this court has not found, any case where a court has required postjudgment discovery to be limited the United States, where, as here, a defendant has most of its assets abroad. Indeed courts that have addressed the issue consistently have determined to the contrary. See, e.g., id.; First City, Texas Houston, N.A. v. Rafidain Bank, 281 F.3d 48, 54 (2d Cir. 2002); Motorola Credit Corp. v. Uzan, 293 F.R.D. 595, 598 (S.D.N.Y. 2013).

Defendant suggests that the propriety of limiting postjudgment discovery to the United States is a question open for debate, given that the Supreme Court expressly declined to address the issue in Republic of Argentina. Contrary to defendant's suggestion, however, Republic of Argentina does not leave much room for debate. There, the Supreme Court stated: "We . . . assume without

deciding that, <u>as the Government conceded at argument, and as the Second Circuit concluded below</u>, in a run-of-the-mill execution proceeding the district court would have been within its discretion to order the discovery from third-party banks about the judgment debtor's assets located outside the United States." 134 S.Ct. at 2255 (quotations omitted; emphasis added). The court then proceeded to decide the "single, narrow question before [the court] whether the Foreign Sovereign Immunities Act specifies a different rule when the judgment debtor is a foreign state," holding that it did not. <u>Id.</u> at 2255, 2258. In light of the Supreme Court's assumption, the government's concession, and the Second Circuit's holding in <u>Republic of Argentina</u>, coupled with the breadth of discovery authorized by the rules, the court declines to limit postjustment discovery to the United States, as a matter of law.

Defendant argues <u>Morrison v. Nat'l Australia Bank Ltd.</u>, 561 U.S. 247, 255 (2010), suggests a different result because it expressed the principle that "legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." <u>Morrison</u>, however, is inapposite for several reasons. First, if <u>Morrison</u> controlled the instant issue of scope of postjudgment discovery under Rule 69, then there would have been no need for the Second Circuit and Supreme Court to consider the issue in <u>Republic of Argentina</u>. Second, the rule in <u>Morrison</u> is directed to "legislation of Congress," not federal rules of procedure. 561 U.S. at 255. Third, the question presented concerned whether a federal statute, particularly §10(b) of the Securities Exchange Act of 1934, applied to "misconduct in connection with securities traded on foreign exchanges"; it did not address the geographical scope of discovery applicable to litigants already subject to a judgment in federal court. 561 U.S. at 251. Accordingly, <u>Morrison</u> is not determinative of the issues raised by the instant motion.

6

Defendant suggests in its objection that this is not a "run-of-the-mill execution proceeding," in part because execution of the judgment in the United Kingdom will be challenging. The fact that plaintiff ultimately may not be able to execute all or part of the judgment in the United Kingdom, however, does not provide a basis for foreclosing discovery on information about the location of defendant's assets in the United Kingdom, or elsewhere in the world. The Supreme Court rejected a similar argument in Republic of Argentina:

> [Defendant] maintains that, if a judgment creditor could not ultimately execute a judgment against certain property, then it has no business pursuing discovery of information pertaining to that property. But the reason for these subpoenas is that [plaintiff] does not yet know what property [Defendant] has and where it is, let alone whether it is executable under the relevant jurisdiction's law.

134 S.Ct. at 2257 (emphasis in original). Further, it noted:

> The dissent . . . assert[s] that, unless a judgment creditor proves up front that all of the information it seeks is relevant to execution under the laws of all foreign jurisdictions, discovery of information concerning extraterritorial assets is limited to that which the [Foreign Sovereign Immunities] Act makes relevant to execution in the United States. We can find no basis in the Act or the rules for that position.

Id. at 2258 n. 4 (emphasis added). In sum, plaintiff should be entitled to discover where and in what amounts defendant has assets outside of the United States to enable it to make, for itself, fully informed decisions about pursuing or continuing execution proceedings abroad. See id.; see also Charles A. Wright & Arthur R. Miller, et al., Discovery in Aid of Execution, 12 Fed. Prac. & Proc. Civ. § 3014 (2d ed.) ("The judgment creditor is allowed discovery to find out about assets on which execution can issue or about assets that have been fraudulently transferred or are otherwise beyond the reach of execution.") (emphasis added).

Defendant also suggests that this court should decline in its discretion to compel discovery in the United Kingdom, in the interest of comity owed to the prior United Kingdom judgment in

7

favor of defendant, and as a matter of deference to ongoing execution proceedings in the United Kingdom. This argument misses the mark on both fronts. First, the court of appeals in its decision affirming the judgment of this court put to rest the notion that this court's judgment is unenforceable due to comity owed to the prior United Kingdom judgment. See SAS Inst., Inc., 874 F.3d at 379–80. Although defendant criticizes the reasoning of the court of appeals, its response to the instant motion is not the proper vehicle for advancing such criticism.

Second, the fact that execution proceedings are ongoing in the United Kingdom is not determinative to whether plaintiff should be entitled to postjudgment discovery in the instant matter in the United Kingdom or elsewhere in the world. As noted previously, the availability and course of postjudgment discovery under the federal rules is a separate question from the availability and scope of execution relief in any given country. See Republic of Argentina, 134 S.Ct. at 2257. It is not this court's role to decide what extent of discoverable information will be useful in the United Kingdom execution proceedings, but only whether the information sought "could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc., 437 U.S. at 351. Discovery limited only to the United States does not comport with this broad standard of relevance.

Accordingly, plaintiff's motion to compel is granted in this part, to the extent it seeks to remove the limitation to the United States in defendant's responses. Defendant is DIRECTED to respond to plaintiff's instant interrogatories and document requests without limiting its responses to the United States. The court considers next the propriety of additional limitations asserted in its responses and objections.

B.  Time frame

In its responses to certain discovery requests, defendant limits the time frame of documents or information provided, and it objects to discovery for the full time frame of documents or information requested. For example, plaintiff seeks in its request for production of documents the following:

<u>No. 2</u>:

All invoices for WPL software or services from January 1, 2015 to present. . . .

<u>No. 3</u>:

All license agreements or other contracts or agreements for WPL software or services from January 1, 2015 to present . . . .

<u>No. 4</u>:

Documents sufficient to show when and from whom (including addresses and telephone numbers) software license fees and service fees will be paid to WPL . . . .

(DE 722-3 at 5) In addition, for each request, plaintiff "specifically requests that WPL supplement its response to [the] request every 30 days." (<u>Id.</u>).

Defendant limits its responses to these requests to the date of production. For example, defendant responds to request No. 2., in pertinent part, as follows:

WPL will produce any invoices addressed to customers at an address in the United States <u>that are owed to WPL as of the date of production</u>. Going forward, WPL will supplement this information <u>in a timely manner</u>, by providing any new invoices addressed to customers at an address in the United States.

(DE 722-5 at 4) (emphasis added). Defendant objects to the full time frame requested because it is "overbroad, unduly burdensome, and includes previously-paid invoices that have no relevance to the execution of [the] judgment." (<u>Id.</u>). Finally, it contends the request to supplement every thirty

9

days is unduly burdensome and not proportional to the needs of execution of the judgment. (Id.; see also Responses to Requests for Production 3, 4, 18; Interrogatories 4, 5 (similarly limited)).

Defendant's objection to the full time frame set forth in these discovery requests is unfounded. Transactional documents dated from January 1, 2015, to present are "arguably related to the creditor's efforts to trace the debtor's assets." E.I. DuPont de Nemours & Co., 286 F.R.D. at 291. "Information and documents pertaining to [defendant's] prejudgment assets and finances" are "relevant to determining whether [defendant] has, in preparation for a possible judgment, secreted, hidden, wasted, or otherwise improperly disposed of assets," as well as the present whereabouts of such assets. Silicon Knights, Inc., 917 F. Supp. 2d at 534.

Defendant's general objection that the requests are unduly burdensome and out of proportion to the needs of the case is unavailing given the size of the judgment and the limited recovery by plaintiff to date of funds satisfying the judgment. Defendant also suggests that the discovery sought is duplicative of discovery already produced during the course of the litigation. However, the fact that the discovery sought overlaps with prior productions underscores its relevance. Further, Defendant need not reproduce documents already produced in prior discovery, but may refer by bates number to its prior discovery responses if they are responsive to the instant post-judgment discovery requests.

For the same reasons, the court finds that a 30-day ongoing supplementation requirement is reasonable. Federal Rule of Civil Procedure 26(e) requires supplementation "as ordered by the court" or "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Here, where

defendant continues to receive, and expects to receive, revenue from various sources and in various locations, plaintiff must be kept apprised of updated information to aid in its execution efforts.

Defendant appears to suggest, as an alternative to ongoing discovery responses about its current and expected revenues, that it suffices to arrange for "all amounts otherwise payable to it by WPL's U.S. licensees to instead be payable to SAS Institute under a lockbox or similar arrangement," "until the judgment is satisfied in full." (Def's Resp. (DE 725) at 1). This suggestion is unavailing, however, because the issue for decision before the court is the scope of discovery to which defendant is entitled under Rule 69, not the source of funds from which plaintiff will be able to satisfy its judgment. A "lockbox" arrangement is not a discovery mechanism, and it does nothing to address plaintiff's entitlement to discovery in aid of execution.

Defendant also suggests that anything beyond a "lockbox" arrangement will amount to granting plaintiff the permanent injunctive relief that the courts have already considered and denied. This suggestion again conflates the post-judgment discovery issue with other aspects of the case. Plaintiff is entitled to post-judgment discovery to the full extent permitted under the rules, and to use such discovery in aid of execution of the judgment. See Fed. R. Civ. P. 69(a). Allowing such discovery does not necessarily dictate how, where, or when plaintiff will chose to execute its judgment, only that it is provided with full information "in aid of" the execution process. Id.

In sum, defendant's objections to the time frame of plaintiff's discovery requests are overruled. Defendant is DIRECTED to respond to plaintiff's discovery requests to the full time frame provided in each request.

11

C.     Definition of "WPL"

For purposes of its post-judgment document production requests, plaintiff defines "WPL" to mean defendant "and any other companies under which it does business including without limitation any of those companies' representatives, heirs, assigns, attorneys, officers, directors, employees, subsidiaries, parents, shareholders, members, partners, partnerships, predecessors and successors." (DE 722-3 at 3). For its post-judgment interrogatories, plaintiff similarly defines "WPL" to mean defendant's "representatives, heirs, assigns, attorneys, officers, directors, employees, subsidiaries, parents, shareholders, members, partners, partnerships, predecessors and successors." (DE 722-2 at 1).

Defendant, by contrast, limits its definition of WPL for purposes of its responses to mean only defendant "and any parent and subsidiary companies of WPL." (DE 722-5 at 1; 722-4 at 1). Defendant explains its objection to the scope of definition of WPL, as follows:

> One example that pervades much of [plaintiff's] requests is the inclusion of WPL's employees and attorneys in its definition of WPL. Reading that definition into the request, [plaintiff] then demands detailed descriptions of the business relationships, property and finances of 'WPL'. There is no justification for [plaintiff] to pry into the lives and property of every one of WPL's employees, its attorneys and other third parties who will not and cannot ever be compelled to pay a judgment on WPL's behalf.

(Def's Mem. (DE 725) at 5-6). In reply, plaintiff provides documentation of substantial corporate transactions and activities by entities affiliated with WPL, including involvement in such activity by individual WPL officers and directors. (See, e.g., Millen Decl. (DE 729-1) ¶¶ 6-9, Exs. 2 & 2A (DE 729-3, -4)).

The proper scope for the definition of WPL for purposes of the instant requests lies between the two extremes proffered by the parties. On the one hand, as defendant notes, there is no

justification for plaintiff "to pry into the lives and property of every one of WPL's employees, its attorneys and other third parties." (Def's Mem. (DE 725) at 5-6). A literal reading of plaintiff's proposed definition of WPL is too broad. On the other hand, the concerns raised by defendant do not justify limiting the scope of discovery responses only to defendant and any parent and subsidiary companies. In addition, the scope of discovery is not properly limited to only those individuals or entities who can be compelled to satisfy the judgment; rather, even individuals or entities who cannot be compelled to satisfy the judgment may still have discoverable information concerning defendant's movement and transfer of assets, as well as hidden or concealed assets. See Republic of Argentina, 134 S.Ct. at 2254; EM Ltd., 695 F.3d at 208; E.I. DuPont de Nemours & Co., 286 F.R.D. at 291.

Post-judgment discovery properly involves inquiry into "common relationships between a party and its related non-party entity, the ownership of the non-party, the overlap of directors, officers, and employees, and the financial relationship between the entities." E.I. DuPont de Nemours & Co., 286 F.R.D. at 292. Thus, plaintiff is entitled to discovery regarding not just parent and subsidiary companies of defendant, but any entities with corporate affiliation to defendant, their financial relationships, and the corporate activities of common directors, officers, and employees. At a minimum, this includes documents and information regarding the financial relationships and transactions of the affiliated entities referenced in plaintiff's reply brief (DE 734 at 4), as well as any other entities similarly affiliated with defendant. As thus described, the scope of discoverable information does not go so far as to allow plaintiff "to pry into the lives of every one of [defendant's] employees, attorneys, and third parties," (DE 725 at 6), but it also does not exclude affiliated corporate entities and their directors and officers. Defendant is DIRECTED to utilize an

13

expanded definition of "WPL" for purposes of its discovery responses taking into account the foregoing.

The court at this juncture does not undertake an exact redrafting of the definition of "WPL" for purposes of the discovery requests, recognizing that defendant is, in the first instance, in the best position to reasonably tailor its production to the foregoing directives. Nevertheless, the court grants in part and denies in part plaintiff's motion to compel in this respect without prejudice to revisiting issues of the scope in definition of "WPL" raised after a further round of discovery responses is completed, in the event of continuing dispute concerning this issue of scope.

In so holding, the court recognizes defendant's position that plaintiff "already repeatedly and unapologetically mishandled confidential materials in this case and been sanctioned by the Court for those breaches." (Def's Mem. (DE 725) at 6). Even accepting defendant's characterization of the record – which characterization is disputed by plaintiff – such past conduct does not provide a basis in this instance for limiting the scope of post-judgment discovery to the extent defendant has asserted in its discovery responses. Plaintiff remains obligated to the protective order (DE 106) in post-judgment discovery, and plaintiff can be subjected to a wide range of sanction for violations thereof, in the event a need for additional sanctions arises. If defendant believes there is a need for further amendment to the protective order governing the instant post-judgment discovery, defendant may confer with plaintiff for purposes of such amendment for presentation to the court.

In sum, the court grants in part plaintiff's motion to compel by requiring an expansion of the definition of "WPL" beyond that utilized by defendant in its prior discovery responses; the court denies in part plaintiff's motion to compel to the extent it does not mandate compliance with full definition of "WPL" set forth in plaintiff's discovery requests.

D.   Additional limitations and objections

Defendant sets forth in its discovery responses additional limitations and objections to plaintiff's discovery requests, which are not discussed specifically in its memorandum in opposition to plaintiff's motion to compel. Rather, defendant contends generally that "SAS Institute's interrogatories and requests for production constitute nothing but an unacceptable fishing expedition for irrelevant or cumulative information." (Def's Resp. (DE 725) at 8). Given the "quite permissive" nature of post-judgment discovery rules, and the presumption in favor of "full discovery" therein, Republic of Argentina, 134 S.Ct. at 2254; E.I. DuPont de Nemours & Co., 286 F.R.D. at 291, the court rejects defendant's remaining generalized arguments in opposition to the full scope of discovery requested by plaintiff in its post-judgment interrogatories and document requests. Accordingly, in all remaining respects not specifically addressed herein, plaintiff's motion to compel is granted.

**CONCLUSION**

Based on the foregoing, plaintiff's motion to compel is GRANTED IN PART and DENIED IN PART as set forth herein. Defendant is DIRECTED to supplement its responses to plaintiff's post-judgment interrogatories and requests for production of documents, on or before **April 2, 2018**, in accordance with the foregoing.

SO ORDERED, this the 2nd day of March, 2018.

LOUISE W. FLANAGAN
United States District Judge