IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CV-25-FL

| | |
|---|---|
| SAS INSTITUTE, INC., ) | |
| ) | |
| Plaintiff/Judgment Creditor, ) | |
| ) | |
| v. ) | MEMORANDUM OPINION AND ORDER |
| ) | |
| WORLD PROGRAMMING LIMITED, ) | |
| ) | |
| Defendant/Judgment Debtor ) | |

This matter came before the court for hearing March 3, 2022, on the judgment creditor's motion to show cause (DE 976) and second post-judgment motion to compel (DE 982). The judgment creditor was represented by Pressly M. Millen, Raymond M. Bennet, and Samuel B. Hartzell. Patricia Brown, chief legal officer for SAS Institute, Inc. was in attendance. The judgment debtor was represented by Christopher R. Dillon, with local counsel Mark R. Sigmon. Raoul Maitra, chief legal officer of Altair Engineering, Inc. ("Altair US"), also was in attendance. The court memorializes herein determinations made at hearing. And where the judgment was determined satisfied, it follows that the motions remaining before the court should be denied as moot.

**STATEMENT OF THE CASE**

Reference is made to the court's prior memorandum opinion and order, entered March 18, 2019, and the opinion of the United States Court of Appeals for the Fourth Circuit, entered March 12, 2020, which detail the background and procedural history of this long-running case, up to this

court's judgment entered July 15, 2016 (the "judgment"), and through the court's third amended judgment, entered March 18, 2019 (the "third amended judgment"), and appeals thereof.

Issues presented stem from the judgment creditor's receipt, on January 3, 2022, of payment in the amount of $65,915,088.89, which, as confirmed through counsel at hearing, represents the total monetary amount due under the judgment. (See Notice of Partial Satisfaction of Judgment (DE 1007)). The judgment creditor, however, complains that the judgment, while paid, remains unsatisfied because the judgment debtor has not disclaimed a December 2018 judgment entered in the High Court of Justice in the United Kingdom ("UK Judgment"), allowing it to claw back two-thirds (2/3) of amounts paid by it to the judgment creditor on the basis of the United Kingdom Protection of Trading Interests Act of 1980. (See DE 816-1). Reference is made to this court's February 19, 2019, order entered following the UK judgment, which order provides, in pertinent part:

> [N]o sum previously collected or to be collected by the judgment creditor in the United States is subject to payment to the judgment debtor on the basis of the United Kingdom Protection of Trading Interests Act 1980.

(DE 848 at 2) (hereinafter, the "clawback injunction").

The judgment creditor seeks to continue this court's prohibition on licensing activity by the judgment debtor in this country until it disclaims the UK Judgment in a manner that gives the judgment creditor confidence, now lacking, that no recourse ever will be taken against it on the UK Judgment, on which interest, counsel provided, continues to accrue at the rate of eight percent per annum (8 %). Ancillary concern was expressed related to application of generally accepted accounting principles understood by the judgment creditor to require it to record two-thirds (2/3) of amounts paid on the judgment in its favor as a contingent liability.

The enjoined licensing activity is the subject of the court's third amended judgment, which provides that when the judgment is satisfied, that injunction expires. That portion of the third amended judgment is copied below:

> **IT IS ORDERED, ADJUDGED AND DECREED,** that the court's judgment entered July 15, 2016, the court's amended judgment entered December 8, 2017, and the court's second amended judgment entered May 3, 2018 is hereby ALTERED AND AMENDED as follows: "WPL" is HEREBY ENJOINED from licensing "WPS" to any "new customer" for use within the United States. For the purposes of this injunction, "WPL" means defendant/judgment debtor and its officers, agents, servants, employees, and all other persons who are in active concert or participation with defendant/judgment debtor; "WPS" means World Programing System and any software developed in whole or in part through the use of SAS Learning Edition; and a "new customer" is any person or entity that held no active license to WPS on January 11, 2019. This injunction expires automatically once defendant/judgment debtor has satisfied the judgment in this case. All other terms of the court's July 15, 2016, judgment, as amended December 8, 2017 and May 3, 2018, not altered herein shall remain in full force and effect.

(DE 882 at 1).

## COURT'S DISCUSSION

Through counsel, the judgment debtor explained in response to the court's questions at hearing that World Programming Limited ("WPL") continues to exist, now under ownership of Altair Engineering Limited ("Altair UK"), a wholly owned subsidiary of Altair US. That purchase apparently was finalized in late December 2021. Shortly thereafter Altair US made full payment to the judgment debtor.

In response to the court's inquiry, the judgment debtor, through counsel, offered its recognition that "the injunction applies to Altair as the owner of World Programming Limited," comprising both Altair UK and Altair US. (Tr. (DE 1021) at 5). As the hearing proceeded, and the judgment creditor developed its concerns on the record, the judgment debtor offered many assurances to mitigate those concerns, a sample of which the court reproduces below:

1. [Counsel for judgment debtor:] "Your Honor, I want to be very clear. Altair is not going to claw back this money. Altair views your injunction from 2019 as being crystal clear that we are not permitted to take any steps to claw that money back." (Tr. 15).

3

2. "In our view Altair is bound by your order which precludes us from taking any steps to enforce the U.K. Judgment." (Tr. 15-16).

3. "Altair is a U.S. company that is bound by your orders. We're not clawing this money back." (Tr. 16).

4. "[P]art of the reason why Mr. Maitra, the chief legal officer is here, he will say the same thing to you on the company's behalf. . . . There is no situation in which Altair is going to claw back this money." (Tr. 16).

5. "I've been asked by the CEO: Please let the judge know we're not going to enforce this [UK Judgment]." (Tr. 17-18).

6. "I reside . . . in the U.S.; Mr. Maitra resides and is a lawyer in the U.S.; the CEO of the company, we are under your jurisdiction. If we did any of those things, I don't doubt for a minute we would be here answering to you." (Tr. 22).

7. "Your Honor, I will represent to you that all of the U.K. lawyers report directly to Mr. Maitra, and to some extent as outside counsel to me as well. . . . [W]e will take no steps in the U.K. before reporting back to you with . . . a final agreement or however it is we do this. . . . We will work in good faith to get this done in 30 days." (Tr. 26).

The judgment debtor advocated that the judgment has been satisfied in full, and, therefore, the court's injunction against licensing activities in this country should not be extended, rather it should be deemed to have expired.

A brief break in the hearing was called by the court in part to allow the parties opportunity to continue their communications privately.[1] Upon its return to the bench, and after hearing further from the parties, where no agreement was able to be reached on treatment of the injunction at issue in this case, the court turned its attention squarely to the terms of its third amended judgment, entered March 18, 2019. The court emphasized in pertinent part its language: "This injunction expires automatically once defendant/judgment debtor has satisfied the judgment in this case." (DE 882 at 1). Where the judgment creditor essentially is asking the court to interpret satisfaction

---

[1] There appeared some interest in mediation of other disputed issues in furtherance of a global resolution of the parties' conflicts. While this litigation has been laid now to rest, given the interrelatedness of issues remaining in dispute elsewhere, the court noted that, if requested, it will consider making an experienced magistrate judge available for court-hosted conference between the parties geared towards reaching settlement of all their disputed issues.

of the judgment also to require affirmative steps by the judgment debtor to void the UK Judgment, it was not inclined to adopt that interpretation or to amend its judgment to such effect.

The United States Court of Appeals for the Fourth Circuit makes clear in several instances that satisfaction of the judgment here is tied to its payment. There is no cord also requiring that the judgment debtor somehow render null and void the UK Judgment. For example:

> While WPL can continue licensing its software to existing customers for U.S. use, its U.S.-related operations <u>cannot grow until the judgment is satisfied</u>. . . . . The U.S. expansion injunction is narrow and carefully tailored. It is not intended to put WPL out of business. . . . <u>It expires automatically once the U.S. judgment is satisfied. It does not foreclose the possibility of modification earlier if WPL makes good-faith payment efforts.</u>

<u>Id.</u> at 526 (emphasis added). No meaningful authority is cited in support of the judgment creditor's argument that payment in full does not amount here to satisfaction of the judgment. Where the court finds the judgment satisfied, the separate motions before the court must be and are denied as moot.

The court reiterates its ability persists to enforce its orders, including the clawback injunction: "no sum previously collected or to be collected by the judgment creditor in the United States is subject to payment to the judgment debtor on the basis of the United Kingdom Protection of Trading Interests Act of 1980." (DE 848 at 2). And as the judgment debtor plainly recognizes, the jurisprudence of the case affords no opportunity for the judgment debtor to do with impunity what the judgment creditor fears.

The judgment debtor argued before the Fourth Circuit on appeal that it did not relitigate, attack, or alter the district court's judgment by seeking clawbacks in the United Kingdom, but, rather, took independent action under a United Kingdom statute. The appeals court held "[t]his argument quickly falters. As an initial matter, it strains logic to characterize a proceeding as separate and independent of a previous proceeding when its sole purpose is to vitiate the previous

5

judgment." SAS Inst., Inc. v. World Prog. Ltd., 952 F.3d 513, 524 (4th Cir. 2020). The fact that the judgment now has been paid does not alter this reasoning.

**CONCLUSION**

The court amplifies in this writing upon its determination made at hearing March 3, 2022, that the judgment is satisfied. Accordingly, the judgment creditor's motions are denied as moot.

SO ORDERED, this the 4th day of March, 2022.

_____
LOUISE W. FLANAGAN
United States District Judge